# Exhibit A

# LIONBRIDGE

STATE OF NEW YORK     )
                      )
                      )   ss
COUNTY OF NEW YORK    )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Spanish into English of the attached Acknowledgement of

Notification Generation.

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me

this _3rd_ day of _March_ , 20 _21_ .

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

259 W 30th Street, 11th Floor   New York, NY 10001   +1.212.631.7432



**Federal**
**Judicial**
**Branch**

# Federal Judicial Branch Online Services Portal

# Acknowledgement of Notification Generation

| | |
|---|---|
| **Jurisdictional Body:** | Second District Court in Civil Matters in Mexico City |
| **Type of case:** | Civil or administrative proceedings |
| **Proceeding number:** | 345/2017 |
| **Folder:** | Civil or administrative |
| **Notified party:** | Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable [Variable Capital Limited Liability Company] |
| **Notification carried out by:** | |
| **Summary of the agreement:** | In view of the commercial bankruptcy proceedings 345/2017-I, brought by Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, and Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, to resolve the motion for reconsideration filed by the aforementioned companies, against the decision of October eleventh, two thousand and eighteen, in compliance with the decision of the Eighth Collegiate Court in Civil Matters of the First Circuit. |
| **Date of the agreement:** | 02/22/2021 |
| **Date of publication of the agreement:** | 02/23/2021 |
| **Date on which the notification is deemed to have been made:** | 02/23/2021 |
| **Time of notification:** | 11:06 |

The notification made on 02/23/2021 at 11:06 a.m. has taken effect as the term provided for in section II of Article 30 of the amparo Law has elapsed.



FEDERAL JUDICIAL BRANCH

FORM A-55

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

## Mexico City, February twenty-second, two thousand and twenty-one.

In view of commercial bankruptcy proceedings 345/2017-I, brought by Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, and Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, to rule on the **motion for reconsideration** filed by the aforementioned companies, against the decision of **October eleventh, two thousand and eighteen**, in compliance with the decision of the **Eighth Collegiate Court in Civil Matters of the First Circuit**, in the motion for review of Civil Liability **108/2020**; and,

## STATEMENT OF FACTS

**FIRST. Filing of the appeal motion**. By means of a writ filed on October nineteenth, two thousand and eighteen, [1] Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, and Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, through their attorney-in-fact Elías Mendoza Murguía, filed a motion for reconsideration against the decision of October eleventh of the current year, with the following content:

---

[1] Volume X, pages 1021 to 1074.

1

*"Mexico City, October eleventh, two thousand and eighteen.*

*The writ with registry number **18866**, signed by Jesús Ángel Guerra Méndez, attorney-in-fact of Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, and Integradora de Servicios Petroleros de Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, is attached to the records.*

*By means of the aforementioned writ, the bankrupt companies **request that since on September eleventh, two thousand and eighteen, the commercial bankruptcy judgment was issued,** and that in accordance with Article 1 of the bankruptcy law, it is in the public interest to preserve the insolvent companies' business, avoiding the risk of jeopardizing their viability, based on Article 87 of the Commercial Bankruptcy Law, **to declare null and void** clause 15. 1 (g) (i) of the bond agreement (issuance agreement) dated January twenty-fourth, two thousand and fourteen, amended and restated on April twenty-ninth, June second, September twenty-ninth and November ninth, all of two thousand and sixteen, executed by **Oro Negro Drilling, Pte. Ltd.** (a company incorporated under the laws of the Republic of Singapore), as bond issuer, and **Nordic Trustee As**, formerly Nordic Trustee ASA (a company incorporated under the laws of Norway), as bond trustee on behalf of the bondholders, as follows:*

*"15. Cases of default.*

*15.1. The bond trustee may declare the bonds to be in default after the occurrence of any of the following events, in each case only to the extent such events occur after the date hereof:*

*(…)"*

*(g) Insolvency and dissolution proceedings.*

*If any corporate action, legal proceeding or other phase of proceedings is brought against any other between the issuer, the parent company, the charterer or any platform owner in connection with:*

*(i) Suspension of payments, default on any indebtedness, liquidation, dissolution, administration or reorganization (by voluntary arrangement, provisional liquidation, statutory administration, settlement scheme or otherwise) other than insolvency liquidation or reorganization;*

*(…)"*

*They argue that such clause aggravates the situation of the companies, since it allows **Nordic Trustee As,** formerly Nordic Trustee ASA (bond trustee and ordinary representative), with the mere filing of the bankruptcy petition of **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable,** (charterer), and **Integradora de Servicios Petroleros de Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable** (parent company), to declare a default under the bond*

ULISES GARCÍA MOLINA
30,30,30,31,30,30,29,30,34,31,30,34,29,29,38,33,37
2,04,02,27,09,00,45

FORM A-55

# Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*



**FEDERAL JUDICIAL BRANCH**

ULISES GARCÍA MOLANA. 30.30.31.30.31.30.30.30.30.30.34.31.30.34.39.39.38.33.37 24.04/22 09:00:45

agreement, thereby accelerating the bonds and foreclosing the guarantees granted, which in a bankruptcy proceeding affects the distribution of resources under the irrevocable administration and source of payment trust agreement F/1695.

That said effect materialized since **Nordic Trustee As**, formerly Nordic Trustee ASA, executed the aforementioned clause, generating the following acts:

1.  By e-mail sent on September twenty-fifth, two thousand and seventeen by Olav Slasgvvold, on behalf of the trustee of the bonds, he informed the attorney-in-fact of the bankrupt companies and of **Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,** and **Oro Negro Impetus, Pte. Ltd.,** of the so-called "notice of default", on the occasion of the filing of the bankruptcy petition filed by the charterer.

2.  He notified the default and enforcement of the "lien" on the bond agreement, whereupon he proceeded to appoint Roger Alan Bartlett and Roger Arnold Hanock [sic], as the new directors of **Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,** and **Oro Negro Impetus, Pte. Ltd.,** removing from the said position Alonso del Val Echeverría, Gonzalo Gil White, Anita Chew Peck Hwa and Carlos Enrique Williamson Nasi.

3.  On October fifth, two thousand and seventeen, he notified the transfer of the shares representing the share capital of **Drilling, Pte. Ltd.,** (at the signing of the bond agreement, party to the companies' corporate group, since it was a company controlled by **Integradora),** to a separate company **OND, Pte.Ltd.** (of Singapore), derived from enforcement of the lien Drilling.

4.  He notified **Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, Fiduciary Division,** as trustee of the irrevocable administration and source of payment trust agreement identified under number F/1695, that a default event had arisen from the issuance agreement.

5.  On October ninth, two thousand and seventeen, the new directors adopted, among other resolutions, a resolution to revoke the powers of attorney previously granted and they appointed as new representatives and attorneys-in-fact of **Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro**

3

*Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* and *Oro Negro Impetus, Pte. Ltd.,* the following persons: *Alejandro Sainz Orantes, Daniel Alejandro Díaz Álvarez, Manuel Ruiz De Chávez Gutiérrez De Velasco, Ana Gabriela Avendaño Fernández, Luis Antonio Estrella Saavedra, Santiago Alessio Robles Seguí, Daniel Pardo Fuentes* and *Jesús Ángel Origel Zavala.*

6.      *Manuel Ruiz De Chávez Gutiérrez De Velasco,* as attorney-in-fact of *Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* and *Oro Negro Impetus, Pte. Ltd.* filed the withdrawal of the bankruptcy petition filed in the proceeding *395/2017-I,* of the docket of this court.

7.      On February fifth, two thousand and eighteen, for the second time, *Roger Alan Bartlett* and *Roger Arnold Hanock* [sic], as the new directors of *Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* and *Oro Negro Impetus, Pte. Ltd.,* revoked the powers of attorney of *Alonso del Val Echeverría, Gonzalo Gil White, Jaime René Guerra González, Patricio Fabián Hidalgo estrada, Alfonso Peniche García, Román Salazar Castillo, Ernesto Luis Rodríguez León, Octavio Ochoa Huerta, Raúl García Herrera, Sergio Cabañas Mier, Elías Mendoza Murguía* and *Jesús Ángel Guerra Méndez.*

According to it, the execution of the clause aggravated the terms of the agreement for the companies, since it resulted that, abroad, the bondholder enforced the guarantee of the bond contract over the shares of *Drilling, Pte. Ltd.,* as prior to the bankruptcy petition, it was controlled by *Integradora de Servicios Petroleros de Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable,* which led to it leaving the corporate group of the companies, to be controlled by the Singaporean company *OND, Pte. Ltd,* and as a consequence the subsidiaries *Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* and *Oro Negro Impetus, Pte. Ltd.,* ceasing to be indirectly controlled by *Integradora*; which led to the destruction of the corporate and equity links that make the operations of the bankrupt companies viable.

In order to have a better understanding of the legal problem raised, it is appropriate to reiterate that when the bond agreement was executed, it was recognized that the **financial structure** of the companies started with *Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable,* as the holding company of *Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable,* and of *Oro Negro Drilling, Pte. Ltd.*

ULISES GARCÍA MOLINA
35,38,30,30,31,30,33,D,30,34,31,30,34,29,35,36,33,37
2A042129F00,65



**FEDERAL JUDICIAL BRANCH**

FORM A-55

# Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*

That, through the bond agreement, **Oro Negro Drilling Pte. Ltd,** obtained a loan from **Nordic Trustee As,** formerly Nordic Trustee ASA, with which the aforementioned holding company of **Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius., Pte. Ltd, Oro Negro Impetus Pte. Ltd.,** and **Oro Negro Decus Pte. Ltd.,** acquired five platforms.

As a result of the foregoing, **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable,** entered into an agreement **with Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius., Pte. Ltd, Oro Negro Impetus Pte. Ltd., and Oro Negro Decus Pte. Ltd.,** the **bareboat charter contracts,** by which it granted the use and enjoyment of the **Primus, Laurus, Fortius, Decus** and **Impetus** marine platforms, in exchange for the payment of a fixed consideration.

After obtaining possession of the platforms, the company entered into **lease agreements** for the platforms with **Pemex Perforación y Servicios,** the relevance of which lies in the fixed price or within a certain parameter and the determined term.

Thus, **Pemex Perforación y Servicios** undertook to pay the consideration for the lease of the platforms, through trust F/1695, in which the resources are concentrated, so that the distribution could subsequently be made in different items.

One of the items in which the trust assets are distributed is the item allocated to pay for the ordinary operation of the company (crew, maintenance of the platforms, administrative personnel, among others) and the considerations in favor of the owners of the platforms derived from the charter contracts, which is used for their ordinary operation (assets of the contracts) and to transfer them to **Oro Negro Drilling Pte. Ltd.,** to repay the debt acquired through the issuance of bonds.

Thus, in order to be able to make a determination in relation to the company's petition, it is also considered appropriate to start from the public and business interest viewpoint, as concepts contained in Article 1 of the Bankruptcy Law, which states the following:

"**Article 1**. This Law is in the public interest and its purpose is to regulate commercial bankruptcy proceedings.

It is in the public interest to preserve companies and to prevent the generalized default of payment obligations from jeopardizing the viability of such companies and of others with which they maintain a

5

*business relationship. In order to guarantee adequate protection to creditors against the detriment of the assets of companies in insolvency proceedings, the judge and the other parties involved in the process regulated by this Law must at all times govern their actions under the principles of significance, procedural economy, promptness, publicity and good faith.*"

*In effect, such legal provision establishes that the bankruptcy proceeding is in the "public interest", a concept that, although undetermined, has been defined as the maximum expression of the social interest, as a constitutionally protected good and **a guarantee for both individuals and authorities to reasonably exercise their rights within the State**, the purpose of which is social harmony in terms of the legitimate exercise of the rights, duties, freedoms and powers of the governed within the State.*

*This is supported by thesis I.4o.A.11 K (10th.), in which the Fourth Collegiate Court in Administrative Matters of the First Circuit declared:*

*"**SUSPENSION. THE NOTION OF PUBLIC ORDER AND ITS PURPOSE.** Article 124 of the Amparo Law contains the requirements that must be satisfied in order to decree the suspension of the challenged act, including the condition that there be no harm to the social interest or contravention of public order provisions. For its part, the Mexican Supreme Court of Justice has ruled in various opinions that such institutions are affected when the granting of this measure deprives the community of a benefit conferred upon it by law or inflicts harm upon the said community that it would not otherwise suffer. From the foregoing it can be held that public order constitutes the highest expression of the social interest, as a constitutionally protected good, and a guarantee of society, so that individuals and authorities may reasonably exercise their rights within the State, and that this* [public order] *not only consists of upholding collective peace and welfare, but that this also entails social harmony as regards the legitimate exercise of rights, duties, freedoms and powers within the State; that is, the peaceful coexistence between power and freedom. Its main purpose is to ensure the freedom of the governed and the effectiveness of their rights, as this is one of the fundamental values protected under the Political Constitution of the United Mexican States and must be privileged, in the understanding that freedom implies coordination, responsibility, the power to act with conscience and in accordance with legitimate purposes, and not purposes of disorder or that only serve the interests of the administration, considered in the abstract. This objective is in accordance with the amendment to section X of Article 107 of the Political Constitution of the United Mexican States, which provides that in specific cases, the real impact and magnitude that affects society must be weighed against the actual harm suffered by private interests, especially when*

ULISES GARCIA MOLINA
39,30,30,30,31,30,30,30,30,30,34,31,30,34,39,39,38,31,37
2,646,827,090,645



FORM A-55

# Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability*

the legitimacy of the authority's actions or the appearance of good faith is at stake; therefore, with the eventual granting of the precautionary measure, respect for public order must be ensured, through a reasonable exercise of the right, avoiding serious harm to the plaintiff, and to the rights of other persons that, without the intervention of the restriction, would be deteriorated or diminished, and thus preserving the balance that must prevail between the legitimate and harmonious exercise of the rights, duties, freedoms and powers of the State, vis-a-vis the freedom of persons, which the community has an interest in maintaining."[2]

Another important reference point is found in the isolated thesis I.3o.C.926 C, where the Third Collegiate Court in Civil Matters of the First Circuit ruled as follows:

**"PUBLIC ORDER. ITS NOTION AND CONTENT IN CIVIL MATTERS.** The civil sphere, as a space in which the private activity of individuals converges and is regulated, is not extraneous to that notion that constitutes its limit through the rule, as the guarantee that such activity, delimited by the law itself, will not be hindered. This is clear from Article 6 of the Federal District Civil Code when it stipulates that the will of individuals may not exempt them from compliance with the law, nor alter or modify it, in accordance with which the law is recognized as the primary source of rights and as the governing body of the social order, also on the basis that only private rights that do not directly affect the public interest may be waived, when such waiver does not prejudice the rights of a third party. Furthermore, the same regulation highlights as a rule of conflict resolution, Section II of Article 15 of the same regulation, which indicates that foreign law may not be applied when its provisions or the result of its application are contrary to fundamental principles or institutions of the Mexican public order. The idea of individual autonomy is determined by two dimensions; the first one is based on the notion of public interest that translates into the existence of mandatory laws that, by their nature, cannot be derogated by individuals because they defend the interest of the latter as well as the State, and the second dimension, which translates into a legal mechanism of jurisdictional application that is interested in safeguarding the general interest by limiting any private activity that violates it. In this way a mandatory rule can be differentiated from a public policy rule, since while the latter is always

---

[2] Found in the Judicial Weekly Gazette of the Mexican Federation, Book XV, December 2012, Volume 2, Tenth Period, record: 2002421, common matter, page: 1575.

7

*mandatory, not every mandatory rule is a public policy rule."[3]*

*Accordingly, the bankruptcy proceeding seeks **order in the restructuring process of the company**, so that it can continue to operate and thus maintain the sources of employment and factors of production, thus giving rise to public order, in order to reduce the effects on society to the greatest extent possible.*

*Thus, the bankruptcy proceeding seeks to preserve the company, thus affecting as little as possible the legal relationships that the company entered into before the default.*

*Mexican bankruptcy law focuses on maintaining economic value and that assets are not subject to private enforcement, to the detriment of the orderly distribution of the company's resources, for the payment of obligations to creditors, according to the order of priority.*

*In relation to the concept of a company, it is not defined in the bankruptcy law, but it can be inferred from the explanatory memorandum of the Commercial Bankruptcy Law published in the Mexican Federal Official Gazette on May 12, 2000, which considered the following:*

*"(...)The company, considered as the organization of work, tangible and intangible assets designed to produce or professionally offer goods and services to the market, for profit-making purposes, may be successful or else find itself in serious difficulties that threaten its survival (...)"*

*The foregoing is also substantiated by the concept obtained from the book Gran Diccionario Jurídico de los Grandes Juristas [Great Legal Dictionary of the Great Jurists'] edited by Javier G. Canales Méndez (pages 534 and 535), in which the company is conceptualized as follows;*

*"It is an entity of coordinated human activities, for the realization of an economic and social purpose, which is composed of entrepreneurs, who provide the capital of workers who provide their labor force, and which is governed by the rules applicable to its nature, which generally produces goods and services to satisfy, through a profit, the demand and need of society."*

*Similar to the legislative process from which the Commercial Bankruptcy Law was derived, it is evident that the legislator was not oblivious to the cross-border relations between entities of different states, since it recognized the modifications and evolution of the business environment and the complexity of contemporary commercial*

---

[3] Visible in the Judicial Weekly of the Federation and its Gazette, record: 162333, ninth period, book XXXIII, April 2011, civil matter, page 1350.



FORM A-55

# Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020*

*relations and international factors that influence the national economy, as it specifically noted:*

*"The social and economic conditions that prevailed in Mexico in the 1940s have been radically transformed. Our population has multiplied by five, the gross domestic product has grown more than fifteen times, the participation of the industrial and service sectors has increased significantly and that of the primary sector has been reduced. The demographic growth and the migration from the countryside to the city have occurred on a massive scale. Advances in telecommunications and means of transportation have been made in giant steps, unimaginable at that time.*

*The way of doing business is also different. In the past, most business enterprises were one-person or family-owned companies and relatively easy to manage. Today, commercial relations are more complex and subject to a greater number of factors, some of an international nature that affect the economic life of individual nations – albeit in different ways and to different degrees – and others that are specific to national realities, all of which have an impact on the company's performance. Product cycles have become shorter, and companies are exposed to more frequent and sometimes more pronounced changes in financial market conditions. All of this forces companies to transform themselves more rapidly.*

*The economy, which had been typically regional, gradually became integrated into a national economy, until it entered a stage of insertion into the world economy. At the same time, the money and stock markets, which were practically nonexistent half a century ago, have acquired great significance as a means of financing development. Our country has become integrated into the world economy in response to the benefits offered by the globalization process, not only in terms of the exchange of goods and services abroad, but also in terms of the growing financial and investment flows.*

*Production chains are integrated vertically and horizontally, nationally and internationally, technologically and by sector. Increased competitiveness is forcing some companies to respond quickly to new market niches and to abandon those where they no longer have competitive advantages. As society modernizes, the number of companies increases, as well as the factors that vary their competitiveness, profitability and permanence in the market. (…)"*

9

*Articles 86 and 87 of the Commercial Bankruptcy Law provide as follows:*

*"**Article 86**. With the exceptions set forth in this Law, the provisions on obligations and contracts, as well as the stipulations of the parties, will continue to apply.*

***Article 87.** Any contractual stipulation that due to the filing of a petition or lawsuit for bankruptcy, or declaration of bankruptcy, establishes modifications that aggravate the terms of the contracts for the Company, will be deemed invalid, except for the exceptions expressly established in this Law."*

*From a systematic interpretation of the aforementioned provisions, it is clear that the provisions on obligations and contracts, as well as the stipulations of the parties, continue to apply as a result of the bankruptcy proceeding judgment, except for those that due to the filing of the bankruptcy petition or declaration establish modifications that aggravate the terms of the contract for the company.*

*Thus, pursuant to the law, a clause that aggravates the situation of the company, by the mere filing of the bankruptcy petition or declaration, will not produce any legal effect whatsoever, and shall be rendered null and void within the Mexican legal system.*

*This is due to the fact that the bankruptcy law recognizes as a central objective of the procedure the maximization of the value of the company in economic and financial difficulty, the intention being to preserve said company, protecting jobs and reducing the negative effects that would be inflicted on society by the closing of a company.*

*This sanction also takes into account that the contractual agreement in such terms becomes antagonistic to the public interest aspect of the bankruptcy law, consisting in the preservation of the company, and an attempt is made to prevent the troubled business from being subject to private enforcement, and it may be possible to carry out a judicial liquidation proceeding that allows a greater value in the sale, seeking a balance between the company and its creditors.*

*Thus, the agreement between private parties will be deemed annulled, that is to say, it will not generate any legal consequence and if it has occurred, the situation will return to the moment when it is judicially declared void, thus annulling the acts in question.*

*In addition to the foregoing, it is necessary to determine whether the execution of a clause of a contract subject to a foreign*



**FEDERAL JUDICIAL BRANCH**

*Motion for reconsideration*
*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019*
*of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the*
*granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the*
*appeal for review of Civil Liability. 108/2020*

*law can be declared null and void, pursuant to Article 87 of the Commercial Bankruptcy Law.*

*This is because, in exercise of their free will and contractual freedom, the parties that entered into the bond agreement containing the clause that the bankrupt companies seek to have declared as not enforceable, in relation to the applicable law and the competent court to resolve any controversy, submitted [themselves] to Norwegian law and courts, as can be seen in clause 19.7 entitled "Resolution of conflicts and legal jurisdiction", which reads as follows:*

*"19.7 Dispute resolution and legal jurisdiction.*
*19.7.1          This Bond Agreement and all disputes arising out of or in connection with this Bond Agreement between the Bond Trustee, the Bondholders and any Obligor shall be governed by Norwegian law.*
*19.7.2          All disputes arising out of or in connection with this Bond Agreement between the Bond Trustee, the Bondholders and any Obligor and/or the Charterer, subject to the provisions of Clause 19.7.3 below, shall be resolved exclusively in the courts of Norway, with the District Court of Oslo as the sole legal Jurisdiction.*
*19.7.3          Clause 19.7.2 is for the benefit of the Bond Trustee only. As a result, the Bond Trustee shall not be precluded from instituting proceedings relating to a dispute in any other court that has jurisdiction. To the extent permitted by the law, the Bond Trustee may institute concurrent proceedings in any number of jurisdictions."*

*Therefore, even though in terms of Articles 1 and 7 of the Bankruptcy Law, the undersigned, as the person in charge of the proceeding, has the obligation and powers to conserve the company, such action must be carried out within its sphere of competence jurisdiction.*

*Therefore, in the case at hand, prior to determining whether clause 15.1 (g) (i) of the bond agreement (issuance agreement) dated January twenty-four, two thousand fourteen, as amended and restated on April twenty-ninth, June second, September twenty-ninth and November ninth, all of two thousand and sixteen, entered into by* **Oro Negro Drilling, Pte. Ltd.** *(a company incorporated under the laws of the Republic of Singapore), as bond issuer, and* **Nordic Trustee As**, *formerly Nordic Trustee ASA (a company incorporated under the laws of Norway), aggravates the situation of the companies by virtue of the present proceeding and,*

11

*based on Mexican bankruptcy law, is declared disregarded* [void and null], *the undersigned must proceed to determine whether it has competence to do so, as it was an agreement between private parties that was subject to Norwegian law and the Norwegian courts.*

*This is because the American Convention and the General Constitution coincide in establishing that the protection of a human right is subject to certain assumptions and requirements, which must be reasonable and justified by the needs of the administration of justice.*

*One of these assumptions is, precisely, the competence of the jurisdictional body.*

*In this sense, Article 8.1[4] of the American Convention on Human Rights expressly recognizes competence as a requirement for the exercise of the right of access to justice.*

*In this regard, the Inter-American Court of Human Rights has declared that being judged by a competent judge is "a basic principle of due process", which is why, in the international sphere, competence is a necessary condition for the exercise of the right in question, which is fully justified in the efficient development of the administration of justice.*

*Furthermore, in the context of the conventionality of the regional code of laws to be judged by a certain court, the Inter-American Court has recognized that the need to be tried by a competent judge constitutes a substantive right and that the competence of the judge can only derive from the law.*

*In fact, it has maintained that the existence and competence of the natural Judge derives from the law, so that the regional code of laws does not necessarily conflict with this right, if it is expressly established and defined by the Legislative Power and serves a legitimate purpose. If, on the contrary, the law does not establish the regional code of laws and it is established by the Executive or by the Judicial Branch itself, thus removing the individual from the court that the law establishes as their natural judge, the right to be judged by a competent judge would be breached.*

*In turn, from the pertinent part of Articles 14 and 17 of the Constitution[5], it is clear that the*

---

[4] *"Article 8. Judicial guarantees*
*"1. Every person has the right to a hearing, with due guarantees and within a reasonable time period, by a competent, independent and impartial judge or tribunal, previously established by law, in the substantiation of any criminal accusation made against him, or for the determination of his rights and obligations of a civil, labour, fiscal or any other nature."*
[5] *""No law shall be given retroactive effect to the detriment of any person.*
*"No person shall be deprived of their liberty or of their property, possessions, or rights, except by means of a trial before the previously established courts, in which the essential formalities of the proceeding are complied with and in accordance with the laws issued prior to the event.*



**FORM A-55**

# Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*



**FEDERAL JUDICIAL BRANCH**

*fundamental right to due process constitutes one of the guiding principles for the protection of the governed against acts of authority. In this sense, the right to due process is of the utmost importance in the Mexican legal system, one of the elements of which is the competence of the jurisdictional body.*

*Thus, competence constitutes a basic premise in the integration of the relationship between the Judge and the parties, **it constitutes the objective limit to the exercise of jurisdiction**, and as such, competence is instituted as an element of validity of the decision issued by the jurisdictional body.*

*In other words, competence implies that whoever is to be judged may only be judged by the body that is empowered by law to do so.*

*This is based on the jurisprudence issued by the plenary of the Supreme Court of Justice of the Nation, published in the Mexican Federal Judicial Weekly and its Gazette, volume 77, May 1994, page 12, common law, eighth period, which states:*

*"**COMPETENCE. ITS SUBSTANTIATION IS AN ESSENTIAL REQUIREMENT OF THE ACT OF AUTHORITY.**.- Making a harmonic interpretation of the individual guarantees of legality and legal security enshrined in Articles 14 and 16 of the Constitution, it is clear that the acts of interference and deprivation must, among other requirements, be issued by a competent authority and comply with the essential formalities that give them legal effectiveness, which means that any act of authority must necessarily be issued by whoever is empowered to do so, expressing, as part of the essential formalities, the character with which it is subscribed and the provision, agreement or decree that grants such legitimacy. Otherwise, the affected party would be left in a state of defenselessness, given that, not knowing the basis that empowers the authority to issue the act, nor the nature with which it issues it, it is evident that the opportunity is not granted to examine whether or not its action falls within the respective competence, and whether or not it is in accordance with the Constitution or the law; in order to be in a position to allege, in addition to the illegality of the act, the illegality of the basis on which the authority relies to issue it, since it may well be the case that its action is not exactly in accordance with the norm, agreement or decree it invokes, or that these*

---

*"Article 17. No person may take justice into their own hands, and they may also not exercise violence to claim their right.*

*Everyone has the right to be provided with justice by the courts that will be expedited in order to deliver it within the terms and within the time-scales established by law, issuing their resolutions promptly, fully and impartially. The service shall be free, with legal costs, as a consequence, being prohibited.*

13

*contradict the fundamental law or the secondary law."*

*Therefore, the High Court and the Inter-American Court have agreed in recognizing that competence, far from restricting the human right of access to justice, constitutes an extremely important prerequisite for the effective protection of this right, since it is an element that responds to the requirement of a correct and efficient administration of justice, but also grants the governed a sphere of protection against the body that will hear their claims.*

*Now, it is important to recognize that this requirement for the exercise of access to justice must comply with certain requirements.*

*In effect, competence, as a prerequisite to guarantee the right of access to justice requires that the parameters or elements that are established to configure it be set forth in clear, congruent and accessible terms for the governed, so that the latter has the real possibility of being able to determine, with reasonable clarity, the body before which they must go to defend their rights.*

*Thus, once these obligations have been fulfilled by the State in order to guarantee and protect the effective exercise of the right of access to justice,* **the requirement for the governed to present their claim, appeal or defense before the competent authority constitutes the minimum procedural requirement that must be met in order to be able to access the jurisdictional instances to claim the violation of their rights.**

*This is supported by the considerations made by the Second Chamber of the National Supreme Court of Justice when resolving the contraction of thesis 107/2014, from which the criterion of the heading and following text prevailed with the character of jurisprudence:*

*"***LACK OF COMPETENCE BY REASON OF THE SUBJECT MATTER OF THE PROCEEDING FOR ANNULMENT OF THE FEDERAL COURT OF TAX AND ADMINISTRATIVE JUSTICE. ITS LEGAL CONSEQUENCES***. When the Federal Court of Tax and Administrative Justice finds that it lacks competence by reason of the subject matter to hear a proceeding for annulment, it must declare the proceeding inadmissible under the terms of Article 8, section II, of the Federal Law of Administrative Litigation, but without violating the right of access to justice recognized in Articles 17 of the Political Constitution of the United Mexican States, as well as Article 8, paragraph I and 25 of the American Convention on Human Rights, since the*

FORM A-55

**Commercial Bankruptcy 345/2017-I**



**FEDERAL JUDICIAL BRANCH**

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*

exercise of this right is subject to compliance with certain requirements, assumptions and procedural requirements that should not be avoided to the detriment of the correct and efficient administration of justice, such as the procedural requirements, provided in an accessible manner to the governed, of presenting the effective recourse before the competent court. Under the aforementioned conditions, it is concluded that, in the event of lack of competence due to the subject matter, the aforementioned court is not obliged to refer the matter to the authority it considers competent."

Moreover, the Supreme Court of Justice of the Nation has determined that in the case of the competence of a Judge to decide on a conflict derived from a private international legal relationship, the task of establishing the judicial competence to hear the dispute arising from such legal relationship, the Judge before whom the lawsuit is filed – [and who is] logically bound by such filing to examine their own competence in each case – is obliged to – **must, first of all, determine whether or not the rules governing their function grant them the power to settle the conflict that is international in nature, and once this premise is satisfied, then examine their competence in relation to their peers, within the legal system of their State.**

Therefore, an analysis of competence by the judge before whom the claim was brought with an international element, which entails the determination of the powers of the judicial courts of another State, **could only derive, by exception, from the existence of a rule of competence of a conventional nature, to which both States are subject**; but even in that case, the ruling made by the judge denying his competence, derived from considering that the power is vested in the judicial authority of another State, would in no way be binding for the latter before the eventual exercise of the action before it, since the foreign judge will necessarily examine their own international competence on the basis of their domestic law.

Therefore, the competence of the judge to hear a dispute between private parties of an international nature is determined on the basis of the domestic legal system of the State before which the claim is filed.

The dispute must necessarily be judged according to the law that gave rise to it or that, according to its nature, must regulate it, and if such law belongs to a foreign legal system, the application of such law has the purpose of reinforcing the legitimacy of the judicial decision and the justice of the case; however, reciprocity in the application of foreign law between the States involved is indispensable for the validity and effectiveness of such application.

ULISES GARCÍA MOLINA
30.30.30.31.30.30.30.30.30.30.30.34.31.30.34.39.30.31.37
24.06.22:09:09:45

15

In Mexico, the Legislative Power has expressly established a sovereign position that at the same time allows the application of foreign law in our territory, as long as the law itself provides for its application or that it derives from the treaties and conventions to which Mexico is a party; which of course involves a sense of reciprocity and harmonious coexistence in the international community.

Pursuant to Article 12 of the Federal Civil Code, Mexican law applies to all persons within Mexican territory, as well as to acts and events occurring within its territorial scope, and the application of foreign laws is only provided for those cases in which the law itself so determines, except as provided in treaties and conventions to which Mexico is a party.

Mexican law allows the application of foreign law, so it must first be determined whether or not there is a case that allows such application, and if it is applicable, it must be taken into account that whoever bases their rights on foreign laws, has the procedural requirement to prove the existence of such laws and that they are applicable to the case.

This is supported by the thesis issued by the Third Collegiate Tribunal in Civil Matters of the First Circuit, published in the Mexican Federal Judicial Weekly and its Gazette, Volume XIV, September 2001, page 1312, ninth period, civil law, which states

*"FOREIGN LAW. POINTS OF CONNECTION THAT MAKE IT APPLICABLE.* When a transaction is entered into in one State in order to have effects or be performed in another State, due to the nationality of the parties, the location of the thing or the nature of the right or legal fact in question, the legal system that governs it must be specified and the internal public order must be taken into account so as to establish the nature and scope of the subjective right of the national of a State that demands an obligation from a citizen of another State, and whose legal relationship was created in a State other than the one in which it produces its effects. In Mexico, the Legislative Branch has expressly established a sovereign position that at the same time allows the application of foreign law in our territory, provided that the law itself provides for the application or it is derived from the treaties and conventions to which Mexico is a party; which of course implies a sense of reciprocity and harmonious coexistence in the international community. Pursuant to Article 12 of the Federal Civil Code, Mexican law applies to all persons within Mexican territory, as well as to any acts and events occurring within its territorial scope, and the application of foreign laws is only provided where this is determined by Mexican law,

FORM A-55

**Commercial Bankruptcy 345/2017-I**

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*

**FEDERAL JUDICIAL BRANCH**

*except as provided in treaties and conventions to which Mexico is a party. That is, Mexican law allows for the application of foreign law, and first it must be determined whether or not there is a case in which such application is allowed, and if it is applicable, it must be taken into account that the party basing its right on foreign laws has the procedural burden of proving the existence of such laws and that they are applicable to the case. This is in accordance with the provisions of Articles 19 of the Federal Civil Code and 86 bis of the Federal Code of Civil Procedures, according to which the right that is based on foreign laws is subject to proof and in this sense the national legal system's rule that the right that is not subject to proof is not applicable."*

*Now, in the case at hand, the request of the companies does not imply the application of foreign law, but rather the application of Mexican law to a contract subject to foreign legislation and court.*

*In view of this, it is considered that the undersigned lacks legal competence, since according to Article 16 of the Federal Constitution, no one shall be subjected to interference with their person, family, domicile, papers or possessions, except by virtue of a written order of the competent authority.*

*Therefore, competence in judicial matters is the power granted by law to a body of this nature to hear certain matters, within the limits determined by the law itself.*

*Therefore, the undersigned does not have competence to rule on a contract in which the parties exercising their autonomous will chose to submit to foreign legislation and courts, and therefore the ruling sought by the companies implies exceeding the permitted limits of action.*

*Therefore, as competence constitutes a basic assumption in the integration of the relationship between the Judge and the parties, as an **objective limit to the exercise of jurisdiction**, which gives validity to the resolution issued by the jurisdictional body, it is considered that Article 87 of the bankruptcy law is not applicable to legal transactions that are not subject to the laws of the Mexican Republic.*

*Thus, even though, as repeatedly stated, the Commercial Bankruptcy Law involves the public order, since it seeks the greatest benefit of society, through the maximization of the resources*

17

*of the companies that are in default of obligations, the jurisdiction of the
undersigned is limited in those transactions that are not subject to the
undersigned's jurisdiction, since to proceed otherwise would generate
legal insecurity, and international jurisdictions would be violated, going
against the harmonious coexistence in the international community and
the respect for the sovereign equality of the States in the application of
their norms.*

*Pursuant to the foregoing, it is concluded that in accordance
with Article 87 of the Mexican Bankruptcy Law, the undersigned does
not have the authority to **disregard clause** 15.1 (g) (i) of the bond
agreement (issuance agreement) dated January twenty-fourth, two
thousand fourteen, as amended and restated on April twenty-ninth,
June second, September twenty-ninth and November ninth, all of two
thousand sixteen, executed by **Oro Negro Drilling, Pte. Ltd.** (a
company incorporated under the laws of the Republic of Singapore), as
issuer of bonds, and **Nordic Trustee As**, formerly Nordic Trustee ASA
(a company incorporated under the laws of Norway), because it is a
contract subject to the laws and courts of Norway, and because there
is no reciprocity between two States that would allow the extraterritorial
application of the law.*

*Therefore, the undersigned lacks competence, since it is a
contract subject to the laws and courts of Norway, in addition to the
fact that the companies did not provide the necessary elements to
determine that there is reciprocity in the application of foreign law
between Mexico and Norway, as provided in Articles 19 of the Federal
Civil Code and 86 bis of the Federal Code of Civil Procedures.*

*Notwithstanding the foregoing, a search on the official website of
the Ministry of Foreign Affairs
https://aplicaciones.sre.gob.mx/tratados/consulta nva.php, did not find
any international treaty between Mexico and Norway where reciprocity
has been expressed in similar cases to apply foreign law.*

*(...)*

*Moreover, the companies' request the following precautionary
measures:*

*1. The order directed to **Nordic Trustee As**, formerly
Nordic Trustee ASA, to refrain from declaring any event of default under
the issuance agreement.*

*2. The order issued to **Nordic Trustee As**, formerly Nordic
Trustee ASA, to refrain from performing any act through which it intends,
attempts, seeks or has the effect or consequence of executing
guarantees or rights in terms of the issuance agreements and their
ancillary documents.*

FORM A-55
**Commercial Bankruptcy 345/2017-I**



**FEDERAL JUDICIAL BRANCH**

*Motion for reconsideration*
*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*

*3. The order issued to **Nordic Trustee As**, formerly Nordic Trustee ASA and **Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, Fiduciary Division**, in its capacity as trustee of the irrevocable administration and source of payment trust agreement identified with number F/1695, ordering the latter to refrain from distributing, and the former to refrain from receiving, any amount of money from the trust.*

*The bankrupt entities state that the measures protect the companies' viability, since by preventing the addressee from determining a breach of the issuance agreement, after September eleventh and twenty-ninth, two thousand seventeen, the date of filing of the bankruptcy petitions, the principle of equality among creditors is respected, allowing the resolution of the liabilities of the companies and avoiding the execution of guarantees, and avoiding the continued distribution of the trust resources, as part of the estate.*

*This indicates that the necessity lies in the fact that the addressee does not execute guarantees.*

*In this regard, it should be noted that the requested precautionary measures may not been ordered, since pursuant to Article 92 of the Commercial Bankruptcy Law, the contracts related to companies must be fulfilled by the bankrupt companies, unless the conciliator opposes, by reason that this is in the best interest of the estate.*
*(...)[6]*

**SECOND. Admission of the appeal**. in accordance with the agreement dated October twenty-fifth,[7] two thousand eighteen, the motion for reconsideration was admitted and an order was issued to Nordic Trustee As, Deutsche Bank México, sociedad anónima, Institución de Banca Múltiple, Fiduciary Division, as trustee of the irrevocable administration and source of payment trust agreement F/1695, and to **Oro Negro Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., and Oro Negro Impetus, Pte. Ltd**., through its

---

[6] Volume X, pp 352 to 366
[7] Volume X, pp 1083 to 1087

19

attorney-in-fact, **Manuel Ruiz de Chávez Gutiérrez de Velasco**, and **Fernando Pérez Correa Camarena**, then conciliator appointed by the Federal **Institute of Specialists in Commercial Bankruptcy**, ordering them to express their opinion on the matter within a period of three days.

**THIRD. Presentation of hearings and citation of the appeal.** The hearing ordered was served by means of writ no. 21607[8] by **Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple**, Fiduciary Division; writ no. 21785[9] by **Fernando Pérez Correa Camarena**, conciliator appointed by the **Federal Institute of Specialists in Commercial Bankruptcy**; writ no. 21786[10] by **Nordic Trustee As**, formerly **Nordic Trustee ASA**; and petition no. 21787[11] by **Oro Negro Drilling, Pte.  Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., and Oro Negro Impetus, Pte. Ltd.** [...] through their Attorney-in-fact **Manuel Ruiz de Chávez Gutiérrez de Velasco**.

**FOURTH. Judgment.** In the decision of November thirteenth, two thousand eighteen,[12] the interlocutory judgment was convened to be heard, and on **February twenty-fifth, two thousand nineteen**, it was issued as follows:

> *"First.  The grievances filed by Perforadora Oro Negro, sociedad de responsabilidad limitada de capital variable and Integradora de Servicios Petroleros Oro Negro, sociedad anónima promotora de*

ULISES GARCIA MOLINA
30,30,30,30,13,30,30,30,30,30,34,11,30,34,39,39,38,31,37
3.6:04:22:59 00A5

---

[8] Volume XI, pp 177 to 177 bis
[9] Volume XI, pp 340 to 347.
[10] Volume XI, pp 348 to 357.
[11] Volume XI, pp 441 to 457
[12] Volume XI, pp 663 to 684.



**FEDERAL JUDICIAL BRANCH**

*Motion for reconsideration*
*Issued in compliance with the judgment handed down in the indirect amparo proceeding*
*270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the*
*occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the*
*First Circuit, in the appeal for review of Civil Liability. 108/2020.*

[...] **inversión de capital variable**, through their attorney-in-fact
**Elias Mendoza Murguía**, in this motion for reconsideration, are
unfounded.

***Second. The decision of October eleventh, two thousand eighteen***
***is hereby confirmed, in its terms."***

**FIFTH. Amparo proceeding.** Dissatisfied with the above determination,
the bankrupt companies <span style="color:red">**Perforadora Oro Negro, Sociedad de Responsabilidad
Limitada de Capital Variable, and Integradora de Servicios Petroleros Oro
Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**</span>, filed an
indirect amparo proceeding, which was registered by the Eleventh District Judge in
Civil Matters in Mexico City, under no. <span style="color:red">**270/2019**</span>, which, following the procedural
process, resolved as follows:

"**FIRST.** *The Mexican Federal Court does not protect*
*"PERFORADORA ORO NEGRO", SOCIEDAD DE RESPONSABILIDAD*
*LIMITADA DE CAPITAL VARIABLE, and "INTEGRADORA DE*
*SERVICIOS PETROLEROS ORO NEGRO", SOCIEDAD ANÓNIMA*
*PROMOTORA DE INVERSION DE CAPITAL VARIABLE, through*
*their attorney-in-fact, ELÍAS MENDOZA MURGUÍA, against the*
*contested measure that they have appealed against the responsible*
*authority specified in the first statement of facts of the present*
*judgment, for the reasons set forth in the tenth recital.*

ULISES GARCÍA MOLINA
30.03.30.31.30.30.30.03.30.34.31.30.34.39.39.18.31.37
2.68d.225.09.00.45

21

**SECOND.** *In due course, compliance is ordered with the last recital of this resolution."*

**SIXTH. Appeal for review and granting of the writ of amparo being executed.** Dissatisfied with the above determination, the plaintiffs filed an appeal for review, which was heard by the **Eighth Collegiate Court in Civil Matters of the First Circuit**, registering it as case number **R.C 108/2020**. Which was resolved as follows:

*"First.* The appealed judgment is **revoked**.

**Second.** *The Mexican Federal Court* **safeguards and protects** *Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable and Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable*, against the contested act issued by the Second District Judge in Civil Matters in Mexico City, consisting of the interlocutory judgment of February twenty-fifth, two thousand nineteen, specified in the first statement of facts of the present judgment, for the effects indicated in the last recital of the same."

**SEVENTH. Effects of the concession granted by the Collegiate Court and enforcement:**

1.      – That the judge in charge should render the contested judgment null and void and in its place issue a new one in which:

ULISES GARCIA MOLINA
30.30.30.30.13.30.30.30.30.14.11.30.34.39.39.33.17
14.04.22 09 00:45



FEDERAL JUDICIAL BRANCH

FORM A-55

**Commercial Bankruptcy 345/2017-I**

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*

2. - Based on what has been considered in this decision, establish what are the immediate consequences of the application of clause 15.1 of the voting contract, in order to determine whether it aggravates the situation of the companies and,

3. If it concludes that the application of the clause in question does in fact aggravate the situation of the companies, order that it cease to apply, resolving according to the law.

In order to give strict compliance, by decision of January thirteenth, two thousand twenty-one, the judgment constituting the challenged measure (**February twenty-fifth, two thousand nineteen**) was annulled and a new one is hereby issued, in accordance with the guidelines established by the reviewing collegiate court, in accordance with the following

## RECITALS

**ONE. Competence**. This Second District Court in Civil Matters in Mexico City is competent to hear and resolve the appeal, based on the provisions of Articles 104, section II, of the Political Constitution of the United Mexican States, 53 Bis, section II, of the Organic Law of the Federal Judicial Branch, in connection with the General Agreement 19/2015 of the Plenary of the Federal Judicial Branch Council; 268

23

of the Commercial Bankruptcy Law and 1335 of the Code of Commerce, of supplementary application to the law of the subject matter, since it is a motion for reconsideration, which is heard and resolved by the same jurisdictional authority that issues the appealed order.

**TWO. Timeliness of the appeal.** Articles 268 of the Commercial Bankruptcy Law and 1335 of the Commercial Code[13] establish that, against an order that is not appealable, the revocation must be requested from the judge who issued it or their replacement in hearing the business, in writing, within three days following the date on which the notification of the decision to be challenged has taken effect.

Based on the above, the filing of the horizontal appeal currently being resolved is timely, considering the fact that it was filed by means of a writ submitted on **October nineteenth, two thousand eighteen**; that is, on the third day after the date on which the personal notification made to the companies on the **fifteenth day of the same month and year took effect**.

Having determined that the motion was filed on time, and that no appeal can be filed against it; inasmuch as there is no express provision in the law of the subject matter that would allow for this,

---

[13] "*Article 268. When this Law does not provide for an appeal, a reconsideration shall proceed, which shall be processed in accordance with the provisions of the Code of Commerce.*"
"*Article 1335. Both the reconsideration in the first instance and the reinstatement must be requested in writing within three days after the notification of the ruling to be challenged has taken effect, giving the opposing party a hearing for an equal term, and the court must resolve and send notification of its determination within the following three days.*
*There shall be no appeal from the decision on whether or not the reconsideration or reinstatement is granted.*"



**FEDERAL JUDICIAL BRANCH**

FORM A-55

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the appeal for review of Civil Liability. 108/2020.*

the hypothesis of admissibility established in Article 268 of the Commercial Bankruptcy Law is fulfilled.

**THREE. Grievances.** The appellant raised several grievances, which are reproduced verbatim here, in accordance with the jurisprudence in which the Second Chamber of the Mexican Supreme Court of Justice held:

"**CONCEPTS OF VIOLATION OR GRIEVANCES. IN ORDER TO COMPLY WITH THE PRINCIPLES OF CONGRUENCE AND COMPLETENESS IN WRIT OF AMPARO JUDGMENTS, IT IS UNNECESSARY TO TRANSCRIBE THEM.** On the basis of the precepts of Chapter X "Judgments", title one "General Rules", book one "On Amparo in General", of the Amparo Law, it does not state as obligatory for the judge to transcribe the concepts of violation or, as the case may be, the grievances, in order to comply with the principles of congruence and completeness in the judgments, since such principles are satisfied when the judge specifies the points subject to debate, derived from the amparo petition or the writ stating the grievances, studies them and provides an answer, which must be linked to and correspond to the issues of legality or constitutionality effectively raised in the corresponding pleading, without introducing aspects different from those that make up the *litis*. However, there is no prohibition against making such transcription, and it is left to the judge's prudent discretion whether or not to do so, taking into account the special characteristics of the case, notwithstanding that in order to satisfy the principles of completeness and congruence, the issues of legality or unconstitutionality that have been effectively asserted must be studied."[14]

---

[14] Published in the Mexican Federal Judicial Weekly and its Gazette, ninth period, volume XXXI, May 2010, common matter, page 830.

In the **first grievance**, the appellants state that the contested order violates Articles 1077 and 1324 of the Code of Commerce, which is of supplementary application to the Commercial Bankruptcy Law, since there is a lack of congruence and completeness.

They argue that the determination of not having competence to apply Article 87 of the Commercial Bankruptcy Law, and to declare "disregarded" clause 15.1 (g) (i) of the issuance agreement, under the consideration that it was subject to the laws and jurisdiction of the courts of Norway, in addition to the fact that there is no reciprocity between Mexico and such State, would mean:

1.  Disregarding the public interest pursued by the bankruptcy law and inviting foreign creditors to be immune from such precept.

2.  Disregarding the fact that commercial bankruptcy is a universal proceeding, in which the interests of the community concur, and not a bilateral proceeding. *Insofar as it states that "the competence of the Judge to hear a controversy between private parties of an international nature is determined based on the internal legal order of the State before which the claim is filed."*

3.  It was necessary to consider that the clause aggravates the situation of the company, regardless of the fact that this voluntary agreement is subject to the laws and courts of the Kingdom of Norway.

ULISES GARCIA MOLINA
30.30; 30.35; 30.30; 30.30; 30.3-I; 30.3-I; 30.38; 31.37
24/08/22 09:05:45



**FEDERAL JUDICIAL BRANCH**

FORM A-55

### Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*
*Issued in compliance with the judgment handed down in the indirect amparo proceeding No.*
*270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion*
*of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit,*
*in the motion for review of Civil Liability 108/2020.*

4. Infringement of res judicata and procedural preclusion, since it was analyzed whether it had competence to apply the provisions of the commercial bankruptcy law, when this was expressly assumed in the admissory proceedings and reiterated in the judgment declaring the bankruptcy, and although such resolutions have been challenged, they do not contest the competence. (Articles 354, 355 and 356 of the Federal Code of Civil Procedures).

5. It divides the continuity of the case, since upon assuming competence, the undersigned was empowered and obliged to apply the provisions of the Commercial Bankruptcy Law, in all matters regarding assets, rights and liabilities of the companies (bankruptcy estate), as well as related precautionary measures, including those related to transactions, events or foreign law, since there is no prohibition or limitation in this regard in the law of the matter. This is because in the chapter on international cooperation, the legislator recognized globalization and the existence of cross-border operations, foreseeing that in commercial bankruptcy, determinations are issued in national and foreign territory, including those for the protection of the bankruptcy estate.

6. That under the principle of equality, foreign and domestic creditors are recognized, regardless of whether they have contracted in Mexican territory or whether the supporting documents are governed by Mexican or foreign laws.

27

**7.**    That the principles of universality and uniqueness cover the company's assets, rights and liabilities, regardless of any cross-border barriers, otherwise it would not be an effective procedure, with the purpose of preserving the company, and it would be sufficient to transfer resources outside of Mexico to prevent them from being considered as part of the bankruptcy estate; therefore, under such interpretation, it would not be possible for liabilities incurred abroad, such as the one derived from the issuance agreement, to be recognized, either.

**8.**    That article 86 of the bankruptcy law does not establish that the provisions on obligations and contracts continue to be applied without limit, but rather that it is necessary to provide for the exceptions contained in articles 17 (competence), 88 (determination of amount of credits), 89 (credit valuation mechanisms), 87 (contractual provisions declared null and void), and 90 (compensation of rights and obligations); since otherwise, in the case of credits subject to foreign laws, it would be necessary to turn to the competent judicial authority to obtain a judgment and subsequently homologate it.

**9.** It states that the rule of Article 12 of the Federal Civil Code, regarding the fact that Mexican law is not applicable when dealing with rights subject to foreign laws and courts, is not applicable, since Mexican law does not provide for the application of foreign law when dealing with bankruptcy matters, since it is a matter of public order.



**FEDERAL JUDICIAL BRANCH**

FORM A-55

**Commercial Bankruptcy 345/2017-I**

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**10.** That the public order contemplated in the Commercial Bankruptcy Law has the purpose of limiting the use and enjoyment of the fundamental rights of the individuals and not to evade the application of the law of the matter.

**11.** That what was requested was, in order support of the universal competence that it has with respect to the company and its assets and rights, that the validity  of clause 15, section 15.1 of the issuance agreement as well as the validity of the effects of the legal acts that derived from its application be resolved.

**12.** Pursuant to article 15, section II, of the Federal Civil Code, there is a legal impediment against the application of foreign law, since it establishes that foreign law will not be applied when its provisions, or the result of its application, are contrary to fundamental principles or institutions of Mexican public order.

**13.** It is irrelevant whether or not there is reciprocity between Mexico and Norway, since the applicable law is Mexican law, because the application of foreign law is contrary to the fundamental principles and institutions of Mexican law.

In the second grievance, the appellant states that the effects of "disregarding [declaring null and void] the clause" means that it is not capable of producing any legal effect or action or

29

right ever, of whatever nature, and any effect generated is destroyed; therefore, it never produces legal effects, and not, as was held in the contested order, from the moment it is legally deemed disregarded [void and null].

Finally, in the **third grievance**, they essentially state that the determination to deny several precautionary measures lacks congruence and completeness, considering that pursuant to article 92 of the Commercial Bankruptcy Law, the companies are bound to comply with their contracts, unless this is opposed by the conciliator, because it is in the best interest of the bankruptcy estate.

However, the aforementioned legal provision refers to agreements pending execution or performance that are related to the ordinary operation and functioning of the company and that contain obligations to give or to do, without including the payment of previous credits or liabilities.

That in this case, none of the measures requested are related to contracts necessary for continuing with ordinary operation, that are pending execution or compliance by the companies; rather the purpose of the measures is to maintain the viability of the companies, and to prevent **Nordic Trustee As**, formerly Nordic Trustee ASA, and **Deutsche Bank México, sociedad anónima, institución de banca múltiple**, fiduciary division, in its capacity as trustee of the irrevocable administration and source of payment trust agreement identified under number

FORM A-55

### Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*



**FEDERAL JUDICIAL BRANCH**

F/1695, from foreclosing assets and rights of the companies to the detriment of the creditors.

### FOUR. Statements related to the hearings granted in the contested motion being resolved.

In this regard, it is noted that:

- **Nordic Trustee As**, formerly **Nordic Trustee ASA**, stated that the appellants do not dispute the main considerations of the appealed order, and only questioned the grounds and considerations related to the lack of authority to "disregard" a certain contractual clause; that is to say, they did not attack the consideration of the undersigned regarding the fact that it did not have the authority to disregard the mentioned clause.

- **For its part, Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., and Oro Negro Impetus, Pte. Ltd.,** through their Attorney-in-fact Manuel Ruiz de Chávez Gutiérrez de Velasco, state in response to the first claim that the Commercial Bankruptcy Law is based on the Political Constitution of the United Mexican States, whose application is limited

only to national territory, in accordance with the principles of state sovereignty that governs international law.

Therefore, the Commercial Bankruptcy Law and the jurisdiction of the judge lack extraterritorial binding force; that is, the judge has no authority to rule on its legality or to apply such law outside Mexican national territory.

The territorial applicability of the bankruptcy law is confirmed by the provisions of Article 16 of the said law, which provides that branches of foreign companies may be declared in bankruptcy, but such declaration will only cover assets and rights that can be located and enforceable in Mexican territory.

The Commercial Bankruptcy Law lacks rules on the application of laws in spatial terms, so that in accordance with Article 8, Section V, the Federal Civil Code is applicable, whose provision 13, Sections IV and V, provide that legal acts shall be governed by the law of the place of signature and the legal effects of contracts by the law of the place of performance, unless the parties have designated that another law is applicable, as is the case here.
Therefore, Mexican law restricts the competence of the judge to hear and decide the validity of the legal transactions entered into

ULISES GARCÍA MOLINA
30,30A,30B,30,33,30,30,30,30,30A,31,30,34,39,30,38,31,37
24:04/22 09:05:45



**FEDERAL JUDICIAL BRANCH**

### Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

abroad, with respect to which the parties voluntarily submitted to the jurisdiction of a foreign court.

The law governing the matter is of public and universal interest, referring to national actions, or those subject to national laws.

The bond issuance agreement did not attribute competence to the Mexican court with regard to either subject matter or territory, for which reason it should be prevented from hearing the case, since:

    a. It contains a jurisdiction clause, as requested in Article 1093 of the Commercial Code.

    b. It was only entered into by Oro Negro Drilling, PTE. LTD. and Nordic Trust, ASA.

    c. There is no point of contact on which to base competence.

Upon analyzing the competence to declare a specific contractual clause as "disregarded," it was found that *res judicata* and procedural preclusion were not violated, since said declaration implies nullity of a clause relating to an action other than and independent of commercial bankruptcy, entered into

abroad, and the competence of the Norwegian courts.

The issuance agreement constitutes a legal action different from and independent of commercial bankruptcy, with its own rules of jurisdiction and competency, and therefore Article 17 of the Commercial Bankruptcies Act should not be applied, but rather it should be analyzed under the rules of Articles 1093 and 1104 of the Commercial Code.

Pursuant to Article 13 of the Federal Civil Code, which supplements the bankruptcy law, the form of legal action is governed by the law of the location they are entered into, which in this specific case is Norway, in addition to the fact that it takes effect in the aforementioned country and the contracting parties are foreign entities.

Although the commercial bankruptcies law is public in nature, it is applicable to legal situations subject to national laws, but it cannot be considered applicable in violation of the sovereignty of another country.

The clause for which nullity is claimed does not worsen the company's situation, since it does not increase the receivables of the Singaporean companies, as it does not establish additional contractual penalties for which the companies are responsible that could increase the companies' liabilities.

**FORM A-55**

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

With respect to the second grievance, they claim it is inadmissible, because essential assumptions of the disputed ruling are not refuted, since the appellants claim Article 87 of the Commercial Bankruptcies Act was improperly interpreted, which is irrelevant given that lack of competence was declared.

With regard to the third grievance, they state that the bond issuance agreement is a contract pending execution since the acquired debt was for <span style="color:red">$939,100,570.00 (nine hundred thirty-nine million, one hundred thousand, five hundred seventy US dollars and 00/100),</span> and it has not yet been paid in its entirety.

What is more, upon requesting the measures, the danger of delay, the identification of the correct law and their appropriateness were not explained. Specifically, there was a failure to describe, demonstrate, and mention the need for the measure, and to cite the urgency of the measure, as well as its appropriateness based on real, present, and true factors.

- The **arbitrator** set forth that pursuant to Article 12 of the Federal Civil Code, Mexican laws govern all parties that are on national territory, as well as

35

actions occurring in the territory, except when the application of foreign law is provided for; and substantive foreign law must be applied, as it itself would do.

That the foreign law to which the parties were subject in the bond agreement is not applicable to this matter, as it violates the Mexican public order, and therefore pursuant to Article 87 of the Commercial Bankruptcies Act, Clause 15.1 must be declared inadmissible; the lack of reciprocity between the Mexican Government and the Kingdom of Norway is irrelevant, since said reciprocity is only relevant in the case of the execution of legal actions, i.e., the approval, enforcement or recognition of court decisions or resolutions.

It explains that there is a conflict of interest between the Commercial Bankruptcies Act, which provides [that] the company's continuity, preservation, and viability is a matter that falls under the public order, and the issuance agreement, which stipulates that the filing of a request for insolvency or commercial bankruptcy on the part of Perforadora Oro Negro, sociedad de responsabilidad limitada de capital variable is sufficient cause as to constitute an event or grounds for non-compliance, and consequently the bonds are declared as being delinquent.

Thus, the clause that is sought to be "disregarded" violates the Mexican legal order, in

ULISES GARCÍA MOLINA
39.38.30.01.30.30.30.30.10.34.21.30.14.39.39.38.31.37
24.04.22.09.00.45

36



FEDERAL JUDICIAL BRANCH

**FORM A-55**

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

rendering commercial bankruptcy prohibitive in Mexico, which is a violation of the human right to justice as set forth in Article 17 of the Federal Constitution.

Article 87 of the Commercial Bankruptcies Act makes no reference to the laws governing the respective contract, and it categorically notes that any stipulation that provides for modifications that aggravate the terms of agreements entered into by the parties to bankruptcy or their subsidiaries shall be considered disregarded.

It explains that the appealed decision is contrary to Article 87 of the Commercial Bankruptcies Act and the concept of commercial bankruptcy in Mexico, contravening the company's preservation, and that it cannot be agreed otherwise, since this would be a violation of Article 6 of the Federal Civil Code.

And that claiming otherwise would create an incentive for foreign contracting parties to include clauses to evade Mexican law.

Therefore, in accordance with the universal nature of the bankruptcy proceeding, the proceeding's administrator [*rector*] has universal competence to resolve any matter related to commercial bankruptcy.

37

Therefore, pursuant to Articles 91 and 92 of the Commercial Bankruptcies Act, it is requested that Clause 15.1 of the bond agreement not be applied, as this is therefore consistent with the nature of the bankruptcy assets.

- **Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, Trust Division** claimed that the sole grievance is unfounded, since the agreement was entered into and resolved with respect to the petition filed, and although it was not favorable, this did not imply a violation of the principle of external conformity.

**FIVE. Study.** In that regard, with a view to strict compliance with the concession of amparo [*protection*] granted to the companies by the **Eighth Collegial Civil Court of the First Circuit**, in the motion for review **R.C. 108/2020**, it is necessary to remember the established guidelines, to wit:

(…)

The measure disputed by the complainants is the resolution of February twenty-fifth, two thousand nineteen, handed down in commercial bankruptcy 345/2017 of Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable and Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, by the Second District Civil Court of Mexico City, which decided the motion for reconsideration filed by the companies against the decision of October eleventh, two thousand eighteen, in which it was determined that the bankruptcy court did not have authority to **disregard** a clause of the bond contract - bond issuance agreement - dated January twenty-fourth, two thousand fourteen, due to the fact that it involved a voluntary agreement subject to the laws and courts of Norway, without

ULISES GARCÍA MOLINA 30.30.30.31.30.30.30.30.30.14.31.30.14.39.30.38.31.37 24.00.22.99.60.45



**FORM A-55**

**Commercial Bankruptcy 345/2017-I**

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

the existence of reciprocity between both States that would allow for extraterritorial application of the law, in addition to the fact that the precautionary measures requested by the aforementioned appellants were denied.

It is to be reiterated that the constitutional case was restricted to determining the legality of the assumptions supporting the disputed ruling and it was concluded that the bankruptcy court does not have authority to **disregard Clause 15.1 of the bond issuance agreement** of January twenty-fourth, two thousand fourteen, entered into between Oro Negro Drilling Pte. Ltd. as "issuer," and Nordic Trustee Asa as "bond trustee."

The clause in question states:

"*15. Cases of non-compliance.*

*15.1 The bond trustee may declare the bonds as delinquent upon the occurrence of any of the following cases, each one only to the extent that said cases occur after the date of this document:*

*(…)*

*g) Insolvency and dissolution proceedings.*

*If any corporate action, legal proceeding or other phase of the procedure is filed by any party between the issuer, parent company or carrier, or any platform owner with respect to:*

*i) The suspension of payments, the default of any debt, liquidation, dissolution, administration or reorganization (by means of voluntary agreement, provisional liquidation, legal administration, agreement structure or in any way other than liquidation due to insolvency or reorganization."*

In the appealed ruling the concepts of violation were dismissed, in favor of those recurring here under the following premises:

1.- The amparo judgment is not a third instance in which the constitutional oversight entity may resolve on the merit of the issues filed with the original courts, as it is a case of autonomous judgment, the matter of which is different, and therefore it is not feasible, in a amparo judgment, to officially undertake an examination of the issues raised by the complainants with the natural deciding entity, because an examination of the constitutionality of the disputed action in question can only be carried out based on the concepts of violation.

2.- The complainants have expressed their desire to be subject to Norwegian law, and therefore in order to determine its competency, it is not consistent with the law that the court resort solely to internal legal standards to decide on the companies' claim.

3.- To determine whether it is feasible to apply foreign substantive law to interpret the bond issuance agreement, the court must conform to the provisions of Article 12 of the Federal Civil Code.

4.- Contrary to what the complainants claim, it is indispensable that they attest to the existence of the contents of the referenced law before the original federal court, as well as the reciprocity between the Government that will be applying the external law – Mexico, by reason of the processing of a commercial bankruptcy – and the foreign Government – Norway – the substantive law of which must apply in resolving the matter raised, but in not doing so, it was undeniable that the bankruptcy court was not required to apply foreign law to clarify the companies' claim.

5.- It is not feasible to claim that the District Court may validly consider disregarded a clause of the contract in question, and to declare as inadmissible the actions noted by the company, since that would imply the exclusion of a contractual stipulation of said agreement, in which the parties subjected themselves to Norwegian law, without the appellants having satisfied the burden referenced above.

6.- Contrary to the complainants' claim, the original federal court declared as unfounded the causes for appeal inherent to the claim that the refusal to decree the requested measures lacks conformity and exhaustiveness, as the contracts to which they refer must be fulfilled by the companies, unless the arbitrator objects in accordance with the provisions of Number 92 of the Commercial Bankruptcies Act, with respect to which it explained that this precept did not exclude those volitional agreements to

ULISES GARCÍA MOLINA
39,38,30,31,30,30,30,30,34,31,30,34,39,38,31,37
24:04:22 09:06:45

FORM A-55

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

which the complainants' claim sought to apply said measures.

From the above statements it may be found that, contrary to what the appellants claim, the appealed decision is not non-conforming, since the District Court analyzed its four grounds for non-compliance and stated why it deemed them as unfounded; hence, the disputed ruling is not non-conforming, since a reading of it will demonstrate that the federal court, when handing it down, clearly and precisely defined the disputed actions; it assessed the corresponding evidence to consider it as having been produced; and it identified the legal grounds on which it relied to deny the requested protection measures, as well as the deciding points based on which it drew its conclusions, analyzing those actions as to how they were proven to the responsible authority, thereby fulfilling the provisions stipulated in Articles 73, 74, and 75 of the Amparo Law.

In the **grievance** the appellants maintain that the appealed District Judge violated, to their detriment, Articles 74 of the Amparo Law, 1 and 87 of the Commercial Bankruptcies Act, and Article 12 of the Federal Civil Code, since the substantive law applicable to the case is Mexican law and not foreign law.

The appellants claim that this is so because under Article 1 of the Commercial Bankruptcies Act, all bankruptcy questions, and specifically those relating to the preservation of companies, form part of the public order and social interest, since they are aimed at protecting the interests of an entire community, and the purpose of that order is to maximize the value of a company in crisis by preserving it, thereby protecting the jobs of its human factors and avoiding negative economic repercussions on society.

They note that Article 6 of the Federal Civil Code provides that the will of private individuals cannot supersede compliance with the law, nor can it alter or modify it, and private rights can only be waived if they do not directly affect the public interest, which means that in the event that a contractual stipulation affects the public interest, it cannot be enforced, since said agreement would lack legal validity and, for those reasons, contrary to what the lower court decided, the substantive law applicable to resolving their petition to consider

41

a contractual clause as disregarded is Mexican law and, in particular, Article 87 of the Commercial Bankruptcies Act, which does not constitute an obstacle thereto when, in a bond issuance agreement, its parties have been subject to foreign law, since the provisions of the Commercial Bankruptcies Act are of public order to the extent that they seek the company's preservation, as its preservation is one of the legal goods protected by the State, for being of high importance to society and the national economy, and therefore, the provisions of the bankruptcy law are subject to immediate, territorial, and mandatory application, over any other law agreed to by the parties.

They explain that should Article 87 of the Commercial Bankruptcies Act not apply to the bond issuance agreement (on the pretext that in Clause 19.7.1 of said agreement the parties agreed to the application of Norwegian law), their principal creditor Nordic Trustee As would be permitted to declare an event of non-compliance, and thereby declare the acceleration of the bonds and carry out enforcement of the guarantees granted, i.e., it would be permitted to engage in private and unilateral seizure of the companies' assets (which is categorically prohibited by the Commercial Bankruptcies Act, and is a violation of the principle of *par condictio creditorum*), and application of the resource distribution mechanism pursuant to an F/1695 trust, which is contrary to the company's preservation, since these actions result in the imminent bankruptcy of the companies and prevent fulfillment of their ordinary operations, and thus it is clear that in accordance with Article 6 of the Federal Civil Code, it is necessary that Clause 19.7.1 of the bond issuance agreement not be followed, since by applying it, the social interest is directly affected.

The appellants' arguments have merit.

In effect, the Second District Civil Court of Mexico City hearing the appellants' commercial bankruptcy case had to determine in the appealed ruling, first of all, whether Clause 15.1 of the bond issuance agreement worsened the companies' situation, given that, as that collegial body ruled in the decision that resolved the motion for review 21/2019,[15] on

---

[15] *Due to the importance it has on the case, it is important to raise considerations that are of interest, due to their being the legal truth applied by this collegial court, in resolving motion for review 21/2019 in the decision handed down on March thirteenth, two thousand nineteen, which are the following:*

*"If, in the bond issuance agreement, the parties agree in Clause 19.7, Points 19.7.1, 19.7.2, and 19.7.3 that any conflict that might arise between the bond trustee, the bondholders, and any obligor, such as the carrier (in this case Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable) is to be resolved in accordance with Norwegian law, nevertheless, that subjection would not prevent the bankruptcy court from ruling on those precautionary measures that have the objective of preserving the assets in the commercial bankruptcy, and based on the requirement stipulated in Article 87 of the law in question, it could disregard any contractual stipulation that, due to the filing of the request for bankruptcy or its declaration, might establish modifications that aggravate the terms of the contracts for the Company.*

FORM A-55



**FEDERAL JUDICIAL BRANCH**

Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

---

*In effect, permitting the creditor Nordic Trustee Asa to enforce the guarantees would render invalid the companies' commercial bankruptcy, the principal objective of which is not to lead to the companies' failure, since this would affect the Government's economic objectives in terms of its subjects; rather, the principal purpose of the Commercial Bankruptcies Act is to protect companies and prevent widespread default on their payment obligations from endangering their viability and that of their business partners, i.e., it seeks to protect the company to preserve its operations and the jobs it creates, in order to preserve the equilibrium between the company and its creditors (…)*

*In accordance with the above articles, there is no legal impediment to the bankruptcy court's issuing a resolution with respect to the requested precautionary measure, **which is that the bond agreement not be enforced, with regard to the delivery to Nordic Trustee Asa of the guarantees corresponding to the self-lifting marine platforms** identified as Primus, Laurus, Fortius, Decus, and Impetus, since otherwise the party to the commercial bankruptcy would end up facing the absence of the assets that produce the operational cash flow of both the Company and the entities comprising its corporate group, potentially causing the bankruptcy of all of them, to the detriment of the objectives stipulated in the Commercial Bankruptcies Act.*

*In fact, **the bankruptcy court cannot rule with respect to those precautionary measures that result in the nullity, modification, exclusion, or cancellation of certain clauses of the bond issuance agreement** entered into on January twenty-fourth, two thousand fourteen and its amendments, since the parties that signed it agreed that any conflict that might arise between the bond trustee, the bondholders and any obligor, such as the carrier (in this case Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable), would be resolved in accordance with Norwegian law; however it may legally approve those that involve execution of the guarantees and whose purpose is contrary to preserving the companies' viability.*

*That is, that the marine platforms not be delivered to Nordic Trustee Asa, **but it does not have authority to cancel the bond issuance agreement, i.e., it cannot approve those precautionary measures aimed at modifying or annulling any declaration of breach of the bond issuance agreement**, because the parties agreed in Clause 19.7, Points 19.7.1, 19.7.2, and 19.7.3 that any conflict that might arise between the bond trustee, the bondholders and any obligor, such as the carrier (in this case Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable), would be resolved in accordance with Norwegian law, before the courts of that country.*

*The referenced measures are set forth by the objecting parties as follows:*

*"Render invalid:*

*"**I.- The notification of September twenty-fifth, two thousand seventeen**, entered into by Olav Slagsvold on behalf of Nordic Trustee ASA, in its capacity as mutual representative in the aforementioned bond issuance agreement, which sought to declare an event of non-compliance on the grounds of the original request for commercial bankruptcy;*

*__II.- The removal and new appointment of the directors of:__*

*__1.__ Oro Negro Drilling, Pte. Ltd.; __2.__ Oro Negro Primus Pte. Ltd.; __3.__ Oro Negro Laurus Pte. Ltd.; __4.__ Oro Negro Fortius Pte. Ltd.; __5.__ Oro Negro Decus Pte. Ltd.; and __6.__ Oro Negro Impetus Pte. Ltd.; and*

*__III.- Transfer of the shares representing the share capital of__ Oro Negro Drilling, Pte. Ltd."*

*Illustrative of the case are the considerations set forth by the First Chamber of the Federal Supreme Court of Justice, when ruling on the difference of opinions in case 372/2015, between those supported by the Second Collegial Civil Court of the Third Circuit and the First Collegial Civil and Labor Court of the Second Circuit, currently*

43

_the First Collegial Civil Court of the Second Circuit, in the final decision handed down November fifteenth, two
thousand seventeen, in which it said:_

**_"III. The determination of applicable law for trying the case and the applicable law for resolving the conflict
deriving from the international private legal relationship._**

_70. In general, the determination of applicable law for trying a case involving settlement of a dispute deriving
from an international legal relationship requires determining the international competence of the Court and its
internal competence; this is because if the Court recognizes its competence in these two environments, then
consequently, the jurisdictional process must be based on the provisions of its adjectival law, consistent with the
principle applying in matters of conflicting regulations known as "lex fori regit processum" (the law of the forum
governs the process); unless, depending on the circumstances of the specific case, under extraordinary
circumstances, any different procedural norm may be observed, deriving from a contractual source or
peculiarities of the internal order itself._

_71. On the other hand, the determination of the material or substantive law applicable in the situation of the
dispute (the law that will decide the grounds of the matter) necessarily requires the task of establishing which
law should govern the international material legal relationship, including determining, as the case may be,
whether only some aspects of the substantive legal relationship are regulated by the substantive law
corresponding to a specific State, while other aspects are subject to the law of a different State, since as has been
explained, the complexity that might arise from the international private legal relationship will depend on the
elements or points of connection of the latter with various legal orders._

_72. In the doctrine of private international law, it is necessary that determination if the law applicable to the
international private legal relationship be recognized as such in the internal law of any State legal systems
involved in the relationship, i.e., the right of the State where the claim is filed, or the right of a foreign State, but
it must always be the result of greater conformance to its nature and to the matter of the dispute; and the
applicable substantive norm must be single and adequate, since a legal relationship, or even a mere aspect of
one, must not be admitted as being subject to more than one legal system at the same time, under risk of conflict
(37) and consistent with elemental reasons of legal security._

_73. Thus, the norms of conflict that establish the rules for the choice of substantive law applicable to resolution
of the private international legal dispute generally conform to the element of the international legal relationship
that is a deciding factor in the case in question (the subjects, object, action and/or cause) and to its most objective
point of contact or connection with the law that, consistent with its nature, is appropriate for governing it, which
depending upon the relationship, may be the national law of the State where the claim was filed, or the law of
the foreign State._

_74. In that regard, doctrine recognizes, as basic criteria in determining that link between the legal relationship
and the substantive law that must govern it, that when the deciding factor of the legal relationship consistent
with the matter of dispute in question is based on the subjects (the person), the point of connection with
applicable law will favor the legal system corresponding thereto in accordance with its nationality or domicile;
when the deciding factor of the legal relationship is based on the assets (the object), the legal system prevailing
by nature will be that of their location; and when said deciding factor is its action or cause, the connection may
be defined as a function of the place it was entered into or the place of enforcement of the relative obligations;_

_this is in order that the substantive law determined as being applicable be the one that is most intimately linked
to the nature of the international private legal relationship and the dispute arising therefrom."_

_Given this state of affairs, the responsible Court **should not have failed to approve in their entirety** the
precautionary measures, **but rather ruled on the one in which it was requested not to enforce the guarantees
referenced in the bond issuance agreement,** amended and restated on April twenty-ninth, two thousand sixteen,_

ULISES GARCÍA MOLINA
30,30,30,30,1,30,1,30,30,30,34,31,30,34,39,38,31,37
2446122.09968v5

FORM A-55

## Commercial Bankruptcy 345/2017-I
*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

March thirteenth, two thousand nineteen, the bankruptcy court needed to rule on that situation, without concluding that it lacked competence, since pursuant to Article 87 of the Commercial Bankruptcies Act, the examining judge can validly consider as disregarded, any contractual stipulation that, due to the filing of a request or claim for commercial bankruptcy, or its declaration, establishes changes that aggravate the terms of the contracts for the Company.

Application of the aforementioned article does not imply either the disregard of a foreign law, nor invalidating, nullifying, modifying or extinguishing contracts under the protection of the laws to which the company and its creditors have been subject, but rather the goal is merely to not continue aggravating the situation of the company declared to be in bankruptcy, on the grounds that the bankruptcy procedure is being heard in Mexico and that its fundamental purpose is to preserve the company without failing to maintain a principle of equality among the creditors.

It is clear that if, in the appealed decision, the responsible court relied on the premise that the appellants sought to nullify the clause corresponding to the bond issuance agreement, the conclusions of its decision were incorrect, because what it should have unraveled was whether or not it was possible to not apply it, but instead relying on the basis that it can validly disregard any contractual stipulation that, by reason of the filing of a request or claim for commercial bankruptcy, or its declaration, results in modifications that aggravate the Company's situation.

---

amended June second, two thousand sixteen and September twenty-ninth, two thousand sixteen, and once again amended and restated in its entirety on November ninth, two thousand sixteen, providing for the prohibition on *Nordic Trustee Asa* to take over the self-lifting marine platforms identified as *Primus, Laurus, Fortius, Decus, and Impetus,* until such time as the matter in bankruptcy trial *345/2017* is resolved, **and to not rule on amending, annulling, or canceling the aforementioned bond agreement or its clauses or questions unrelated to the commercial bankruptcy**."

Along that line of thinking, in order to establish the possibility of not applying Clause 15.1 of the bond issuance agreement, the responsible court should have weighed whether it was viable to suspend certain effects of the aforementioned contract, noting what the consequences of their application would be, and whether or not these would aggravate the companies' situation.

It is to be understood that considering a contractual clause as disregarded does not imply modifying, annulling, or canceling the bond issuance agreement of January twenty-fourth, two thousand fourteen, <u>but rather seeking to suspend its effects for the sole purpose of not aggravating the situation of the company declared as being in commercial bankruptcy</u>.

The above makes it necessary to revoke the appealed decision and to grant to the complainants the shelter and protection of the Federal Justice Authorities that they are requesting, for the following purposes:

1.- In order for the responsible court to dismiss the appealed decision and in its stead hand down a new one in which:

2.- Based on the considerations of this final decision, it may establish the immediate consequences of the application of Clause 15.1 of the vote (*sic*) issuance agreement, to determine whether the companies' situation is worsened, and

3.- In the event it is concluded that the application of the clause in question worsens the companies' situation, it may cease to apply it, taking the appropriate cancellation measures under the law.

(…)"

As may be noted, **the review court <u>accepted</u>** the grounds for objection raised by the petitioners for purposes of determining **whether or not it is admissible for the undersigned judge to disregard** a clause of the bond issuance agreement dated January twenty-fourth, two thousand fourteen, as amended and restated on April twenty-ninth, two thousand sixteen, amended June second, two thousand sixteen and September twenty-ninth, two thousand sixteen, and once again amended and restated in its entirety on November



FORM A-55

Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

FEDERAL JUDICIAL BRANCH

ninth, two thousand sixteen, **entered into between** Oro Negro Drilling Pte. Ltd.**, as "issuer," and** Nordic Trustee Asa**, as "bond trustee**."

Evidencing that, **as it is the legal truth**, the undersigned, as bankruptcy judge, **cannot modify, annul, or cancel the bond issuance agreement of January twenty-fourth, two thousand fourteen**, as amended and restated on April twenty-ninth, two thousand sixteen, amended June second, two thousand sixteen and September twenty-ninth, two thousand sixteen, and once again amended and restated in its entirety on November ninth, two thousand sixteen, **but** pursuant to Article 87 of the Commercial Bankruptcies Act, **he indeed can** disregard any contractual **stipulation that, by reason of the filing of the bankruptcy request or its declaration, incorporates modifications that aggravate the terms of the agreements for the Company**.

Thus, in accordance with the guidelines developed by the amparo court, they ordered that it be determined:

1. What the **immediate consequences** of the application of Clause 15.1 of the bond issuance agreement are.

2. By virtue of said consequences, **determine** whether it aggravates the situation of the companies Perforadora

**Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable** and **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable.**

**3.** In the event it is concluded that the application of the clause in question worsens the companies' situation, provide for **disregarding it**, taking the appropriate cancellation measures under the law.

Now, for purposes of evidencing the **<u>first point</u>** in question, it is necessary to transcribe Clause **15.1 (g) (i)**[16] of the bond issuance agreement of January twenty-fourth, two thousand fourteen, as amended and restated on April twenty-ninth, June second, September twenty-ninth, and November ninth, all of the year two thousand sixteen, as well as Clauses **15.2, 15.3,** and **15.4**, which set forth the consequences of the declaration of *Delinquent bonds* (cases of non-compliance), in order to advise as to the immediate consequences in the event of the occurrence of an infraction, which read as follows:

"*15. Cases of Non-Compliance*

*15.1 The Bond Trustee may declare that the Bonds are delinquent after the occurrence of any of the following cases, for each one only to the extent that said cases occur after the date of this document:*

---

[16] Corresponding to this appeal instrument.

48

FORM A-55

FEDERAL JUDICIAL BRANCH

**Commercial Bankruptcy 345/2017-I**

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

*(…)*

*(g) Insolvency and dissolution procedures*

*In the event of any corporate action, legal proceeding, or other phase of the proceeding for any party among the Issuer, the Parent Company, the Carrier or any Platform Owner with respect to:*

*(i) the suspension of payments, the delinquency of any debt, liquidation, dissolution, administration or reorganization (by means of voluntary agreement, provisional liquidation, legal administration, agreement structure or otherwise) other than liquidation by insolvency or reorganization;*

*(…)*

***15.2** In the event that one or more of the circumstances mentioned in Clause 15.1 occurs and remains in effect, the Bond Trustee may, to protect the interests of the Bondholders, declare the Bonds in Circulation, including accrued interest, costs and expenses, as delinquent and due for immediate payment.*

*The Bond Trustee may, at its own discretion, implement the necessary measures to recoup the amounts owed in accordance with the Bonds in Circulation and all amounts pending*

49

*in accordance with this Bond Agreement and any other Financial Document.*

**15.3** *In the event that one or more of the circumstances mentioned in Clause 15.1 occurs and remains in effect, the Bond Trustee shall declare the Bonds in Circulation, including accrued interest, costs and expenses, as delinquent and subject to immediate payment if:*

*(a) The Bond Trustee receives a request in writing that Bondholders representing at least 1/5 (one-fifth) of the Bonds with Voting Rights be declared non-compliant, and the Bondholders Meeting has not provided for other solutions; or*

*(b) The Bondholders meeting ended, with a simple majority, by declaring the Bonds in Circulation as delinquent and due for payment.*

*In either case, the Bond Trustee shall implement every necessary measure to recoup the amounts owed in accordance with the Bonds in Circulation. The Bond Trustee may request a satisfactory pledge guarantee for any possible liability and anticipated expenses of those Bondholders that request that a declaration of non-compliance be filed in accordance with Sub-Clause (a) above and/or those that voted in favor of the decision pursuant to Sub-Clause (b) above.*

**15.4** *In the event that the Bond Trustee, pursuant to Clause 15.2 or 15.* [*sic*; number omitted in source] *declares the Bonds in Circulation as delinquent and due for payment, the Bond Trustee shall immediately deliver to the Issuer a notification*

FORM A-55

Commercial Bankruptcy 345/2017-I
*Motion for reconsideration*
*Issued in compliance with the judgment handed down in the indirect amparo proceeding*
*No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City,*
*on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil*
*Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

FEDERAL JUDICIAL BRANCH

*requesting the payment of interest and principal owed to the Bondholders in accordance with the Bonds in circulation, including interest accrued and interest on the amounts and expenses due. The claim deriving from the Bonds in Circulation due for payment as a result of a Case of Non-Compliance shall be calculated at the price set forth in Clause 10.1.1(a) for repayment on the Due Date.*"[17]

From the transcription in question, it may be deduced that a case of non-compliance as provided for in Clause **15.1** of the bond agreement, e.g., "*Insolvency and dissolution procedures,*" **results in the following consequences**:

- ▪ The Bond Trustee[18] (**Nordic Trustee ASA**) **declares the bonds in circulation**, including accrued interest, costs and expenses, as delinquent and due for **immediate payment.**

---

[17] **Definitions according to the bond agreement:**
**Bond Trustee: Nordic Trustee ASA.**
**Bonds:** Means the debt instruments issued by the Issuer pursuant to this Bond Agreement.
**Issuer: Oro Negro Drilling PTE. LTD.**
**Parent Company:** Means **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, a corporation organized in Mexico (Registration No. 413253-1).

[18] **Definition of Bond according to the bond agreement:**
"*2.5 Bonds*
*2.5.1 As from the Date of Modification, the Issuer shall have Bonds in Circulation representing total share capital of approximately USD 939,1005,570* [*sic*] *(nine hundred thirty-nine million, one hundred thousand, five hundred seventy US dollars) and accrued and unpaid interest of approximately USD 38,039,791 (thirty-eight million, thirty-nine thousand, seven hundred ninety-one US dollars).*
*2.5.2 The Par Value of each Bond is USD 1 (one US dollar) each with a minimal subscription and allocation of USD 200,000 (two hundred thousand US dollars) and whole multiples of USD 100,000 (one hundred thousand US dollars). The Bonds shall be classified* pari passu *between them.*"

- ▪ The bond trustee, at its discretion, shall implement the necessary measures to recoup the amounts owed in accordance with the bonds in circulation and all amounts pending in accordance with the bond agreement and any other financial document (agreed therein).

- ▪ The bond trustee shall immediately deliver to the Issuer (**Oro Negro Drilling PTE. LTD.**) a notification requesting payment of interest and principal owed to the Bondholders in accordance with the bonds in circulation, including accrued interest and interest on the amounts and expenses due.

The above – as may be seen in said agreement of intents[19] – has the effect of protecting the interests of Bondholders.

However, based on the above, it is necessary to determine, in accordance with **Point Two**, the ancillary effects of the protection, i.e., whether or not, as a result of the occurrence of one of the cases of non-compliance (Clause 15.1) listed in the bond agreement – *specifically Section (g), Sub-Section (i)*[20] **– it aggravates** the situation of the companies **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable** and **Integradora de Servicios Petroleros**

ULISES GARCÍA MOLINA 39.38.30.30.11.30.30.30.10.34.31.30.14.39.39.38.31.37 24.00.22.09.00.45

---

[19] This of course, without the undersigned, as bankruptcy judge, interpreting the bond issuance agreement of January twenty-fourth, two thousand fourteen, as the Protection Court established.

[20] Which is petitioned as being considered not opposed.

FORM A-55

Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

**Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable.**

This is based on the provisions set forth by the review court in the sense that the undersigned, as bankruptcy judge, **cannot modify, annul, or cancel the bond issuance agreement of January twenty-fourth, two thousand fourteen**, as amended and restated on April twenty-ninth, two thousand sixteen, amended June second, two thousand sixteen and September twenty-ninth, two thousand sixteen, and once again amended and restated in its entirety on November ninth, two thousand sixteen, but based on Article 87 of the Commercial Bankruptcies Act, that **he can indeed** consider disregarded any contractual stipulation which, by reason of the filing of the request for bankruptcy **or its declaration, established modifications that aggravate the terms of the agreements for the Company**.

In that regard, attentive to the immediate consequences agreed to by **Oro Negro Drilling Pte. Ltd.** as "issuer" and **Nordic Trustee Asa** as "bond trustee" in the case of the occurrence of a breach, it must be said that the clause in question **does indeed aggravate the situation for the companies**.

This is the case since, although the bond agreement does not expressly set forth the consequences that the appellants mention in covering only the

53

signatories **Oro Negro Drilling Pte. Ltd.** as "issuer" and **Nordic Trustee Asa** as "bond trustee," what is indeed the case is that the consequences stipulated for the event of non-compliance, combined with the "Financial Documents" and the annexes[21] related thereto, worsen the situation for the companies, since by reason of the notification of non-compliance of the bond agreement in question, the following was undertaken:

1. The change of directors of Drilling, Primus, Laurus, Fortius, Decus, and Impetus.

2. The transfer of shares representing the share capital of Drilling, owned by Integradora, in favor of **Ond. Pte. Ltd.**

3. The revocation[22] and granting[23] of powers of attorney by reason of the new appointment of directors of Drilling, Primus, Laurus, Fortius, Decus, and Impetus (Roger Arnold Hancock and Roger Alan Berlett).

---

[21] E.g.: Annex 2 CARRIER COMMITMENT FORM; Annex 3 GUARANTEE FORM; etc.

[22] As a result of the appointment of Roger Arnold Hancock and Roger Alan Bartlett as directors of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*, on October ninth, two thousand seventeen, they adopted certain director resolutions approving, among other things, the **cancellation of any and all authority and powers of attorney previously granted** by *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS* and the appointment of various individuals to act as legal representatives, attorneys in fact and attorneys of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*.

Similarly, on February fifth, two thousand eighteen, Roger Arnold Hancock and Roger Alan Bartlett, as directors of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*, decreed certain resolutions approving, among other things, **revocation** of the powers of attorney previously granted by *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS* in favor of Alonso del Val Echeverría, Gonzalo Gil White, Jaime Rene Guerra González, Patricio Fabián Hidalgo Estrada, Alfonso Peniche García, Román Salazar Castillo, Ernesto Luis Rodríguez León, Octavio Ochoa Huerta, Raúl García Herrera, Sergio Cabanas Mier, Elias Mendoza Murguía and **Jesús Ángel Guerra Méndez**. ("Second Revocation of Powers of Attorney").

[23] On October ninth, two thousand seventeen, Roger Alan Bartlett, in his capacity as director of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*, undertook the **granting of powers of attorney** in favor of Messrs. **Alejandro Sainz Orantes**, Daniel Alejandro Díaz Álvarez, **Manuel Ruiz de Chávez Gutiérrez de Velasco**, Ana Gabriela Avendaño Fernández, Luis Antonio Estrella Saavedra, Santiago Alessio Robles Seguí, Daniel Pardo Fuentes and Jesús Ángel Origel Zavala.

ULISES GARCÍA MOLINA 30.30.30.11,30.30.30,30.50,30.14,31,30.14,39,39,38,31,37 2440d 2ff c090.fe45

FORM A-55

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

4. The letters of resignation of Alonso del Val Echeverría, **Gonzalo Gil White**, Anita Chew Peck Hwa, and Carlos Enrique Williamson Nasi from their positions as directors of Drilling, Primus, Laurus, Fortius, Decus, and Impetus.

5. Any actions carried out by reason or as a consequence of the above.

As noted from the aforementioned immediate consequences as a result of one of the cases of non-compliance (Clause **15.1 (g) (i)**[24]), it allows **Nordic Trustee As** to declare an event of non-compliance, and thereby promote acceleration of the bonds and undertake enforcement of the guarantees granted, i.e., it is permitted to engage in the private and unilateral seizure of the assets the companies held in their possession – the self-lifting marine platforms – (which is categorically prohibited under the Commercial Bankruptcies Act and which constitutes a violation of the principle of *par condictio creditorum*) and recourse to the mechanism of

---

[24] "**15. Cases of Non-Compliance**

***15.1*** *The Bond Trustee may declare that the Bonds are delinquent after the occurrence of any of the following cases, each one only to the extent that said cases occur after the date of this document:*

*(…)*

*(**g**) Insolvency and dissolution proceedings*

*Upon the occurrence of any corporate action, legal proceeding or other phase of the proceeding by any party from among the Issuer, Parent Company, Carrier, or any Platform Owner with respect to:*

*(**i**) the suspension of payments, a moratorium on any debt, liquidation, dissolution, administration, or reorganization (by means of voluntary agreement, provisional liquidation, legal administration, agreement structure or otherwise) other than liquidation due to insolvency or reorganization; (…)"*

the distribution of resources pursuant to Trust F/1695, which is contrary to the preservation of the company, since said actions prevent the execution of its ordinary operations, and therefore it is clear that Clause **15.1 (g) (i)** of the bond issuance agreement is not being followed, since by reason of its application it directly affects the corporate interest.

In effect, allowing the creditor **Nordic Trustee Asa** to execute the guarantees would invalidate the companies' commercial bankruptcy, the principal objective of which is not to lead to the companies' bankruptcy, as this would affect the economic objectives of the State with respect to its governed parties, but rather the principal objective of the Commercial Bankruptcies Act is to preserve companies and prevent widespread default on their payment obligations, endangering their viability and that of their business partners, i.e., seeking to protect the company to preserve its operations and the jobs it creates, in order to maintain equilibrium between the company and its creditors.

Without it being an obstacle thereto that, in a bond issuance agreement, its parties have been subjected to foreign law, since the provisions of the Commercial Bankruptcies Act are of public order to the extent that they seek the company's preservation, as its preservation is one of the legal goods protected by the State, due to its being of high importance to society and the national economy, and therefore, the provisions of the bankruptcy law are subject to immediate, territorial and mandatory application, over any other law agreed to by the parties.



FORM A-55

**Commercial Bankruptcy 345/2017-I**

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding
No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City,
on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil
Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

In fact, **the bankruptcy judge cannot rule on the bond agreement involving the nullity, modification, exclusion, or cancellation of certain clauses** entered into on January twenty-fourth, two thousand fourteen, and its amending accords, since the parties that entered into it agreed that any conflict that might arise between the bond trustee, the bondholders, and any obligor, such as the carrier (in this case <span style="color:red">Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable</span>), would be resolved in accordance with Norwegian law; however, legally it may approve those that involve executing the guarantees, the purpose of which is contrary to preserving the companies' viability, although pursuant to Article 87 of the Commercial Bankruptcies Act, **it can indeed legally disregard any contractual stipulation which, by reason of the filing of the request for bankruptcy or its declaration, sets forth modifications that aggravate the terms of the agreements for the Company**.

Application of the aforementioned article – *as was considered by the collegial court in the final decision that resolved motion for review <span style="color:red">21/2019</span>* – does not involve either disregard of foreign law, nor does it dismiss, nullify, modify, or extinguish agreements under the protection of the laws to which the company and its creditors were made subject, but rather **seeks only to not aggravate the situation of the company declared as being**

57

**in bankruptcy, based on the fact that the bankruptcy proceeding is being heard in Mexico and that its basic objective is to preserve the company without failing to maintain a principle of equality among the creditors.**

Having set forth the above, in finding that the clause in question (**15.1 (g) (i)**) of the bond agreement **aggravates the situation of the companies Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable** and **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**; pursuant to **Point Three** of the ancillary effects of the protection, in **strict compliance** with the provisions set forth by the **Eighth Collegial Civil Court of the First Circuit**, in appeal for review **R.C. 108/2020**, the appeal for review that was filed by the aforementioned companies against the decision adopted **October eleventh, two thousand eighteen** is **well founded**, only with regard to the portion upheld by the review court. That is, **determining** whether or not it is admissible for the undersigned judge to consider a clause of the aforementioned bond issuance agreement as disregarded.

In view of the above, the agreement in question is **revoked in the portion corresponding** to the determination as to whether the undersigned judge, pursuant to Chapter V on the effects in relation to the Company's obligations, Section I General Rule and Early Maturity, Article 87 of the Commercial Bankruptcies Act,[25] can or cannot consider as unopposed [sic; possible source typo: probably should be "no puesta", i.e., "disregarded"]

---

[25] **Article 87.-** Any contractual stipulation which, by reason of the filing of a request or claim for commercial bankruptcy or its declaration, sets forth modifications that worsen the terms of the agreements for the Company, shall be considered as disregarded, subject to the exceptions expressly set forth in this law.

ULISES GARCÍA MOLINA 30.30.30.11.30.30.30.30.14.31.30.14.39.30.38.31.37 24.00.22.09.00.45



**FORM A-55**

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding
No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City,
on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil
Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

any contractual stipulation that, by reason of the filing of a request or claim for commercial bankruptcy, or its declaration, sets forth modifications that aggravate the terms of the agreements for the Company.

In that regard, as set forth by the companies in the instrument registered under number **18666** as well as the statements made by the **Eighth Collegial Civil Court of the First Circuit** in appeal for review <span style="color:red">**R.C. 108/2020**</span>, it is agreed that Clause **15.1 (g) (i)** of the bond issuance agreement dated January twenty-fourth, two thousand fourteen, as amended and restated on April twenty-ninth, June second, September twenty-ninth, and November ninth, all of two thousand sixteen, **aggravates** the situation of the companies <span style="color:red">**Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**</span> and <span style="color:red">**Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**</span>, and therefore shall **cease to be applied**.

As set forth by the aforementioned collegial court, the above shall not imply modifying, nullifying, or cancelling the bond issuance agreement of January twenty-fourth, two thousand fourteen, but rather a suspension of its effects for the sole purpose of not aggravating the company's situation – *being the legal truth.*

The corollary is that, in considering the aforementioned clause of the Issuance Agreement (as provided for in Chapter V on the effects related to the Company's obligations, Section I General Rule and Early Maturity, Article 87 of the Commercial Bankruptcies Act) as unopposed [sic; possible source typo: probably should be "no puesta", i.e., "disregarded"], the following **are rendered __invalid__**:

1. The notification of breach of the bond agreement in question.

2. The change of directors of Drilling, Primus, Laurus, Fortius, Decus, and Impetus.

3. The transfer of shares representing the share capital of Drilling, owned by Integradora, in favor of **Ond. Pte. Ltd.**

4. The revocation[26] and granting[27] of powers of attorney by reason of the new appointment of directors of

---

[26] As a result of the appointment of Roger Arnold Hancock and Roger Alan Bartlett as directors of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*, on October ninth, two thousand seventeen, they adopted certain director resolutions approving, among other things, the **cancellation of any and all authority and powers of attorney previously granted** by *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS* and the appointment of various individuals to act as legal representatives, attorneys in fact and attorneys of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*.

Further, on February fifth, two thousand eighteen, Roger Arnold Hancock and Roger Alan Bartlett, as directors of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*, decreed certain resolutions approving, among other things, **revocation** of the powers of attorney previously granted by *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS and ÍMPETUS* in favor of Alonso del Val Echeverría, Gonzalo Gil White, Jaime Rene Guerra González, Patricio Fabián Hidalgo Estrada, Alfonso Peniche García, Román Salazar Castillo, Ernesto Luis Rodríguez León, Octavio Ochoa Huerta, Raúl García Herrera, Sergio Cabanas Mier, Elias Mendoza Murguía and **Jesús Ángel Guerra Méndez**. ("Second Revocation of Powers of Attorney").

[23] On October ninth, two thousand seventeen, Roger Alan Hancock, in his capacity as director of *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS, and ÍMPETUS*, undertook the **granting of powers of attorney** in favor of Messrs. **Alejandro Sainz Orantes**, Daniel Alejandro Díaz Álvarez, **Manuel Ruiz de Chávez Gutiérrez de Velasco**, Ana Gabriela Avendaño Fernández, Luis Antonio Estrella Saavedra, Santiago Alessio Robles Seguí, Daniel Pardo Fuentes, and Jesús Ángel Origel Zavala.

FORM A-55

Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

**FEDERAL JUDICIAL BRANCH**

Drilling, Primus, Laurus, Fortius, Decus, and Impetus (Roger Arnold Hancock and Roger Alan Berlett [sic]).

5. The letters of resignation of Alonso del Val Echeverría, **Gonzalo Gil White**, Anita Chew Peck Hwa and Carlos Enrique Williamson Nasi from their positions as directors of Drilling, Primus, Laurus, Fortius, Decus, and Impetus.

6. Any actions carried out by reason or as a consequence of the above.

In view of the above, pursuant to Articles 268 of the Commercial Corporations Act and 1077 and 1355 of the Commercial Code, constituting supplemental materials to the law governing the matter, the following is

**RESOLVED**

**FIRST:** The grievances are **well founded** as filed by **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable** and **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, through their legal representative **Elías Mendoza Murguía**.

**SECOND:** In strict fulfillment of the decision handed down by the **Eighth Collegial Civil Court of the**

**First Circuit**, in appeal for review **R.C. 108/2020**, the decision of **October eleventh, two thousand eighteen is <u>revoked</u>**, for the purposes specified in Recital No. Five *in fine*.

**THIRD.** A copy of this resolution is to be remitted via internal email to the **Eleventh District Civil Court of Mexico City**, pursuant to the protection decision handed down by the **Eighth Collegial Civil Court of the First Circuit**, in appeal for review R.C. **108/2020**, relative to indirect amparo protection judgment **270/2019** of the index of the authority named first above.

*To be issued electronically to the companies Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable and Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable; to Nordic Trustee As and to trustee [síndico] José Gerardo Badín Cherit, and by means of a list to Oro Negro Drilling, Pte. Ltd., Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd. and Oro Negro Impetus Pte. Ltd., as well as to the rest of the parties, on the website of the Federal Judiciary Authority.*

Resolved and electronically signed by **Benito Arnulfo Zurita Infante**, Second District Civil Court Judge of Mexico City, assisted by **Ulises García Molina**, the secretary who so authorizes and attests.

<u>**MICHAEL**</u>

ULISES GARCIA MOLINA
30.30.30.11.30.30.30.10.34.31.30.14.39.39.38.31.37
24.04.22.09.04.45

**FORM A-55**



**FEDERAL JUDICIAL BRANCH**

## Commercial Bankruptcy 345/2017-I

*Motion for reconsideration*

*Issued in compliance with the judgment handed down in the indirect amparo proceeding No. 270/2019 of the docket of the Eleventh District Court in Civil Matters in Mexico City, on the occasion of the granting of writ of amparo by the Eighth Collegiate Court in Civil Matters of the First Circuit, in the motion for review of Civil Liability 108/2020.*

*- Electronic signature -*

**Benito Arnulfo Zurita Infante.**

**District Judge.**

*- Electronic signature -*

**Ulises García Molina.**

**Court Secretary.**

ON THIS DATE THE SECRETARY SETS FORTH THAT WITH RESPECT TO THIS AGREEMENT, OFFICIAL LETTER **1011/2021-C** WAS ISSUED TO THE **ELEVENTH DISTRICT CIVIL COURT OF MEXICO CITY, TO WHICH I ATTEST.**

Recorded **February 23, 2021.**

Publication in accordance with the law, notifying the parties of the above resolution.
**To which I attest.**

ULISES GARCIA MOLINA
30.30.30.30.31.30.30.30.30.30.34.31.30.34.39.38.31.37
24/04/22 09:00:45

63

[emblem]
**FEDERAL JUDICIAL AUTHORITY**

**ENCRYPTED EVIDENCE - TRANSACTION**

**Signed Archive:**
**6893983_0023000021664664775.p7m**
**Certifying Authority:**
**A.C. of the Tax Administration Department**
**Signatory(ies): 2**

| SIGNATORY | | | | |
|---|---|---|---|---|
| **Name:** | ULISES GARCIA MOLINA | **Validity:** | GOOD | Current |

| SIGNATORY | | | | |
|---|---|---|---|---|
| **Series No.:** | 30.30.30.30.31.30.30.30.30.30.34.31.30.34.39.39.38.31.37 | **Revocation:** | Good | Not revoked |
| **Date: (UTC/ CDMX)** | 2/22/21 22:53:12 - 2/22/21 16:53:12 | **Status:** | Good | Valid |
| **Algorithm:** | RSA - SHA256 | | | |

| | |
|---|---|
| **Signature chain:** | 67 55 89 95 a1 7f fd 79 95 d1 89 22 f7 cc a3 95 96 70 57 a8 47 90 b9 34 30 b6 b5 53 08 ff 70 4e bb 5d 62 17 ce af 10 46 6d d8 25 8d ce 1e 6c 71 01 ce 40 7f d3 5b 75 ac 36 9c eb aa d3 75 2c 48 ac c4 7e d0 29 e6 30 61 b9 60 4b df 01 f2 15 a4 b4 21 5f 6b db f3 55 f8 75 a9 95 c1 24 2a b4 67 7f 25 1d cb 39 d7 19 11 53 b6 fe 51 9c 45 71 3c 3e e4 a0 ec 76 1c 51 2d ee dd b5 8a 51 30 59 be 0b 66 0b 9b 5d cd 59 be 5b 82 42 a7 8e a3 47 80 73 30 10 9e 7a 4a b6 fc 8b 1b e8 2b c6 05 d5 0e c7 a9 9d 38 39 d5 f6 58 47 17 db 57 96 5a 48 89 02 b5 75 f2 62 29 f8 dc bf fa 9f 8c bc 38 cf 6f 61 39 24 95 51 83 5a 19 da dd 07 e6 9a 25 5a 24 05 1d a7 81 a3 5f 82 ee 39 de 28 3b cc 62 2d 05 f7 0f 97 fb 5b 45 c0 b3 f9 ef e4 42 cc ab 97 29 d0 4b 4c 0d 45 d3 88 aa 9b a4 01 ec 34 47 a5 9b |

| OCSP | |
|---|---|
| **Date: (UTC / CDMX)** | 2/22/21 22:53:23 - 2/22/21 16:53:23 |
| **Name of responder:** | OCSP delegated service of the SAT AC |
| **Issuer of responder:** | A.C. of the Tax Administration Department |
| **Series No.:** | 30.30.30.30.31.30.38.38.38.38.38.30.30.30.30.32.32 |

| TSP | |
|---|---|
| **Date: (UTC / CDMX)** | 2/22/21 22:53:13 - 2/22/21 16:53:13 |
| **Name of issuer of TSP response:** | Time Stamp Issuing Authority of the Federal Judiciary Council |
| **Issuer of TSP certificate:** | Intermediate Certifying Authority of the Federal Judiciary Council |
| **Identifier of the TSP response:** | 37974993 |
| **Stamped data:** | KSJkQ9PZbenrt22Y/0bsccoSooo= |

[emblem]
**FEDERAL JUDICIAL AUTHORITY**

| SIGNATORY | | | | | |
|---|---|---|---|---|---|
| **Name:** | BENITO ARNULFO    ZURITA INFANTE | | **Validity:** | GOOD | Valid |

| SIGNATORY | | | | |
|---|---|---|---|---|
| **Series No.:** | 70.6a.66.20.63.6a.66.00.00.00.00.00.00.00.00.00.00.8c.dc | **Revocation:** | Good | Not revoked |
| **Date:** (UTC/ CDMX) | 2/22/21 22:59:57 - 2/22/21 16:59:57 | **Status:** | Good | Valid |
| **Algorithm:** | RSA - SHA256 | | | |
| **Signature chain:** | 04 d6 9c 6c b0 ce a6 61 ea 56 b7 5c 36 1e 74 dd 3e 3c d9 ae 84 85 89 2b 66 47 e8 7e 09 63 b0 ac 7b 88 ec 4e e2 b7 19 d0 31 f6 7a 7c 2b 1b 67 9b e9 a3 17 0c 25 72 0e 6f 82 cb b8 9a ce 97 d5 89 8b 52 c9 62 03 1e 86 a9 a7 fe 94 5a 1c cb 07 db 99 e0 9c da 2e ec 53 57 36 27 85 6b e8 c0 d1 0b 15 db ff 35 8c 75 33 13 ca f4 7f 25 cb 28 49 9c 28 28 1f 8f 6b ce 28 3f 2e 54 2e 81 dc 48 b8 61 ca bc cd af 16 64 a2 f4 8e f7 1b 0b 35 1b cc 17 ff b0 4c a8 2e 21 b7 84 03 31 63 4c e6 19 fa c9 f5 ae b3 9a 92 5d d8 c9 4b 1f 4d 0a a9 a2 d6 94 5b 6b 63 0b a9 72 49 cf bb 6b 57 07 28 14 aa e4 a8 42 0f 1f 23 19 2f f3 14 5c c6 ca ac 5a 1f 89 d2 5b 88 9c 7a 50 21 42 70 24 94 fb 03 d6 aa 19 6c 6f 13 2e 1e 64 7f a7 52 5f 1a 56 87 b3 c0 c2 82 01 68 da 3b 94 25 91 1e c4 f7 23 36 37 71 91 | | | |

| OCSP | | |
|---|---|---|
| **Date: (UTC / CDMX)** | 2/22/21 22:59:57 - 2/22/21 16:59:57 | |
| **Name of responder:** | OCSP delegated service of the SAT AC | |
| **Issuer of responder:** | A.C. of the Tax Administration Department | |
| **Series number:** | 70.6a.66.20.63.6a.66.00.00.00.00.00.00.00.00.00.00.02 | |

| TSP | |
|---|---|
| **Date: (UTC / CDMX)** | 2/22/21 22:59:57 - 2/22/21 16:59:57 |
| **Name of issuer of TSP response:** | Time Stamp Issuing Authority of the Federal Judiciary Council |
| **Issuer of TSP certificate:** | Intermediate Certifying Authority of the Federal Judiciary Council |
| **Identifier of the TSP response:** | 37976766 |
| **Stamped data:** | tF5DhkENZLIrJyW/1kyRuvRUNLw= |

ULISES GARCIA MOLINA
30.30.30.30.13.30.30.30.30.14.31.30.14.39.38.31.37
34.04.22.09.08.65



# Portal de Servicios en Línea del Poder Judicial de la Federación

**Poder Judicial de la Federación**

# Acuse de Generación de Notificación

| | |
|---|---|
| **Órgano Jurisdiccional:** | Juzgado Segundo de Distrito en Materia Civil en la Ciudad de México |
| **Tipo de asunto:** | Procesos civiles o administrativos |
| **Número de expediente:** | 345/2017 |
| **Cuaderno:** | Procesos civiles o administrativos |
| **Parte notificada:** | Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable |
| **Notificación realizada por:** | |
| **Síntesis del acuerdo:** | Vistos los autos del concurso mercantil 345/2017-I, promovido por Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, para resolver el recurso de revocación interpuesto por las citadas comerciantes, contra el proveído de once de octubre de dos mil dieciocho, en cumplimiento a lo determinado por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito... |
| **Fecha del acuerdo:** | 22/02/2021 |
| **Fecha de publicación del acuerdo:** | 23/02/2021 |
| **Fecha en que se tiene por realizada la notificación:** | 23/02/2021 |
| **Hora de notificación:** | 11:06 |

La notificación realizada el 23/02/2021 a las 11:06 ha surtido efectos al haber transcurrido el plazo previsto en la fracción II del artículo 30 de la Ley de Amparo.



**PODER JUDICIAL DE LA FEDERACIÓN**

FORMA A-55

### Concurso Mercantil 345/2017-I
*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

**Ciudad de México, a veintidós de febrero de dos mil veintiuno.**

Vistos los autos del **concurso mercantil 345/2017-I**, promovido por **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, e **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, para resolver el **recurso de revocación** interpuesto por las citadas comerciantes, contra el proveído de <u>once de octubre de dos mil dieciocho</u>, en cumplimiento a lo determinado por el **Octavo Tribunal Colegiado en Materia Civil del Primer Circuito,** en el recurso de revisión **R.C. 108/2020;** y,

## R E S U L T A N D O

**PRIMERO. Interposición de recurso.** Mediante escrito presentado el diecinueve de octubre de dos mil dieciocho,[1] **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, e **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, por conducto de su apoderado **Elías Mendoza Murguía**, interpusieron recurso de revocación contra el proveído de once de octubre del año que transcurre, del contenido siguiente:

---

[1] Tomo X, fojas 1021 a 1074.

1

*"Ciudad de México, once de octubre de dos mil dieciocho.*

*Glósese a los autos el escrito con registro **18866**, signado por **Jesús Ángel Guerra Méndez**, apoderado de **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, e **Integradora de Servicios Petroleros de Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable.***

*Con el escrito de cuenta las concursas **solicitan que toda vez que el once de septiembre de dos mil dieciocho se emitió la sentencia de concurso mercantil,** y que de conformidad con el artículo 1 de la ley concursal, es de interés público conservar la empresa de las concursadas, evitando se ponga en riesgo su viabilidad, con fundamento en el artículo 87 de la Ley de Concursos Mercantiles, se **tenga por no puesta** la cláusula 15.1 (g) (i) del contrato de bonos (acuerdo de emisión) de veinticuatro de enero de dos mil catorce, modificado y reexpresado, el veintinueve de abril, dos de junio, veintinueve de septiembre y nueve de noviembre, todos de dos mil dieciséis, celebrado por **Oro Negro Drilling, Pte. Ltd.** (sociedad creada bajo las leyes de la República de Singapur), como emisora de bonos, y **Nordic Trustee As**, antes Nordic Trustee ASA (sociedad creada bajo las leyes de Noruega), como fiduciaria de los bonos en representación de los tenedores de bonos, del texto siguiente:*

*"15. Casos de incumplimiento.*

*15.1. El fiduciario de los bonos puede declarar que los bonos son morosos después de que ocurre cualquiera de los siguientes casos, en cada caso únicamente en la medida en que dichos casos ocurran después de la fecha del presente documento:*

*(…)*

*(g) Procedimientos de insolvencia y disolución.*

*Si se presenta cualquier acción corporativa, procedimiento legal u otra fase del procedimiento para cualquiera entre el emisor, la matriz, el fletador o cualquier propietario de la plataforma en relación con:*

*(i)      La suspensión de pagos, la moratoria de cualquier endeudamiento, la liquidación, la disolución, la administración o la reorganización (por medio del acuerdo voluntario, la liquidación provisional, la administración legal, el esquema de acuerdo o de otra manera) distinta a la liquidación por insolvencia o la reorganización;*

*(…)"*

*Sostienen, que dicha cláusula agrava la situación de las comerciantes, ya que permite a **Nordic Trustee As**, antes Nordic Trustee ASA (fiduciaria de los bonos y representante común), con la sola presentación de la solicitud de concurso mercantil de **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable,** (fletadora), e **Integradora de Servicios Petroleros de Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable** (matriz),*



FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

declare un evento de incumplimiento del contrato de bonos, y con ello acelera los bonos y ejecuta las garantías otorgadas, lo que en un procedimiento concursal afecta la distribución de recursos conforme al contrato de fideicomiso irrevocable de administración y fuente de pago *F/1695*.

Que dicha afectación se materializó ya que *Nordic Trustee As*, antes *Nordic Trustee ASA*, ejecutó la menciona cláusula, generándose los siguientes actos:

1.      Mediante correo electrónico enviado el veinticinco de septiembre de dos mil diecisiete por *Olav Slasgvvold*, por parte de la fiduciaria de los bonos, informó al apoderado de las concursadas y de *Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., y Oro Negro Impetus, Pte. Ltd.,* la denominada "notificación de incumplimiento", con motivo de la presentación de la solicitud concursal presentada por la fletadora.

2.      Notificó el incumplimiento y ejecución del "gravamen" del contrato de bonos, por lo que procedió a nombrar a *Roger Alan Bartlett* y *Roger Arnold Hanock*, como nuevos directores de *Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., y Oro Negro Impetus, Pte. Ltd.,* removiendo de dicho cargo a *Alonso del Val Echeverría, Gonzalo Gil White, Anita Chew Peck Hwa y Carlos Enrique Williamson Nasi.*

3.      El cinco de octubre de dos mil diecisiete, notificó la transmisión de las acciones representativas de capital social de *Drilling, Pte. Ltd.,* (a la firma del contrato de bonos, parte del grupo social de las comerciantes, ya que era una sociedad controlada por *Integradora)*, a la diversa moral *OND, Pte. Ltd.* (nacionalidad singapurenses), derivado de la ejecución del gravamen *Drilling.*

4.      Notificó a *Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, División Fiduciaria,* en su carácter de fiduciaria del contrato de fideicomiso irrevocable de administración y fuente de pago identificado con el número *F/1695*, que del acuerdo de emisión había derivado un evento de incumplimiento.

5.      El nueve de octubre de dos mil diecisiete, los nuevos directores adoptaron entre otras resoluciones, revocar los poderes previamente otorgados y designaron como nuevos representantes y apoderados de *Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro*

3

*Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* y *Oro Negro Impetus, Pte. Ltd., a Alejandro Sainz Orantes, Daniel Alejandro Díaz Álvarez, Manuel Ruiz De Chávez Gutiérrez De Velasco, Ana Gabriela Avendaño Fernández, Luis Antonio Estrella Saavedra, Santiago Alessio Robles Seguí, Daniel Pardo Fuentes* y *Jesús Ángel Origel Zavala.*

6.    *Manuel Ruiz De Chávez Gutiérrez De Velasco,* como apoderado de *Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* y *Oro Negro Impetus, Pte. Ltd.,* presentó desistimiento de la solicitud concursal radicada en el expediente *395/2017-I,* del índice de este juzgado.

7.    El cinco de febrero de dos mil dieciocho, por segunda ocasión, *Roger Alan Bartlett* y *Roger Arnold Hanock,* como nuevos directores de *Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* y *Oro Negro Impetus, Pte. Ltd.,* revocaron los poderes de *Alonso del Val Echeverría, Gonzalo Gil White, Jaime René Guerra González, Patricio Fabián Hidalgo estrada, alfonso Peniche García, Román Salazar Castillo, Ernesto Luis Rodríguez León, Octavio Ochoa Huerta, Raúl García Herrera, Sergio Cabañas Mier, Elías Mendoza Murguia* y *Jesús Ángel Guerra Méndez.*

Por lo que afirma, la ejecución de la cláusula agravó los términos del contrato para las comerciantes, ya que generó que en el extranjero la tenedora de los bonos ejecutara la garantía del contrato de bonos sobre las acciones de *Drilling, Pte. Ltd.,* pues anterior a la solicitud concursal era controlada por *Integradora de Servicios Petroleros de Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable,* generando saliera del grupo societario de las comerciante, para ser controlada por la moral singapurenses *OND, Pte. Ltd,* y en consecuencia las subsidiarias *Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,* y *Oro Negro Impetus, Pte. Ltd.,* dejaron de ser controladas indirectamente por *Integradora;* lo cual, generó la destrucción de los vínculos corporativos y patrimoniales que dotan de viabilidad las operaciones de las concursadas.

A efecto de tener una mejor claridad del problema jurídico plateado, se hace conveniente reiterar que al celebrarse el contrato de bonos, se reconoció que la **estructura financiera** de las comerciantes, iniciaba con *Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable,* como controladora de *Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable,* y de *Oro Negro Drilling, Pte. Ltd.*

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

*Que a través del contrato de bonos, Oro Negro Drilling Pte. Ltd, obtuvo un préstamo de Nordic Trustee As, antes Nordic Trustee ASA, con el que la primeramente citada como controladora de Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius., Pte. Ltd, Oro Negro Impetus Pte. Ltd., y Oro Negro Decus Pte. Ltd., adquirió cinco plataformas.*

*Ocurrido lo anterior, Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, celebró con Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius., Pte. Ltd, Oro Negro Impetus Pte. Ltd., y Oro Negro Decus Pte. Ltd., los contratos de fletamento a casco desnudo, por los cuales otorgó el uso y goce de las plataformas marinas Primus, Laurus, Fortius, Decus e Impetus, a cambio del pago de una contraprestación fija.*

*Obtenida la posesión de las plataformas, la comerciante celebró con Pemex Perforación y Servicios, los contratos de arrendamiento de las plataformas, cuya relevancia radica en el precio fijo o dentro de cierto parámetro y la vigencia determinada.*

*Fue así que Pemex Perforación y Servicios, se obligó a pagar las contraprestaciones por el arrendamiento de las plataformas, vía fideicomiso F/1695, en que se concentran los recursos, para que con posterioridad se realice la distribución en diversas partidas.*

*Entre las partidas en que se distribuye el patrimonio fideicomitido se encuentra la destinada al pago de la operación ordinaria de la comerciante (tripulación, mantenimiento de las plataformas, personal administrativo, entre otros) y las contraprestaciones a favor de las propietarias de las plataformas derivadas de los contratos de fletamento, que sirve para su operación ordinaria (activos de los contratos) y para transferirlo a Oro Negro Drilling Pte. Ltd., para pagar la deuda adquirida a través de la emisión de bonos.*

*Así, para estar en posibilidad de tomar una determinación en relación a la petición de la comerciante, también se considera conveniente, partir del interés público y empresa, como conceptos contenidos en el artículo 1 de la Ley de Concursos Mercantiles, del tenor siguiente:*

*"**Artículo 1**. La presente Ley es de interés público y tiene por objeto regular el concurso mercantil.*

*Es de interés público conservar las empresas y evitar que el incumplimiento generalizado de las obligaciones de pago ponga en riesgo la viabilidad de las mismas y de las*

5

*demás con las que mantenga una relación de negocios. Con el fin de garantizar una adecuada protección a los acreedores frente al detrimento del patrimonio de las empresas en concurso, el juez y los demás sujetos del proceso regulado en esta Ley deberán regir sus actuaciones, en todo momento, bajo los principios de trascendencia, economía procesal, celeridad, publicidad y buena fe."*

*En efecto, dicha disposición legal establece que el concurso mercantil es de "interés público", concepto que si bien es indeterminado, ha sido definido como la máxima expresión del interés social, como bien constitucionalmente protegido y **garantía tanto de las personas y autoridades para ejercer razonablemente sus derechos dentro del Estado**, cuyo fin es la armonía social en cuanto al legítimo ejercicio de los derechos, deberes, libertades y poderes con los que cuenta los gobernados, dentro del Estado.*

*Apoya lo anterior, la tesis I.4o.A.11 K (10a.), en la cual el Cuarto Tribunal Colegiado en Materia Administrativa del Primer Circuito sostuvo:*

*"**SUSPENSIÓN. NOCIÓN DE ORDEN PÚBLICO Y SU FINALIDAD.** El artículo 124 de la Ley de Amparo contiene los requisitos que deben satisfacerse a efecto de que pueda decretarse la suspensión del acto reclamado, entre los que se encuentra, que no se siga perjuicio al interés social ni se contravengan disposiciones de orden público. Por su parte, la Suprema Corte de Justicia de la Nación ha sostenido en diversos criterios que existe afectación a tales instituciones cuando con la concesión de esta medida se prive a la colectividad de un beneficio que le otorguen las leyes o se le infiera un daño que de otra manera no resentiría. De lo anterior puede afirmarse que el orden público constituye la máxima expresión del interés social, como bien constitucionalmente protegido, y una garantía de la sociedad para que las personas y autoridades ejerzan razonablemente sus derechos dentro del Estado, y no sólo consiste en el mantenimiento de la tranquilidad y bienestar colectivo, sino también conlleva la armonía social en cuanto al legítimo ejercicio de los derechos, deberes, libertades y poderes dentro del Estado; esto es, la coexistencia pacífica entre el poder y la libertad. Su finalidad principal es la libertad de los gobernados y asegurar la eficacia de sus derechos, siendo uno de los valores fundamentales que la Constitución Política de los Estados Unidos Mexicanos protege y debe ser privilegiado, en la inteligencia de que la libertad implica coordinación, responsabilidad, facultad de obrar con conciencia y acorde con las finalidades legítimas y no de desorden o que únicamente atiendan a intereses de la administración, considerados en abstracto. Objetivo que es acorde con la reforma a la fracción X del artículo 107 de la Constitución Política de los Estados Unidos Mexicanos, al disponer que en los casos concretos debe ponderarse la afectación real y su magnitud que incida en la sociedad frente al efectivo agravio que resientan intereses privados,*



FORMA A-55

**Concurso Mercantil 345/2017-I**
*Recurso de revocación*
*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto
270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de
México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado
en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

**PODER JUDICIAL DE LA FEDERACIÓN**

*especialmente cuando está de por medio y en entredicho
la legitimidad del actuar de la autoridad o apariencia del
buen derecho; por lo que con la eventual concesión de la
medida cautelar debe asegurarse el respeto al orden
público, haciendo un ejercicio razonable del derecho,
evitando un menoscabo grave al quejoso, y a los derechos
de otras personas que, de no ser por la limitación,
resultarían deteriorados o disminuidos, subsistiendo con
ello el equilibrio que debe imperar entre el legítimo y
armónico ejercicio de los derechos, deberes, libertades y
poderes del Estado en relación con la libertad de las
personas, y del cual existe interés de la colectividad en
que se mantenga."*[2]

También es orientador, lo contenido en la tesis
aislada I.3o.C.926 C, en la cual el Tercer Tribunal
Colegiado en Materia Civil del Primer Circuito consideró:

*"**ORDEN PÚBLICO. SU NOCIÓN Y CONTENIDO
EN LA MATERIA CIVIL.** El campo civil como espacio en
el que confluye y se regula la actividad privada de los
particulares no es ajena a esa noción que constituye su
límite a través de la norma, como la garantía de que no
será obstaculizada esa actividad delimitada por la propia
ley. Así se desprende del artículo 6o. del Código Civil para
el Distrito Federal cuando dispone que la voluntad de los
particulares no puede eximir de la observancia de la ley, ni
alterarla o modificarla, conforme a lo cual se le reconoce a
la ley su carácter primario de fuente del derecho y como
rectora del orden social, sobre la base inclusive de que,
sólo pueden renunciarse los derechos privados que no
afecten directamente al interés público, cuando la renuncia
no perjudique derechos de tercero. Más aún, en el mismo
ordenamiento destaca como norma de resolución de
conflictos, la fracción II del artículo 15 del mismo
ordenamiento al indicar que no podrá aplicarse el derecho
extranjero cuando las disposiciones de éste o el resultado
de su aplicación sean contrarias a principios o
instituciones fundamentales del orden público mexicano.
La idea de autonomía individual viene determinada por
dos dimensiones; la primera de ellas que atiende a la
noción de interés público que se traduce en la existencia
de leyes imperativas que, por su naturaleza, no pueden
ser derogadas por los particulares porque defienden el
interés de éstos así como del Estado y, la segunda, que se
traduce en un mecanismo jurídico de aplicación
jurisdiccional que se interesa por velar por el interés
general limitando cualquier actividad privada que atente
contra el mismo. De ese modo, puede diferenciarse a la
norma imperativa de la norma de orden público, ya que*

---

[2] Localizable en el Semanario Judicial de la Federación y su Gaceta, Libro XV, Diciembre de
2012, Tomo 2, Décima Época, registro: 2002421, materia común, página: 1575.

*mientras esta última siempre es imperativa, no toda norma imperativa es de orden público."³*

Por tanto, el procedimiento concursal pretende el **orden en el proceso de restructura de la empresa**, para que pueda continuar operando y con ello se mantengan las fuentes de empleo y factores de producción, situación de la cual nace el orden público, a fin de que se reduzca en lo posible los efectos sobre la sociedad.

Es así que, el procedimiento concursal busca conservar la empresa, y que con ello se afecte lo menos posible las relaciones jurídicas que el comerciante entabló antes del incumplimiento.

La legislación concursal mexicana se enfoca a mantener el valor económico y que los bienes no sean objeto de ejecución particular, en perjuicio de la distribución ordenada de los recursos de la comerciante, para el pago de obligaciones frente a los acreedores, según el orden de prelación.

En relación al concepto de empresa, aquel no está definido en la ley concursal, pero se desprende de la exposición de motivos de la Ley de Concursos Mercantiles publicada en el Diario Oficial de la Federación el doce de mayo de dos mil, en donde se consideró lo siguiente:

*"(…)La empresa, considerada como la organización de trabajo, bienes materiales e intangibles destinados a producir u ofrecer profesionalmente bienes y servicios al mercado, con fines lucrativos, puede tener éxito o bien encontrarse en serias dificultades que amenacen su supervivencia (…)"*

Lo anterior se corrobora con el concepto obtenido del *Gran Diccionario Jurídico de los Grandes Juristas* de su recopilador Javier G. Canales Méndez (fojas 534 y 535), en el que se conceptualiza a la empresa de la siguiente manera;

*"Es una entidad de actividades humanas coordinadas, para la realización de un fin económico y social, la que se compone de empresarios, que aportan el capital de trabajadores que aportan su fuerza de trabajo y que es regida por las normas aplicables a su naturaleza, lo que generalmente produce bienes y servicios para satisfacer, mediante una ganancia, la demanda y necesidad de la sociedad"*

De igual manera del proceso legislativo del que derivó la Ley de Concursos Mercantiles, se advierte que el legislador no fue ajeno a las relaciones transfronterizas entre entidades de diversos estados, ya que reconoció las modificaciones y la evolución del ambiente de negocios y la complejidad de las relaciones comerciales

---

³ Visible en el Semanario Judicial de la Federación y su Gaceta, registro: 162333, novena época, tomo XXXIII, Abril de 2011, materia civil, página 1350.

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto
270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de
México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado
en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

contemporáneas y los factores de carácter internacional que influyen en la economía nacional, ya que específicamente consideró:

"Las condiciones sociales y económicas que prevalecían en México en la década de los años cuarenta se han transformado radicalmente. Nuestra población se ha multiplicado en cinco veces el producto interno bruto ha crecido en más de quince veces la participación de los sectores industrial y de servicios se ha incrementado significativamente y la del sector primario se ha reducido. El crecimiento demográfico y la marcha del campo hacia la ciudad han sido de gran magnitud Los avances en las telecomunicaciones y los medios de transporte se han dado a pasos agigantados, en ese entonces inimaginables.

La forma de hacer negocios también es distinta. Anteriormente la mayoría de las empresas comerciales eran unipersonales o familiares y relativamente fáciles de administrar. Hoy en día las relaciones comerciales son más complejas y sujetas a un mayor número de factores, algunos de carácter internacional que afectan la vida económica de las naciones individualmente consideradas - aunque de distinta forma y grado -, y otros que son propios de las realidades nacionales; que inciden sobre la marcha de la empresa. Los ciclos de los productos se han hecho más cortos, y las empresas están expuestas a cambios más frecuentes. y en ocasiones más pronunciados, en las condiciones de los mercados financieros. Todo ello obliga a las empresas a transformarse más rápidamente.

La economía, de ser típicamente regional fue integrándose hacia una economía nacional, hasta entrar en una etapa de inserción en la economía mundial. Paralelamente, los mercados de dinero y bursátil, que hace medio siglo eran prácticamente inexistentes. han adquirido una gran preponderancia como medio de financiamiento del desarrollo. Nuestro país se ha integrado a la economía mundial en respuesta a los beneficios que ofrece el proceso de globalización, no sólo en lo que se refiere al intercambio de bienes y servicios con el exterior, sino que también se ha integrado a los crecientes flujos financieros y de inversión.

Las cadenas productivas se integran vertical y horizontalmente, nacional e internacionalmente, tecnológica y sectorialmente. La mayor competitividad obliga a unas empresas a responder ágilmente a los nuevos nichos de mercado y a abandonar aquéllos donde se dejan de tener ventajas competitivas. A medida que la sociedad se moderniza, aumenta el número de empresas, y de la misma manera los factores que hacer variar su competitividad, rentabilidad y permanencia en el mercado.

*(…)"*

*Por su parte, los artículos 86 y 87 de la Ley de Concursos Mercantiles, disponen lo siguiente:*

*"**Artículo 86**. Con las excepciones que señala esta Ley continuarán aplicándose las disposiciones sobre obligaciones y contratos, así como las estipulaciones de las partes.*

***Artículo 87.** Se tendrá por no puesta, salvo las excepciones expresamente establecidas en esta Ley, cualquier estipulación contractual que con motivo de la presentación de una solicitud o demanda de concurso mercantil, o de su declaración, establezca modificaciones que agraven para el Comerciante los términos de los contratos."*

*De la interpretación sistemática de las anteriores disposiciones, se tiene que derivado de la sentencia de concurso mercantil siguen aplicándose las disposiciones sobre las obligaciones y contratos, así como las estipulaciones de las partes, salvo aquellas que con motivo de la presentación de la solicitud concursal o su declaración establezcan modificaciones que agraven los términos del contrato para la comerciante.*

*Es así que, por disposición de la ley, una cláusula que agrava la situación de la comerciante, por la sola presentación de la solicitud concursal o declaración, no producirá efecto legal alguno, tornándose inexistente dentro del sistema jurídico mexicano.*

*Ello en atención a que la ley concursal reconoce como objetivo central del procedimiento la maximización del valor de la empresa en problemas económicos y financieros, cuya intención es preservarla, protegiendo las fuentes de empleo y reduciendo los efectos negativos en la sociedad que produce el cierre de una empresa.*

*También dicha sanción atiende a que el pacto contractual en esos términos, se torna antagónico al interés público de la ley concursal, consistente en la conservación de la empresa y se busca evitar que la comerciante en problemas sea objeto de ejecución particular, y pueda estar en aptitud de llevar a cabo un procedimiento de liquidación judicial que permita mayor valor en la enajenación, procurando un equilibrio entre la comerciante y sus acreedores.*

*Es así que, se tendrá por no puesto el pacto entre particulares, esto es no generara consecuencia jurídica alguna y de haber ocurrido, éstos se retrotraerán al momento en que se declare judicialmente por no puesta, con lo que se destruyen los actos de que se trate.*

*Al margen de lo expuesto, se hace necesario determinar si la ejecución de una cláusula de un contrato sometido a una legislación extranjera, puede ser declarada*

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

por no puesta, en términos del artículo 87 de la Ley de Concursos Mercantiles.

Lo anterior toda vez que, en ejercicio de la autonomía de su voluntad y libertad contractual, las partes que celebraron el contrato de bonos que contiene la cláusula que las concursadas pretenden se tenga por no puesta, en relación a la legislación aplicable y el tribunal competente para resolver cualquier controversia, se sometieron a la legislación y tribunales Noruegos, como se aprecia de la cláusula 19.7 denominada "Resolución de conflictos y jurisdicción legal", del tenor siguiente:

"19.7 Resolución de conflictos y jurisdicción legal
19.7.1 El presente Contrato de Bonos y todos los conflictos que surjan de o en relación con el presente Contrato de  Bonos entre el Fiduciario de los Bonos, lo Tenedores de Bonos y cualquier Obligado estarán regidos por la Ley de Noruega.
19.7.2 Todos los conflictos que surjan de o en relación con el presente Contrato de Bonos entre el Fiduciario de los Bonos, los Tenedores de Bonos y cualquier Obligado y/o el Fletador, sujetos a las disposiciones de la siguiente Cláusula 19.7.3, se resolverán de manera exclusiva en los tribunales de Noruega, con el Tribunal de Distrito de Oslo como Jurisdiccional legal única.
19.7.3 La Cláusula 19.7.2 es sólo para el beneficio del Fiduciario de los Bonos. Como resultado, no se impedirá que el Fiduciario de los Bonos instituya procedimientos relacionados con un conflicto en cualquier otro tribunal con jurisdicción. Hasta el grado permitido por la ley, el Fiduciario de los Bonos puede instituir procedimientos concurrentes en cualquier número de jurisdiccional."

Por lo cual, aun y cuando en términos de los artículos 1 y 7 de la ley de concursos mercantiles, el suscrito como rector del procedimiento tiene la obligación y facultades para conservar la empresa, dicho actuar debe realizarse dentro de su ámbito competencial.

Por lo que en el caso concreto, previo a determinar si la cláusula 15.1 (g) (i) del contrato de bonos (acuerdo de emisión) de veinticuatro de enero de dos mil catorce, modificado y reexpresado, el veintinueve de abril, dos de junio, veintinueve de septiembre y nueve de noviembre, todos de dos mil dieciséis, celebrado por **Oro Negro Drilling, Pte. Ltd.** (sociedad creada bajo las leyes de la República de Singapur)**,** como emisora de bonos, y **Nordic Trustee As**, antes Nordic Trustee ASA (sociedad creada bajo las leyes de Noruega), agrava la situación de las comerciantes por virtud del presente procedimiento, y con base en la legislación concursal mexicana, se tenga por no

11

puesta, el suscrito debe proceder a determinar si cuenta con competencia para ello, por tratarse de un pacto entre particulares que se sujetó a la ley y tribunales de Noruega.

Lo anterior, ya que la Convención Americana, como la Constitución General son coincidentes en establecer que la tutela de un derecho humano se encuentra sujeta a determinados presupuestos y requisitos, los cuales deben ser razonables y encontrar una justificación en las necesidades de la propia administración de justicia.

Uno de estos presupuestos es, precisamente, la competencia del órgano jurisdiccional.

En ese sentido, la Convención Americana sobre Derechos Humanos, en su artículo 8.1[4] reconoce expresamente a la competencia como un requisito para el ejercicio del derecho de acceso a la justicia.

Al respecto, la Corte Interamericana de Derechos Humanos ha sostenido que el ser juzgado por un Juez competente es "un principio básico del debido proceso", razón por la cual, en el ámbito internacional la competencia se configura como un presupuesto necesario al ejercicio del derecho en cuestión, el cual encuentra plena justificación en el eficiente desarrollo de la administración de justicia.

Asimismo, en el contexto de la convencionalidad del fuero para ser juzgado por determinado tribunal, la Corte Interamericana ha reconocido que la necesidad de ser juzgado por un Juez competente constituye un derecho sustantivo y que la competencia del mismo solamente puede devenir de la ley.

En efecto, ha sostenido que la existencia y competencia del Juez natural deriva de la ley, por lo que el fuero no necesariamente entra en colisión con este derecho, si aquél se encuentra expresamente establecido y definido por el Poder Legislativo y atiende a una finalidad legítima. Si, por el contrario, la ley no consagra el fuero y éste es establecido por el Ejecutivo o por el propio Poder Judicial, distrayéndose así al individuo del tribunal que la ley consagra como su Juez natural, se vería vulnerado el derecho a ser juzgado por un Juez competente.

A su vez, de la parte conducente de los artículos 14 y 17 Constitucionales[5], se advierte que el derecho

---

[4] "Artículo 8. Garantías judiciales
"1. Toda persona tiene derecho a ser oída, con las debidas garantías y dentro de un plazo razonable, por un Juez o tribunal competente, independiente e imparcial, establecido con anterioridad por la ley, en la sustanciación de cualquier acusación penal formulada contra ella, o para la determinación de sus derechos y obligaciones de orden civil, laboral, fiscal o de cualquier otro carácter."

[5] "Artículo 14. A ninguna ley se dará efecto retroactivo en perjuicio de persona alguna.
"Nadie podrá ser privado de la libertad o de sus propiedades, posesiones o derechos, sino mediante juicio seguido ante los tribunales previamente establecidos, en el que se cumplan las formalidades esenciales del procedimiento y conforme a las leyes expedidas con anterioridad al hecho. ..."



*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto
270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de
México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado
en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

fundamental al debido proceso, constituye uno de los ejes
rectores de la protección del gobernado frente a los actos
de autoridad. En ese sentido, el derecho al debido proceso
reviste superlativa importancia en el orden jurídico
mexicano, en cuya integración se imbrica, como uno de
sus elementos, la competencia del órgano jurisdiccional.

Así, la competencia constituye un presupuesto
básico en la integración de la relación entre el Juez y las
partes, **constituye el límite objetivo al ejercicio de la
jurisdicción**, y como tal, la competencia se instituye como
elemento de validez de la resolución que en su caso dicte
el órgano jurisdiccional.

En otras palabras, la competencia implica que quien
ha de ser juzgado sólo podrá serlo por el órgano que esté
facultado por ley para hacerlo.

Lo anterior con sustento en la jurisprudencia emitida
por el Pleno de la Suprema Corte de Justicia de la Nación,
publicada en la Gaceta del Semanario Judicial de la
Federación, tomo 77, mayo de 1994, página 12, materia
común, octava época, que dice:

"**COMPETENCIA. SU FUNDAMENTACIÓN ES
REQUISITO ESENCIAL DEL ACTO DE AUTORIDAD**.-
Haciendo una interpretación armónica de las garantías
individuales de legalidad y seguridad jurídica que
consagran los artículos 14 y 16 constitucionales, se
advierte que los actos de molestia y privación deben, entre
otros requisitos, ser emitidos por autoridad competente y
cumplir las formalidades esenciales que les den eficacia
jurídica, lo que significa que todo acto de autoridad
necesariamente debe emitirse por quien para ello esté
facultado expresándose, como parte de las formalidades
esenciales, el carácter con que se suscribe y el dispositivo,
acuerdo o decreto que otorgue tal legitimación. De lo
contrario, se dejaría al afectado en estado de indefensión,
ya que al no conocer el apoyo que faculte a la autoridad
para emitir el acto, ni el carácter con que lo emita, es
evidente que no se le otorga la oportunidad de examinar si
su actuación se encuentra o no dentro del ámbito
competencial respectivo, y es conforme o no a la
Constitución o a la ley; para que, en su caso, esté en
aptitud de alegar, además de la ilegalidad del acto, la del
apoyo en que se funde la autoridad para emitirlo, pues
bien puede acontecer que su actuación no se adecue

"Artículo 17. Ninguna persona podrá hacerse justicia por sí misma, ni ejercer violencia para
reclamar su derecho.
Toda persona tiene derecho a que se le administre justicia por tribunales que estarán expeditos
para impartirla en los plazos y términos que fijen las leyes, emitiendo sus resoluciones de
manera pronta, completa e imparcial. Su servicio será gratuito, quedando, en consecuencia,
prohibidas las costas judiciales. ..."

13

*exactamente a la norma, acuerdo o decreto que invoque, o que éstos se hallen en contradicción con la ley fundamental o la secundaria."*

De ahí que el Alto Tribunal y la Corte Interamericana han sido coincidentes en reconocer que la competencia, lejos de restringir el derecho humano de acceso a la justicia, constituye un presupuesto de suma importancia en la efectiva protección de este derecho, en tanto constituye un elemento que responde a la exigencia de una correcta y eficiente administración de justicia, pero que además otorga al gobernado una esfera de protección frente al órgano que habrá de conocer de sus planteamientos.

Ahora, es importante reconocer que este presupuesto al ejercicio del acceso a la justicia debe cumplir con determinados requisitos.

En efecto, la competencia, como un presupuesto para garantizar el derecho de acceso a la justicia, exige que los parámetros o elementos que al efecto se establezcan para configurarla, deben plantearse en términos claros, congruentes y accesibles para el gobernado, a efecto de que éste tenga la posibilidad real de poder determinar, con una razonable claridad, el órgano ante el cual debe acudir a defender sus derechos.

Así, una vez cumplidas estas obligaciones por parte del Estado a efecto de garantizar y tutelar el efectivo ejercicio del derecho de acceso a la justicia, **la exigencia para el gobernado de presentar su demanda, recurso o medio de defensa ante la autoridad competente, constituye la carga procesal mínima que debe satisfacer a efecto de poder acceder a las instancias jurisdiccionales a reclamar la violación a sus derechos**.

Lo antes expuesto tiene sustento en las consideraciones realizadas por la Segunda Sala de la Suprema Corte de Justicia de la Nación al resolver la contracción de tesis 107/2014, de donde prevaleció con el carácter de jurisprudencia el criterio de rubro y texto siguiente:

*"**INCOMPETENCIA POR RAZÓN DE LA MATERIA EN EL JUICIO DE NULIDAD DEL TRIBUNAL FEDERAL DE JUSTICIA FISCAL Y ADMINISTRATIVA. SUS CONSECUENCIAS JURÍDICAS**. Cuando el Tribunal Federal de Justicia Fiscal y Administrativa advierta que carece de competencia por razón de la materia para conocer de una demanda de nulidad, deberá declarar la improcedencia del juicio en términos del artículo 8o., fracción II, de la Ley Federal de Procedimiento Contencioso Administrativo, sin que ello implique vulnerar el derecho de acceso a la justicia reconocido en los artículos 17 de la Constitución Política de los Estados Unidos Mexicanos, así como 8, numeral 1 y 25 de la Convención Americana sobre Derechos Humanos, pues el*

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

ejercicio de este derecho se encuentra sujeto al cumplimiento de determinados requisitos, presupuestos y cargas procesales que no deben soslayarse en detrimento de la correcta y eficiente administración de justicia, como lo es la carga procesal dispuesta de manera asequible al gobernado, de presentar el recurso efectivo ante el tribunal competente. En las relatadas condiciones, se concluye que, ante la incompetencia por razón de la materia, el referido tribunal no está obligado a remitir el asunto a la autoridad que considere competente."

Por otra parte, la Suprema Corte de Justicia de la Nación, ha determinado que tratándose de la competencia de un Juez para conocer de un conflicto derivado de la relación jurídica privada internacional, la labor de establecer la competencia judicial para conocer de la controversia derivada de dicha relación jurídica, impone al Juez ante quien se presenta la demanda -lógicamente vinculado por dicha presentación a examinar su propia competencia en cada caso-, **discernir en primer orden, si las normas competenciales que rigen su función, le reservan o no la facultad de dirimir el conflicto de carácter internacional, y superada esta premisa, entonces examinar su competencia en relación con sus pares, al interior del sistema jurídico de su Estado.**

Por lo que un análisis de competencia por parte del Juez ante quien se planteó la demanda con elemento de internacionalidad, que conlleve la determinación de facultades de los tribunales judiciales de otro Estado, **sólo podría derivar, por excepción, de la existencia de una norma de competencia de carácter convencional, a la que se encuentren sujetos ambos Estados**; pero aún en ese supuesto, el pronunciamiento que hiciere el Juez negando su competencia, derivado de estimar que la facultad le asiste a la autoridad judicial de otro Estado, en modo alguno resultaría vinculante para esta última ante el eventual ejercicio de la acción ante ella, pues el juzgador extranjero, necesariamente examinará su propia competencia internacional con base en su derecho interno.

Entonces, la competencia del Juez para conocer de una controversia entre particulares de carácter internacional, se determina con base en el orden jurídico interno del Estado ante quien se presenta la demanda.

La controversia necesariamente debe juzgarse conforme a la ley que le dio origen o que conforme a su naturaleza deba regularlo y si dicha ley es la perteneciente a un orden jurídico extranjero, la aplicación de ese derecho, conlleva la finalidad de reforzar la legitimidad de la decisión judicial y la justicia del caso; sin embargo, la reciprocidad en la aplicación de derecho extranjero entre

*los Estados involucrados, es indispensable para la validez y eficacia de dicha aplicación.*

*En México, el Poder Legislativo ha establecido expresamente una posición soberana que a la vez permite que se aplique el derecho extranjero en nuestro territorio, siempre que la propia ley prevea la aplicación o que así derive de los tratados y convenciones en que México sea parte; lo que implica desde luego un sentido de reciprocidad y convivencia armónica en la comunidad internacional.*

*De conformidad con lo dispuesto por el artículo 12 del Código Civil Federal, las leyes mexicanas rigen para todas las personas que se encuentren en territorio nacional, así como para los actos y hechos ocurridos en su ámbito territorial, y la aplicación de normas extranjeras sólo se prevé para aquellos casos en que la propia ley así lo determine, salvo lo establecido en los tratados y convenciones en que México sea parte.*

*La legislación mexicana admite la aplicación del derecho extranjero, por lo que primero debe determinarse si se está o no en un caso que permita esa aplicación, y demostrado que es aplicable, debe tenerse en cuenta que quien funde su derecho en leyes extranjeras, tiene la carga procesal de probar la existencia de las mismas y que son aplicables al caso.*

*Sirve de apoyo a lo anterior la tesis emitida por el Tercer Tribunal Colegiado en Materia Civil del Primer Circuito, publicada en el Semanario Judicial de la Federación y su Gaceta, tomo XIV, septiembre de 2001, página 1312 novena época, materia civil, que dice*

*"DERECHO EXTRANJERO. PUNTOS DE CONEXIÓN QUE LO HACEN APLICABLE. Cuando un acto se celebra en un Estado para tener efectos o ser ejecutado en otro Estado, por la nacionalidad de los sujetos, la ubicación de la cosa o la naturaleza del derecho o del hecho jurídico de que se trate, tiene que precisarse cuál es el sistema jurídico que lo regula y debe tenerse en cuenta el orden público interno para establecer la naturaleza y alcance del derecho subjetivo del nacional de un Estado que exige una obligación de un nacional de otro Estado, y cuya relación jurídica se creó en un Estado distinto al en que produce sus efectos. En México, el Poder Legislativo ha establecido expresamente una posición soberana que a la vez permite que se aplique el derecho extranjero en nuestro territorio, siempre que la propia ley prevea la aplicación o que así derive de los tratados y convenciones en que México sea parte; lo que implica desde luego un sentido de reciprocidad y convivencia armónica en la comunidad internacional. De conformidad con lo dispuesto por el artículo 12 del Código Civil Federal, las leyes mexicanas rigen para todas las personas que se encuentren en territorio nacional, así como para los actos y hechos ocurridos en su ámbito territorial, y la aplicación de normas extranjeras sólo se*

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

prevé para aquellos casos en que la propia ley así lo determine, salvo lo establecido en los tratados y convenciones en que México sea parte. Esto es, la legislación mexicana admite la aplicación del derecho extranjero, y primero debe determinarse si se está o no en un caso en que se permita esa aplicación, y demostrado que es aplicable, debe tenerse en cuenta que quien funde su derecho en leyes extranjeras, tiene la carga procesal de probar la existencia de las mismas y que son aplicables al caso. Ello, de conformidad con lo dispuesto por los artículos 19 del Código Civil Federal y 86 bis del Código Federal de Procedimientos Civiles, conforme al cual el derecho que se funda en leyes extranjeras está sujeto a prueba y en ese sentido no opera la regla del sistema jurídico nacional de que el derecho no es materia de prueba.”

Ahora bien, en el caso concreto, la solicitud de las comerciantes, no implica la aplicación del derecho extranjero; sino la aplicación del derecho mexicano a un contrato sujeto a una legislación y tribunal extranjero.

Ante lo cual, se considera que el suscrito carece de competencia legal, ya que conforme a lo dispuesto por el artículo 16 de la Constitución Federal, nadie puede ser molestado en su persona, familia, domicilio, papeles o posesiones, sino en virtud de mandamiento escrito de la autoridad competente.

Entonces la competencia en materia judicial es la facultad que la ley otorga a un órgano de esa naturaleza para que conozca determinados asuntos, dentro de los límites que la propia norma determina.

Por lo que el suscrito no tiene competencia para pronunciarse sobre un contrato en el cual las partes en ejercicio de la autonomía de la voluntad lo sujetaron a la legislación y tribunales extranjeros, por lo que el pronunciamiento que pretenden las comerciantes implica exceder los límites dentro de los que se permite actuar.

Por tanto, como la competencia constituye un presupuesto básico en la integración de la relación entre el Juez y las partes, como **límite objetivo al ejercicio de la jurisdicción**, lo cual impregna de validez la resolución que en su caso dicte el órgano jurisdiccional, es que se considera que el artículo 87 de la ley concursal no es aplicable a actos jurídicos que no se encuentran sometidos a las leyes de la República Mexicana.

Es así que, aún y cuando como reiteradamente se ha expuesto, la ley de concursos mercantiles es de orden público, toda vez que busca el mayor beneficio de la sociedad, a través de la maximización de los recursos de

17

*las comerciantes que se encuentran en incumplimiento de obligaciones, la jurisdicción del suscrito encuentra un límite en aquellos actos no sometidos a la jurisdicción del suscrito, pues procede de manera contraria generaría inseguridad jurídica, y se vulnerarían jurisdicciones internacionales, en contraposición con la convivencia armónica en la comunidad internacional y el respeto a la igualdad soberana de los Estados en la aplicación de sus normas.*

*Conforme a lo antes expuesto se concluye que en términos del artículo 87 de la Ley de Concursos Mercantiles, el suscrito no cuenta con facultades para **tener por no puesta** la cláusula 15.1 (g) (i) del contrato de bonos (acuerdo de emisión) de veinticuatro de enero de dos mil catorce, modificado y reexpresado, el veintinueve de abril, dos de junio, veintinueve de septiembre y nueve de noviembre, todos de dos mil dieciséis, celebrado por **Oro Negro Drilling, Pte. Ltd.** (sociedad creada bajo las leyes de la República de Singapur), como emisora de bonos, y **Nordic Trustee As**, antes Nordic Trustee ASA (sociedad creada bajo las leyes de Noruega), por tratarse de un contrato sometido a la legislación y tribunales de Noruega, y porque no existe reciprocidad entre dos Estados que posibilite la aplicación extraterritorial de la ley.*

*Por tanto, el suscrito carece de competencia, por tratarse de un contrato sometido a la legislación y tribunales de Noruega, aunado a que las comerciantes no aportaron los elementos necesarios para determinar que existe reciprocidad en la aplicación de derecho extranjero entre México y Noruega, como lo disponen los artículos 19 del Código Civil Federal y 86 bis del Código Federal de Procedimientos Civiles.*

*No obstante lo anterior de una búsqueda en la página oficial de la Secretaría de Relaciones Exteriores https://aplicaciones.sre.gob.mx/tratados/consulta_nva.php, no se encontró tratado internacional alguno celebrado entre México y Noruega, mediante el cual se hayan manifestado reciprocidad en casos análogos para aplicar derecho extranjero.*

*(…)*

*Por otra parte, las comerciantes solicitan se decreten las medidas cautelares siguientes:*

*1.        La orden dirigida a **Nordic Trustee As**, antes Nordic Trustee ASA, para que se abstenga de declarar cualquier evento de incumplimiento conforme al acuerdo de emisión.*

*2.        La orden a **Nordic Trustee As**, antes Nordic Trustee ASA, para que se abstenga de realizar cualquier acto por el que pretenda, intente, busque o tenga por efecto o consecuencia ejecutar garantías o derechos en términos de los acuerdos de emisión y sus documentos accesorios.*

**Concurso Mercantil 345/2017-I**
*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

3. La orden a **Nordic Trustee As**, antes *Nordic Trustee ASA* y a **Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, División Fiduciaria,** en su carácter de fiduciaria del contrato de fideicomiso irrevocable de administración y fuente de pago identificado con el número *F/1695*, para que la segunda se abstengan de distribuir, y la primera de recibir, cualquier cantidad del fideicomiso.

Las concursadas exponen que las medidas protegen la viabilidad de las comerciantes, pues al impedir que la destinataria determine un incumplimiento al acuerdo de emisión, posterior al once y veintinueve de septiembre de dos mil diecisiete, fecha de presentación de las solicitudes concursales, se respeta el principio de igualdad entre acreedores, permitiendo resolver los pasivos de las comerciantes y evitando ejecuten garantías, y se evita se siga distribuyendo los recursos del fideicomiso, como parte de la masa.

Indica que la necesidad radica en que la destinataria no ejecute garantías.

Al respecto, dígase que no ha lugar a decretar las providencias precautorias solicitadas ya que en términos del artículo 92 de la Ley de Concursos Mercantiles, los contratos relacionados con las comerciantes deberán ser cumplidos por la concursadas, salvo que el conciliador se oponga, por así convenir a los intereses de la masa.

(…)"[6]

**SEGUNDO. Admisión del recurso.** Por acuerdo de veinticinco de octubre de dos mil dieciocho,[7] se admitió el recurso de revocación y se ordenó dar vista a **Nordic Trustee As**, a **Deutsche Bank México, sociedad anónima, Institución de Banca Múltiple, División Fiduciaria,** como fiduciaria del fideicomiso irrevocable de administración y fuente de pago **F/1695**, a **Oro Negro Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,** y **Oro Negro Impetus, Pte. Ltd.,** por conducto de su

---
[6] Tomo X, fojas 352 a 366.
[7] Tomo X, fojas 1083 a 1087.

19

apoderado **Manuel Ruiz de Chávez Gutiérrez de Velasco**, y
a **Fernando Pérez Correa Camarena**, entonces conciliador
designado por el **Instituto Federal de Especialistas de
Concursos Mercantiles**, para que en   tres días, se
manifestaran al respecto.

**TERCERO. Desahogo de vistas y citación del
recurso.** La vista ordenada fue desahogada mediante escrito
con registro 21607[8] por **Deutsche Bank México, Sociedad
Anónima, Institución de Banca Múltiple, División
Fiduciaria;** escrito 21785[9] por **Fernando Pérez Correa
Camarena**, conciliador designado por el **Instituto Federal de
Especialistas de Concursos Mercantiles**; escrito 21786[10]
de **Nordic Trustee As**, antes **Nordic Trustee ASA**; y el libelo
con folio 21787[11] de **Oro Negro Drilling, Pte. Ltd., Oro
Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro
Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,** y
**Oro Negro Impetus, Pte. Ltd.** por conducto de su apoderado
**Manuel Ruiz de Chávez Gutiérrez de Velasco.**

**CUARTO. Sentencia.** En proveído de trece de
noviembre de dos mil dieciocho,[12] se citó para oír la
interlocutoria, y el **veinticinco de febrero de dos mil
diecinueve,** fue emitida en los siguientes términos:

*"**Primero**. Son **infundados** los agravios hechos valer por
**Perforadora Oro Negro, sociedad de responsabilidad
limitada de capital variable e Integradora de Servicios
Petroleros Oro Negro, sociedad anónima promotora de*

---

[8] Tomo XI, fojas 177 a 177 bis.
[9] Tomo XI, fojas 340 a 347.
[10] Tomo XI, fojas 348 a 357.
[11] Tomo XI, fojas 441 a 457.
[12] Tomo XI, fojas 663 a 684.





FORMA A-55

**Concurso Mercantil 345/2017-I**
*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

*inversión de capital variable*, por conducto de su apoderado **Elías Mendoza Murguía**, en el presente recurso de revocación.

**Segundo**. Se **confirma** el proveído de **once de octubre de dos mil dieciocho**, en sus términos."

**QUINTO. Juicio de amparo.** Inconforme con la determinación anterior, las quebradas **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, e **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, promovieron juicio de amparo indirecto, que fue registrado por el **Juez Decimoprimero de Distrito en Materia Civil en la Ciudad de México**, como **270/2019**, quien seguida la secuela procesal lo resolvió en los términos siguientes:

*"PRIMERO. La Justicia de la Unión no ampara ni protege a "PERFORADORA ORO NEGRO", SOCIEDAD DERESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE, e "INTEGRADORA DE SERVICIOS PETROLEROS ORO NEGRO", SOCIEDAD ANÓNIMA PROMOTORA DE INVERSIÓN DE CAPITAL VARIABLE, a través de su apoderado, ELÍAS MENDOZA MURGUÍA, en contra del acto que reclamaron a la autoridad responsable precisada en el resultando primero de la presente sentencia, por las razones expuestas en el considerando décimo.*

21

*SEGUNDO. En su oportunidad, dese cumplimiento a lo ordenado en el último considerando de esta resolución."*

**SEXTO. Recurso de revisión y concesión del amparo que se cumplimenta.** Inconformes con la determinación anterior, las quejosas promovieron recurso de revisión, del cual conoció el **Octavo Tribunal Colegiado en Materia Civil del Primer Circuito**, registrándolo con el toca **R.C 108/2020.** Que fue resuelto de la siguiente manera:

*"**Primero.** Se **revoca** la sentencia recurrida.*

*Segundo. La Justicia de la Unión **ampara y protege** a Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, contra el acto que reclamaron del Juez Segundo de Distrito en Materia Civil en la Ciudad de México, consistente en la sentencia interlocutoria de veinticinco de febrero de dos mil diecinueve, precisada en el resultando primero de la presente ejecutoria, para los efectos indicados en el último considerando de la misma."*

**SÉPTIMO. Efectos de la concesión otorgada por el Tribunal Colegiado y cumplimiento:**

**1.-** Para que el juez responsable deje insubsistente la sentencia reclamada y en su lugar dicte una nueva en la que:



**Concurso Mercantil 345/2017-I**
*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto
270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de
México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado
en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

**2.-** Con base en lo considerado en la presente ejecutoria, establezca cuáles son las consecuencias inmediatas de la aplicación de la cláusula 15.1 del contrato de emisión de votos, para determinar si agrava la situación de las comerciantes y,

**3.-** En caso de que concluya que la aplicación de la cláusula en comento agrava la situación de las comerciantes, disponga dejarla de aplicar, resolviendo lo que en derecho proceda.

Con el fin de dar estricto cumplimiento, mediante proveído de trece de enero de dos mil veintiuno, se dejó sin efectos la sentencia que constituye el acto reclamado (**veinticinco de febrero de dos mil diecinueve**) y en este acto, se emite otra, conforme a los lineamientos establecidos por el tribunal colegiado revisor, al tenor de los siguientes

**CONSIDERANDOS**

**PRIMERO. Competencia**. Este Juzgado Segundo de Distrito en Materia Civil en la Ciudad de México, es competente para conocer y resolver el medio de impugnación, con apoyo en lo dispuesto por los artículos 104, fracción II, de la Constitución Política de los Estados Unidos Mexicanos, 53 Bis, fracción II, de la Ley Orgánica del Poder Judicial de la Federación, en relación con el Acuerdo General 19/2015 del Pleno del Consejo de la Judicatura Federal; 268

23

de la Ley de Concursos Mercantiles y 1335 del Código de Comercio, de aplicación supletoria a la ley de la materia, toda vez que es un recurso de revocación, del cual conoce y resuelve la misma autoridad jurisdiccional que emite el auto recurrido.

**SEGUNDO. Oportunidad de interposición del recurso.** Los artículos 268 de la Ley de Concursos Mercantiles, y 1335 del Código de Comercio,[13] disponen que contra el auto que no fuere apelable, procede la revocación ante el juez que lo haya dictado o el que lo sustituya en el conocimiento del negocio, la cual deberá pedirse por escrito dentro de los tres días siguientes a que haya surtido efectos la notificación del proveído a impugnar.

A partir de lo anterior, resulta oportuna la promoción del recurso horizontal que se resuelve, en atención de que se interpuso mediante escrito presentado el **diecinueve de octubre de dos mil dieciocho**; esto es, al tercer día contado a partir de que surtió efectos la notificación personal realizada a las comerciantes el **quince del mismo mes y año**.

Determinado que el medio de impugnación se interpuso en tiempo, y no procede en su contra apelación; en tanto que, no existe disposición expresa en la ley de la materia que así

---

[13] **"Artículo 268.** Cuando esta Ley no prevea el recurso de apelación procederá revocación, que se tramitará conforme a las disposiciones del Código de Comercio."

**"Artículo 1335.** Tanto la revocación en primera instancia como la reposición deberán pedirse por escrito dentro de los tres días siguientes a que haya surtido efectos la notificación del proveído a impugnar, dando vista a la contraria por un término igual y el tribunal debe resolver y mandar notificar su determinación dentro de los tres días siguientes.
De la resolución en que se decida si se concede o no la revocación o la reposición no habrá ningún recurso."

FORMA A-55

**Concurso Mercantil 345/2017-I**
*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

lo disponga, se actualiza la hipótesis de procedencia establecida en el artículo 268 de la Ley de Concursos Mercantiles.

**TERCERO. Agravios.** La recurrente expresó diversos agravios, los cuales se tienen por reproducidos como si a la letra se insertaran, atento a la jurisprudencia en la que la Segunda Sala de la Suprema Corte de Justicia de la Nación sostuvo:

"**CONCEPTOS DE VIOLACIÓN O AGRAVIOS. PARA CUMPLIR CON LOS PRINCIPIOS DE CONGRUENCIA Y EXHAUSTIVIDAD EN LAS SENTENCIAS DE AMPARO ES INNECESARIA SU TRANSCRIPCIÓN.** De los preceptos integrantes del capítulo X "De las sentencias", del título primero "Reglas generales", del libro primero "Del amparo en general", de la Ley de Amparo, no se advierte como obligación para el juzgador que transcriba los conceptos de violación o, en su caso, los agravios, para cumplir con los principios de congruencia y exhaustividad en las sentencias, pues tales principios se satisfacen cuando precisa los puntos sujetos a debate, derivados de la demanda de amparo o del escrito de expresión de agravios, los estudia y les da respuesta, la cual debe estar vinculada y corresponder a los planteamientos de legalidad o constitucionalidad efectivamente planteados en el pliego correspondiente, sin introducir aspectos distintos a los que conforman la litis. Sin embargo, no existe prohibición para hacer tal transcripción, quedando al prudente arbitrio del juzgador realizarla o no, atendiendo a las características especiales del caso, sin demérito de que para satisfacer los principios de exhaustividad y congruencia se estudien los planteamientos de legalidad o inconstitucionalidad que efectivamente se hayan hecho valer."[14]

---

[14] Publicada en el Semanario Judicial de la Federación y su Gaceta, novena época, tomo XXXI, mayo de 2010, materia común, página 830.

En el **primer agravio**, las recurrentes exponen que el auto combatido transgrede los artículos 1077 y 1324 del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles, puesto que carece de congruencia y exhaustividad.

Exponen que la determinación de no contar con competencia para aplicar el artículo 87 de la Ley de Concursos Mercantiles, y declarar "tener por no puesta" la cláusula 15.1 (g) (i) del acuerdo de emisión, bajo la consideración de que se encontraba sometido a las leyes y jurisdicción de los tribunales de Noruega, aunado a que no existe reciprocidad entre México y dicho Estado, implica:

1. Desconocer el interés público que persigue la ley concursal e invita a que los acreedores extranjeros sean inmunes a dicho precepto.

2. Desconocer que el concurso mercantil es un procedimiento universal, en el que concurren intereses de la colectividad, y no así, un procedimiento bilateral. Ello en virtud de que se afirmó que *"…la competencia del Juez para conocer de una controversia entre particulares de carácter internacional, se determina con base en el orden jurídico interno del Estado ante quien se presenta la demanda"*.

3. Se tuvo que ponderar que la cláusula agrava la situación de la empresa, independientemente de que dicho acuerdo de voluntades se encuentre sometido a leyes y tribunales del Reino de Noruega.

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

4. Infringir la cosa juzgada y la preclusión procesal, ya que se analizó si se tenía competencia para aplicar disposiciones de la ley de concursos mercantiles, cuando ello se asumió expresamente en los autos admisorios y se reiteró en la sentencia de declaración de concurso, y si bien dichas resoluciones han sido impugnadas, no combaten la competencia. (artículos 354, 355 y 356 del Código Federal de Procedimientos Civiles).

5. Divide la continencia de la causa, pues al asumir competencia, el suscrito estaba facultado y obligado a aplicar las disposiciones de la Ley de Concursos Mercantiles, en todas las cuestiones respecto de bienes, derechos y pasivos de las comerciantes (masa concursal), así como medidas precautorias afines, aun los relacionados con actos, hechos o ley extranjera, por no existir prohibición o limitación al respecto en la ley de la materia. Ello porque en el capítulo de cooperación internacional, el legislador reconoció la globalización y existencia de operaciones transfronterizas, previendo que en el concurso mercantil se emitan determinaciones en territorio nacional y extranjero, incluyendo las de protección de la masa concursal.

6. Que bajo el principio de igualdad, se reconoce a los acreedores extranjeros y nacionales, independientemente de que se haya contratado en territorio nacional o los títulos justificativos se rijan por leyes mexicanas o extranjeras.

27

7. Que los principios de universalidad y unicidad, abarcan a los bienes, derechos y pasivos del comerciante, con independencia de barreras transfronterizas, de lo contrario no sería un procedimiento eficaz, cuyo fin es lograr conservar la empresa, y bastaría transferir recursos fuera de México para evitar que los mismos fueran considerados como parte de la masa concursal, por lo que bajo esa interpretación, tampoco podrían reconocerse los pasivos contraídos en el extranjero, como lo es, el que existe derivado del acuerdo de emisión.

8. Que el artículo 86 de la ley concursal no establece que las disposiciones sobre obligaciones y contratos continúen aplicándose sin límite, sino que deben preverse las excepciones contenidas en los preceptos 17 (competencia), 88 (determinación de cuantía de créditos), 89 (mecanismos de valoración de los créditos), 87 (disposiciones contractuales por no puestas), y 90 (compensación de derechos y obligaciones); pues contrario a ello, tratándose de créditos sujetos a leyes extranjeras se tendría que acudir a la autoridad judicial competente a obtener una sentencia y posteriormente homologarla.

9. Expone que la regla del artículo 12 del Código Civil Federal, relativa a que el derecho mexicano no es aplicable, cuando se trate de derechos sometidos a leyes y tribunales extranjeros, no es aplicable, ya que el derecho mexicano no prevé la aplicación de un derecho extranjero en tratándose de cuestiones concursales, por ser de orden público.



**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

10. Que el orden público previsto en la Ley de Concursos Mercantiles, tiene como fin limitar el uso y goce de los derechos fundamentales de los particulares y no evadan la aplicación de la ley de la materia.

11. Que lo solicitado fue que en apoyo a la competencia universal que tiene respecto a la comerciante y sus bienes y derechos, resolviera la vigencia de la cláusula 15, sección 15.1 del acuerdo de emisión y la vigencia de los efectos de los actos jurídicos que de su aplicación derivaron.

12. Conforme al artículo 15, fracción II, del Código Civil Federal, existe un impedimento legal para aplicar el derecho extranjero, ya que establece que, no se aplicará el derecho extranjero cuando sus disposiciones, o el resultado de su aplicación, sean contrarios a principios o instituciones fundamentales del orden público mexicano.

13. Es irrelevante la existencia o no de reciprocidad entre México y Noruega, ya que el aplicable es el derecho mexicano, pues la aplicación del derecho extranjero es contrario a los principios e instituciones fundamentales del derecho mexicano.

En el **segundo agravio**, la recurrente expone que los efectos de "tener por no puesta la cláusula" significa que no es capaz de producir efecto jurídico alguno ni acción o

derecho nunca, de cualquier naturaleza y cualquier efecto generado se destruye; entonces no produce efectos jurídicos nunca, y no como contrariamente se sostuvo en el auto combatido desde el momento en que se declare jurídicamente por no puesta.

Finalmente, en el **tercer agravio**, exponen en esencia la determinación de negar diversas medidas cautelares, carece de congruencia y exhaustividad. al considerarse que en términos del artículo 92 de la Ley de Concursos Mercantiles, los contratos de las comerciantes deberían ser cumplidos por éstas, salvo que el conciliador se opusiera, por así convenir a los intereses de la masa.

Empero, la disposición legal citada se refiere a los acuerdo de voluntades pendientes de ejecución o cumplimiento que tengan relación con la operación y funcionamiento ordinario de la empresa y que contengan obligaciones de dar o hacer, sin que quede comprendido el pago de créditos o pasivos anteriores.

Que en el caso, ninguna de las medidas solicitadas se relacionan con contratos pendientes de ejecución o cumplimiento a cargo de las comerciantes, necesario para continuar con la operación ordinaria, sino que la finalidad de las medidas es mantener la viabilidad de las comerciantes, evitando que **Nordic Trustee As,** antes Nordic Trustee ASA, y **Deutsche Bank México, sociedad anónima, institución de banca múltiple, división fiduciaria,** en su carácter de fiduciaria del contrato de fideicomiso irrevocable de administración y fuente de pago identificado con el número

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto*
*270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de*
*México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado*
*en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

F/1695, ejecuten bienes y derechos de las comerciantes en perjuicio de los acreedores.

**CUARTO. Manifestaciones relativas a las vistas otorgadas con el medio de impugnación que se resuelve.** Al respecto se advierte que:

- **Nordic Trustee As**, antes **Nordic Trustee ASA**, expuso que las recurrentes no combaten las consideraciones torales de auto recurrido, y se limitaron a cuestionar los fundamentos y consideraciones relativas a la incompetencia para "tener por no puesta" determinada cláusula contractual; es decir, no atacaron la consideración del suscrito relativa a que no contaba con facultades para tener por no puesta la cláusula mencionada.

- Por su parte, **Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd.,** y **Oro Negro Impetus, Pte. Ltd.,** por conducto de su apoderado Manuel Ruiz de Chávez Gutiérrez de Velasco, en relación al primer agravio señala que la Ley de Concursos Mercantiles tiene su fundamento en la Constitución Política de los Estados Unidos Mexicanos, cuya aplicación se constriñe

31

únicamente al territorio nacional, en términos a los principios de soberanía estatal que rige el derecho internacional.

Por lo que la Ley de Concursos Mercantiles y la jurisdicción del juez carecen de fuerza obligatoria extraterritorial; esto es, no tiene facultades para pronunciarse sobre su legalidad o aplicar esa ley fuera del territorio nacional.

La aplicabilidad territorial de la ley concursal se corrobora con lo dispuesto por el artículo 16 de la ley de la materia, que dispone las sucursales de empresas extranjeras podrán ser declaradas en concurso mercantil, pero dicha declaración solo abarcará bienes y derechos localizados y exigibles en territorio nacional.

La Ley de Concursos Mercantiles carece de reglas sobre la aplicación de leyes en el espacio, por lo que de conformidad con el artículo 8, fracción V, es aplicable el Código Civil Federal, de cuyo precepto 13, fracciones IV y V, disponen los actos jurídicos se regirán por el derecho de lugar de celebración y los efectos jurídicos de los contratos por el derecho del lugar de ejecución, a menos que las partes hubieran designado la aplicabilidad de otro derecho, como lo ocurrido.

Entonces, la ley mexicana constriñe la competencia del juez para conocer y decidir la validez de los actos jurídicos celebrado en el



FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto*
*270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de*
*México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado*
*en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

extranjero, respecto de los que las partes se sometieron voluntariamente a la jurisdicción de corte extranjera.

La ley de la materia es de interés público y universal, se refiere a actos nacionales, o sujetos a leyes nacionales.

En al acuerdo de emisión de bonos no sé atribuyó competencia al juez mexicano ni por materia o territorio, por lo que debe inhibirse de su conocimiento, en atención a que:

a. Contiene una cláusula de jurisdicción, como lo pide el artículo 1093 del Código de Comercio.

b. Únicamente fue suscrito por Oro Negro Drilling, PTE. LTD y Nordic Trust, ASA.

c. No existe algún punto de contacto en que fundar la competencia.

Al analizar la competencia para declarar "tener por no puesta" determinada cláusula contractual no se infringió la cosa juzgada y preclusión procesal, ya que dicha declaratoria implica la nulidad de una cláusula de un acto diverso e independiente al concurso mercantil, celebrado en

el extranjero y a la competencia de los tribunales noruegos.

El acuerdo de emisión constituye un acto jurídico diverso e independiente al concurso mercantil, con reglas propias de jurisdicción y competencia, por lo que, no debe atenderse al artículo 17 de la Ley de Concursos Mercantiles, sino que debe ser analizado con las reglas de los artículos 1093 y 1104 del Código de Comercio.

Que en términos del artículo 13 del Código Civil Federal, de aplicación supletoria a la ley concursal, la forma de los actos jurídicos se rige por el derecho del lugar dónde se celebren, que en el caso concreto es Noruega, aunado a que surte efectos en el país mencionado y los contratantes son entes extranjeros.

Si bien la ley de concurso mercantiles es de orden público, esto es aplicable a situaciones jurídicas sometidas a leyes nacionales, pero no puede considerarse aplicable en contravención a la soberanía de otro país.

Que la cláusula cuya nulidad se pretende no agrava la situación de la comerciante, ya que no incrementa el crédito de las sociedades singapurenses, dado que no establece penas convencionales adiciones a cargo de las comerciantes que pudiera incrementar el pasivo de las comerciantes.

ULISES GARCIA MOLINA
30.30.30.30.30.30.30.30.34.31.30.34.30.59.58.33.57
24.04.22 09:04:45

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

En relación al segundo agravio, refieren es inoperante, porque no se combaten consideraciones esenciales de la sentencia impugnada, pues las recurrentes refieren se interpretó inadecuadamente al artículo 87 de la Ley de Concursos Mercantiles, lo que es irrelevante ya que se declaró la incompetencia.

Por lo que hace al tercer agravio, manifiestan que el acuerdo de emisión de bonos es un contrato pendiente de ejecución ya que la deuda adquirida fue por $939´100,570.00 (novecientos treinta y nueve millones cien mil quinientos setenta dólares 00/100 moneda de los Estados Unidos) y aún no se encuentra pagada en su totalidad.

Además, de que al solicitar las medidas no se expuso el peligro en la demora, la apariencia del buen derecho y la idoneidad de las mismas. Específicamente omitió narrar, demostrar y mencionar la necesidad de la medida, y no cita la urgencia de la medida, ni la idoneidad a partir de elementos reales presentes y ciertos.

- El **conciliador** expuso que en términos del artículo 12 del Código Civil Federal, las leyes mexicanas rigen a todas las personas que se encuentran en territorio nacional, así como a los

35

actos ocurridos en el territorio, salvo cuando prevean la aplicación del derecho extranjero; y para la aplicación del derecho extranjero sustantivo, debe hacerlo como lo haría aquel.

Que el derecho extranjero al que se sometieron las partes en el acuerdo de bonos no es aplicable al presente asunto, por contrariar el orden público mexicano, por lo que en términos del artículo 87 de la Ley de Concursos Mercantiles la cláusula 15.1 debe declararse ineficaz; siendo irrelevante la falta de reciprocidad entre el Estado Mexicano y el Reino de Noruega, ya que dicha reciprocidad solo cobra relevancia cuando se trata de la ejecución de actos jurídicos, o bien, de la homologación, ejecución o reconocimiento de determinaciones o resoluciones judiciales.

Expone que existe conflicto de intereses entre la Ley de Concursos Mercantiles, que dispone la continuidad, conservación y viabilidad de la empresa es de orden público, y el acuerdo de emisión que señala la presentación de una solicitud de insolvencia o concurso mercantil por parte de Perforadora Oro Negro, sociedad de responsabilidad limitada de capital variable, es causa suficiente para que se verifique un evento o causa de incumplimiento y en consecuencia los bonos son declarados morosos.

Por lo que la cláusula que se pretende "tener por no puesta", violenta el orden jurídico mexicano, al



FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto
270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de
México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado
en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

hacer prohibitivo el concurso mercantil en México, lo que es una vulneración al derecho humano de justicia consagrado en el artículo 17 de la Constitución Federal.

El artículo 87 de la Ley de Concursos Mercantiles no hace ninguna referencia a la legislación que rija el contrato respectivo, y es categórico al señalar que se tendrá por no puesta cualquier estipulación que establezca modificaciones que agraven los términos de los contratos celebrados por las concursas o sus filiales.

Expone el auto recurrido es contario al artículo 87 de la Ley de Concursos Mercantiles y a la institución del concurso mercantil en México, en contravención a la conservación de la empresa, sin que pueda pactarse lo contrario, pues sería contrario al artículo 6 del Código Civil Federal.

Y que sostener lo contrario crearía un incentivo para que los contratantes extranjeros incluyeran cláusulas para evadir el derecho mexicano.

Por lo que en atención a la universalidad el procedimiento concursal el rector del procedimiento tiene competencia universal para resolver cualquier cuestión relacionada con el concurso mercantil.

Por lo que con fundamento en los artículos 91 y 92 de la Ley de Concursos Mercantiles solicita se desaplique la cláusula 15.1 del contrato de bonos, por así convenir a la masa concursal.

- **Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, División Fiduciaria**, señaló que el único agravio es infundado, debido a que el acuerdo se acordó y resolvió respecto a la petición realizada, y si bien no resultó favorable, ello no implicaba una violación al principio de congruencia externa.

**QUINTO. Estudio.** Atinente a ello, a efecto de dar estricto cumplimiento a la concesión de amparo otorgada a las comerciantes por el **Octavo Tribunal Colegiado en Materia Civil del Primer Circuito**, en el en el recurso de revisión **R.C. 108/2020**, es menester remembrar los lineamientos establecidos a saber:

(…)
El acto reclamado por las quejosas es la resolución de veinticinco de febrero de dos mil diecinueve, dictada en el concurso mercantil 345/2017 de Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, por el Juez Segundo de Distrito en Materia Civil en la Ciudad de México que resolvió el recurso de revocación que interpusieron las comerciantes en contra del auto de once de octubre de dos mil dieciocho, donde se estimó que el juez concursal no cuenta con facultades para **tener por no puesta** una cláusula del contrato de bonos -acuerdo de emisión de bonos- de veinticuatro de enero de dos mil catorce, por tratarse de un acuerdo de voluntades sometido a la legislación y tribunales de Noruega, sin



**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

que exista reciprocidad entre ambos Estados que permita la aplicación extraterritorial de la ley, adicionado a que se negaron las medidas cautelares solicitadas por las citadas recurrentes.

Debe reiterarse que la litis constitucional se ciñó a determinar la legalidad de las consideraciones que sustentaron la sentencia reclamada y en la que se concluyó que el juez concursal no tiene facultad para **tener por no puesta la cláusula 15.1 del contrato de emisión de bonos** de veinticuatro de enero de dos mil catorce, suscrito entre Oro Negro Drilling Pte. Ltd., como "emisor" y Nordic Trustee Asa, como "fiduciario de bonos".

La cláusula de referencia dice:

*"15. Casos de incumplimiento.*

*15.1 El fiduciario de los bonos puede declarar que los bonos son morosos después de que ocurre cualquiera de los siguientes casos, en cada caso únicamente en la medida en que dichos casos ocurran después de la fecha del presente documento:*

*(…)*

*g) Procedimientos de insolvencia y disolución.*

*Si se presenta cualquier acción corporativa, procedimiento legal u otra fase del procedimiento para cualquiera entre el emisor, la matriz o el fletador o cualquier propietario de la plataforma en relación con:*

*i) La suspensión de pagos, la moratoria de cualquier endeudamiento, la liquidación, la disolución, la administración o la reorganización (por medio del acuerdo voluntario, liquidación provisional, la administración legal, el esquema de acuerdo o de otra manera distinta a la liquidación por insolvencia o la reorganización."*

En la sentencia recurrida se desestimaron los conceptos de violación hechos valer por las aquí recurrentes bajo las siguientes premisas:

39

1.- En el juicio de amparo no es una tercera instancia en donde el órgano de control constitucional pueda resolver el fondo de los temas planteados ante los juzgadores primigenios, ya que se trata de un juicio autónomo, cuya materia es diferente, por lo que no es dable realizar en el juicio de amparo de manera oficiosa el estudio de lo planteado por las quejosas ante el resolutor natural, porque el examen de la constitucionalidad del acto reclamado en cuestión solo puede hacerse a partir de los conceptos de violación.

2.- Las quejosas externaron su voluntad de someterse a la ley de Noruega, por lo cual para determinar su competencia, no resulta ajustado a derecho que el juzgador solamente acuda a ordenamientos internos para decidir sobre la pretensión de las comerciantes.

3.- Que para determinar si es factible aplicar una legislación sustantiva extranjera para interpretar el contrato de emisión de bonos, el juez debe atender a lo dispuesto en el artículo 12 del Código Civil Federal.

4.- Que contrariamente a lo aducido por las quejosas, resultaba indispensable que acreditaran la existencia del contenido del derecho invocado ante el juez federal de origen, así como de la reciprocidad entre el Estado que ha de aplicar la ley externa -México, con motivo de la tramitación de un concurso mercantil- y el Estado extranjero -Noruega- cuyo derecho sustancial se debe aplicar para resolver la cuestión planteada, pero al no hacerlo, resultó inconcuso que el juez concursal no estaba obligado a aplicar la legislación extranjera para dilucidar la pretensión de las comerciantes.

5.- Que no es factible sostener que el Juez de Distrito válidamente puede tener por no puesta una cláusula del contrato en comento para declarar la ineficacia de los actos indicados por la comerciante, pues ello implicaría la exclusión de una estipulación contractual de dicho pacto, en el cual las partes se remitieron a la legislación de Noruega, sin que las impetrantes cumplieran con la carga indicada con antelación.

6.- Contrariamente a lo aducido por las quejosas, el juez federal de origen sostuvo que son infundados los agravios inherentes a que la negativa de decretar las medidas solicitadas carece de congruencia y exhaustividad, dado que los contratos a que aluden deben ser cumplidos por las comerciantes, salvo que el conciliador se oponga de conformidad con lo establecido en el numeral 92 de la Ley de Concursos Mercantiles, en relación con lo cual explicó que dicho precepto no excluía a aquellos pactos volitivos a los

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

cuales las quejosas pretendían que se aplicaran tales medidas.

De los enunciados antes indicados se desprende que, contrario a lo que afirman las recurrentes, la sentencia recurrida no es incongruente, puesto que el Juez de Distrito analizó sus cuatro motivos de inconformidad y expuso porqué los calificó de infundados, de ahí que la sentencia impugnada no sea incongruente, pues de su lectura se advierte se desprende que el juez federal al momento de pronunciarla, realizó la fijación clara y precisa de los actos reclamados; apreció las pruebas conducentes para tenerlos por demostrados; indicó los fundamentos legales en que se apoyó para negar el amparo solicitado, así como los puntos resolutivos con que concluyó, analizando dichos actos como se probaron ante la autoridad responsable, dando así cumplimiento a lo dispuesto por los artículos 73, 74 y 75 de la Ley de Amparo.

En el **segundo agravio** las recurrentes sostienen que el Juez de Distrito recurrido, violó en su perjuicio los artículos 74 de la Ley de Amparo, 1 y 87 de la Ley de Concursos Mercantiles y el artículo 12 del Código Civil Federal, en virtud de que el derecho sustantivo aplicable al caso es el mexicano y no el extranjero.

Esto afirman las recurrentes es así, porque de conformidad con el artículo 1 de la Ley de Concursos Mercantiles, todas las cuestiones concursales y, específicamente lo relativo a la conservación de las empresas es de orden público y de interés social, ya que tienden a proteger los intereses de toda una colectividad y el objeto de ese ordenamiento es maximizar el valor de una empresa en crisis mediante su conservación, con lo cual se protege el empleo de sus factores humanos y se evita la repercusión económica negativa a la sociedad.

Señalan que el Código Civil Federal en su artículo 6 dispone que la voluntad de los particulares no puede eximir de la observancia de la ley, ni alterarla o modificarla y sólo pueden renunciarse los derechos privados que no afecten directamente el interés público, lo que quiere decir que para el caso de que una estipulación contractual afecte el interés público, ésta no puede ser observada, pues tal pacto carecería de validez jurídica y que, por esas razones, contrario a lo que resolvió el A quo, el derecho sustantivo aplicable para resolver su petición de tener

ULISES GARCÍA MOLINA
30.30; 30.13; 30.30; 30.30; 30.54; 33; 30.54; 30.59; 59; 33; 37
24:04; 22; 09; 04; 07

por no puesta una cláusula contractual es el mexicano y, particularmente, el artículo 87 de la Ley de Concursos Mercantiles, sin que sea obstáculo para ello que en el acuerdo de emisión de bonos sus celebrantes se hayan sometido a la legislación extranjera, ya que las disposiciones de la Ley de Concursos Mercantiles son de orden público en la medida en que procuran la conservación de la empresa, siendo la conservación de ésta uno de los bienes jurídicos tutelados por el Estado, por ser de gran importancia para la sociedad y la economía nacional, y por lo tanto, las disposiciones de la ley concursal son de aplicación inmediata, territorial e imperativa, sobre cualquier otro derecho pactado por las partes.

Explican que de no aplicar el artículo 87 de la Ley de Concursos Mercantiles al acuerdo de emisión de bonos (so pretexto de que en la cláusula 19.7.1 de dicho acuerdo las partes pactaron la aplicación del derecho noruego), se le permite a su acreedora principal Nordic Trustee As, declarar un evento de incumplimiento y, con ello, declarar la aceleración de los bonos y llevar a cabo la ejecución de las garantías otorgadas, es decir, se le permite realizar ejecuciones privadas y unilaterales de los bienes de las comerciantes (lo cual se encuentra categóricamente prohibido por la Ley de Concursos Mercantiles, y se traduce en violar el principio de par condictio creditorum), y la afectación al mecanismo de distribución de recursos conforme fideicomiso F/1695, lo cual es contrario a la conservación de la empresa, ya que dichos actos generan la inminente quiebra de las comerciantes e impiden la realización de sus operaciones ordinarias, por lo que es evidente que de conformidad en el artículo 6 del Código Civil Federal, es imperativo que no se observe la cláusula 19.7.1 del acuerdo de emisión de bonos, ya que con motivo de su aplicación se afecta directamente el interés social.

Los argumentos de las recurrentes son fundados.

En efecto, el Juez Segundo de Distrito en Materia Civil en la Ciudad de México que conoce del concurso mercantil de las recurrentes debió establecer en la sentencia reclamada, en primer lugar, si la cláusula 15.1 del contrato de emisión de bonos, agravaba la situación de las comerciantes, puesto que, como lo consideró este órgano colegiado en la ejecutoria que resolvió el recurso de revisión 21/2019[15], el trece de

---

[15] *Por la trascendencia que tiene en el caso, es conveniente traer las consideraciones que interesan, por ser verdad legal, vertidas por este tribunal colegiado al resolver el recurso de*

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

---

revisión 21/2019 en la sentencia que se pronunció el trece de marzo de dos mil diecinueve y que son las siguientes:

"Si en el acuerdo de emisión de bonos, las partes convinieron en las cláusulas 19.7, puntos 19.7.1, 19.7.2 y 19.7.3, que cualquier conflicto que surja entre el fiduciario de los bonos, los tenedores de bonos y cualquier obligado, como el fletador (en este caso Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable) se resolverán conforme a la legislación de Noruega, sin embargo, **ese sometimiento no impedía al juez concursal pronunciarse respecto de aquellas medidas cautelares que tuvieran por objeto conservar la materia del concurso mercantil y con base en el imperativo previsto en el artículo 87 de la ley de la materia, podía tener por no puesta cualquier estipulación contractual que con motivo de la presentación de la solicitud del concurso o de su declaración, estableciera modificaciones que agraven para el Comerciante los términos de los contratos.**

En efecto, permitir que la acreedora Nordic Trustee Asa, ejecute las garantías, dejaría sin efectos el concurso mercantil de las comerciantes, que no tiene como objetivo principal llevar a la quiebra a los comerciantes, pues esto afectaría los objetivos económicos del Estado en relación con sus gobernados, sino que, el objetivo principal de la Ley de Concursos Mercantiles, es conservar a las empresas y evitar que el incumplimiento generalizado de sus obligaciones de pago pongan en riesgo su viabilidad y de sus correlativas con las que tengan negocios, es decir, busca proteger a la empresa para preservar su operación y los empleos que genera, a fin de conservar el equilibrio entre el comerciante y sus acreedores (...)

Conforme a los artículos transcritos, no existe impedimento legal para que el juez del concurso emita resolución respecto a la medida cautelar solicitada, **consistente en que no se ejecute el contrato de bonos, esto por lo que hace a la entrega a Nordic Trustee Asa, de las garantías consistentes en las plataformas marinas autoelevables,** identificadas como Primus, Laurus, Fortius, Decus e Impetus, ya que de otra forma, el concurso mercantil se acabaría ante la falta de los bienes que producen el numerario para la operación tanto de la comerciante como de las empresas que conforman su grupo societario, pudiendo provocarse la quiebra de todos, en contravención a los objetivos previstos en la Ley de Concursos Mercantiles.

En efecto, el juez del concurso **no puede pronunciarse respecto de aquellas medidas cautelares que impliquen la nulidad, modificación, exclusión o resolución de ciertas cláusulas del contrato de emisión de bonos,** celebrado el veinticuatro de enero de dos mil catorce y sus convenios modificatorios, toda vez que las partes que lo suscribieron convinieron en que cualquier conflicto que surja entre el fiduciario de los bonos, los tenedores de bonos y cualquier obligado, como el fletador (en este caso Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable) se resolverían conforme a la legislación de Noruega, sin embargo, legalmente puede acordar aquellas que impliquen ejecutar las garantías y cuyo objeto sea contrario a preservar la viabilidad de las comerciantes.

Esto es, que no se entreguen las plataformas marinas a Nordic Trustee Asa, **pero no tiene facultad para resolver el contrato de emisión de bonos, es decir, no puede acordar aquellas medidas cautelares tendentes a modificar, nulificar alguna declaración de incumplimiento del contrato de emisión de bonos,** porque las partes convinieron en las cláusulas 19.7, puntos 19.7.1, 19.7.2 y 19.7.3, que cualquier conflicto que surja entre el fiduciario de los bonos, los tenedores de bonos y cualquier obligado, como el fletador (en este caso Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable) se resolverían conforme a la legislación de Noruega, ante los tribunales de ese país.

Las medidas referidas son las que se enunciaron por las inconformes como sigue:

"Dejar sin efectos:

"**I.- La notificación de veinticinco de septiembre de dos mil diecisiete,** suscrita por Olav Slagsvold, en representación de Nordic Trustee ASA, en su calidad de representante común en el acuerdo de emisión de bonos mencionados, mediante la cual pretendió declarar un evento de incumplimiento con motivo de la solicitud de concurso mercantil de origen;

43

***II.- La remoción y nueva designación de consejeros de***:
***1.*** *Oro Negro* ***Drilling****, Pte. Ltd.;* ***2.*** *Oro Negro* ***Primus*** *Pte. Ltd.;* ***3.*** *Oro Negro* ***Laurus*** *Pte. Ltd.;* ***4.***
*Oro Negro* ***Fortius*** *Pte. "Ltd.;* ***5.*** *Oro Negro* ***Decus*** *Pte. Ltd.; y,* ***6.*** *Oro Negro* ***Impetus*** *"Pte. Ltd.;*
*y,*

***III.- La transmisión de las acciones representativas del capital social de*** *Oro Negro* ***Drilling,***
*Pte. Ltd."*

*Son ilustrativas al caso, las consideraciones que vertió la Primera Sala de la Suprema Corte de*
*Justicia de la Nación, al resolver la contradicción de tesis 372/2015, entre las sustentadas por*
*el Segundo Tribunal Colegiado en Materia Civil del Tercer Circuito y el Primer Tribunal*
*Colegiado en Materias Civil y de Trabajo del Segundo Circuito, actual Primer Tribunal Colegiado*
*en Materia Civil del Segundo Circuito en la ejecutoria que pronunció el quince de noviembre de*
*dos mil diecisiete que dicen:*

***"III. La determinación de la ley aplicable para sustanciar el proceso y la ley aplicable para***
***resolver el conflicto derivado de la relación jurídica privada internacional.***

*70. La determinación de la ley aplicable para sustanciar el proceso en que se dirime una*
*controversia derivada de una relación jurídica internacional, por regla general, está dada por*
*la determinación de la competencia internacional del Juez y de su competencia interna; ello,*
*porque si el Juez reconoce su competencia en esos dos ámbitos, por consecuencia, el proceso*
*jurisdiccional se debe sustanciar bajo las disposiciones de su ley adjetiva, conforme al principio*
*prevaleciente en materia de normas conflictuales denominado "lex fori regit processum" (la ley*
*del foro rige el proceso); a menos que, conforme a las circunstancias del caso concreto, por*
*excepción, pudiere resultar observable alguna norma procesal distinta, derivada de fuente*
*convencional o de especificidades del propio ordenamiento interno.*

*71. Por otra parte, la determinación de la ley material o sustantiva aplicable en la solución de*
*la controversia (la ley que resolverá el fondo del asunto) implica necesariamente la labor de*
*establecer cuál es el derecho que debe regir la relación jurídica material internacional, incluso,*
*determinar según el caso, si sólo algunos aspectos de la relación jurídica sustancial quedan*
*regulados por la ley sustantiva perteneciente a un determinado Estado, y otros aspectos se*
*encuentran sometidos a la ley de un Estado diverso, pues como se ha explicado, la complejidad*
*que pudiere tener la relación jurídica privada internacional, dependerá de los elementos o*
*puntos de conexión que ésta tenga con diversos órdenes jurídicos.*

*72. En la doctrina del derecho internacional privado, se precisa que la determinación del*
*derecho aplicable a la relación jurídica privada internacional, puede reconocer como tal, al*
*derecho interno de cualquiera de los sistemas jurídicos estatales involucrados en la relación,*
*esto es, el derecho del Estado en que se promueve el juicio, o el derecho de un Estado*
*extranjero, pero siempre debe ser el que resulte de mayor conformidad con la naturaleza de la*
*misma y con la materia de la controversia; y que, la norma sustancial aplicable, debe ser única*
*y adecuada, pues una relación jurídica, o un mismo aspecto de ella, no debe admitirse*
*sometido, al mismo tiempo, a más de un sistema jurídico, ante el riesgo de la contradicción(37)*
*y conforme a elementales razones de seguridad jurídica.*

*73. Así, las normas de conflicto que establecen las reglas para la elección del derecho*
*sustantivo aplicable para la solución de la controversia de derecho internacional privado, por*
*regla general, atienden al elemento de la relación jurídica internacional que resulte*
*determinante en la litis planteada (los sujetos, el objeto, el acto y/o la causa) y a su punto de*
*contacto o conexión más objetivo con el derecho que conforme a su naturaleza sea el*
*adecuado para regirlo, que puede ser, según la relación, el derecho nacional del Estado donde*
*se plantea la demanda o el derecho del Estado extranjero.*

*74. En ese sentido, la doctrina reconoce como criterios básicos en la determinación de ese*
*vínculo entre la relación jurídica y el derecho sustancial que debe regirla, que cuando el*
*elemento determinante de la relación jurídica acorde con la materia de controversia*
*planteada, radica en los sujetos (la persona) el punto de conexión con el derecho aplicable*
*estará en favor del sistema jurídico que le corresponda conforme a su nacionalidad o a su*
*domicilio; cuando ese elemento determinante de la relación jurídica radique en los bienes (el*
*objeto) el sistema jurídico prevaleciente por naturaleza será el de la ubicación de éstos; y*
*cuando tal elemento determinante sea el acto o la causa de éste, la conexión podrá definirse*
*en función del lugar de su celebración o del lugar de ejecución de las obligaciones relativas;*
*esto, de manera que el derecho sustancial que se determine como aplicable sea el que esté*



FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

marzo de dos mil diecinueve, el juez concursal debió pronunciarse respecto de esa situación, sin concluir que era incompetente, ya que de conformidad con el artículo 87 de la Ley de Concursos Mercantiles, el instructor válidamente puede tener por no puesta cualquier estipulación contractual que con motivo de la presentación de una solicitud o demanda de concurso mercantil, o de su declaración, establezca modificaciones que agraven para el Comerciante los términos de los contratos.

La aplicación del artículo citado no implica ni el desconocimiento del derecho extranjero, ni dejar sin efectos nulificar, modificar o extinguir los contratos al amparo de las leyes a que se haya sujetado la comerciante y sus acreedores, sino únicamente se persigue no agravar la situación de la empresa declarada en concurso, partiendo de la base de que el procedimiento concursal se ventila en México y que su objeto fundamental es preservar la empresa sin dejar de mantener un principio de igualdad entre los acreedores.

Es claro que si en la sentencia reclamada el juez responsable partió de la premisa que las recurrentes pretendieron nulificar la cláusula relativa del contrato de emisión de bonos, las conclusiones de su fallo fueron incorrectas, porque lo que debió desentrañar era si era posible o no dejarla de aplicar, pero partiendo de la base de que válidamente puede tener por no puesta cualquier estipulación contractual que con motivo de la presentación de una solicitud o demanda de concurso mercantil, o de su declaración, establezca modificaciones que agraven para el Comerciante.

---

*más íntimamente ligado a la naturaleza de la relación jurídica privada internacional y de la controversia que emana de ella."*

*En ese estado las cosas, el Juez responsable **no debió dejar de acordar en su totalidad** las medidas cautelares, **sino pronunciarse sobre aquella en que se solicitó no ejecutar las garantías referidas en el acuerdo de emisión de bonos** modificado y reexpresado el veintinueve de abril de dos mil dieciséis, modificado el dos de junio de dos mil dieciséis y el veintinueve de septiembre de dos mil dieciséis, y nuevamente modificado y reexpresado en su totalidad el nueve de noviembre de dos mil dieciséis, determinando la prohibición a Nordic Trustee Asa, para apoderarse de las plataformas marinas autoelevables, identificadas como Primus, Laurus, Fortius, Decus e Impetus, hasta en tanto no se resolviera lo conducente en el juicio concursal 345/2017 **y no pronunciarse respecto de las relativas a modificar, nulificar o resolver el acuerdo de bonos citado o sus cláusulas o cuestiones ajenas al concurso mercantil."***


ULISES GARCÍA MOLINA
20.30.30.33.30.30.30.34.31.30.34.30.39.38.31.37
24.04.22.09.09.45

45

En ese orden de ideas, para establecer la posibilidad de no aplicar la cláusula 15.1 del contrato de emisión de bonos, el juez responsable debió ponderar si era viable paralizar ciertos efectos del referido contrato, advirtiendo cuáles serían las consecuencias de su aplicación y si éstas agravaban o no la situación de las comerciantes.

Entiéndase que tener por no puesta una cláusula contractual, no implica modificar, nulificar o resolver el acuerdo de emisión de bonos de veinticuatro de enero de dos mil catorce, <u>sino que se trata de suspender sus efectos con el único propósito de no agravar la situación de la comerciante declarada en concurso mercantil</u>.

Lo anterior hace procedente revocar la sentencia recurrida y conceder a las quejosas el amparo y protección de la Justicia de la Unión que solicitan, para los siguientes efectos:

1.- Para que el juez responsable deje insubsistente la sentencia reclamada y en su lugar dicte una nueva en la que:

2.- Con base en lo considerado en la presente ejecutoria, establezca cuáles son las consecuencias inmediatas de la aplicación de la cláusula 15.1 del contrato de emisión de votos (*sic*), para determinar si agrava la situación de las comerciantes y,

3.- En caso de que concluya que la aplicación de la cláusula en comento agrava la situación de las comerciantes, disponga dejarla de aplicar, resolviendo lo que en derecho proceda.

(…)"

Como se advierte, **el tribunal revisor <u>acotó</u>** los motivos de disenso planteados por las impetrantes a efecto de determinar **si resulta o no procedente que el suscrito juzgador** tenga **por no puesta** una cláusula del contrato de emisión de bonos de veinticuatro de enero de dos mil catorce, modificado y reexpresado el veintinueve de abril de dos mil dieciséis, modificado el dos de junio de dos mil dieciséis y el veintinueve de septiembre de dos mil dieciséis, y nuevamente modificado y reexpresado en su totalidad el nueve de

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

**PODER JUDICIAL DE LA FEDERACIÓN**

noviembre de dos mil dieciséis, **suscrito entre Oro Negro Drilling Pte. Ltd., como "emisor" y Nordic Trustee Asa, como "fiduciario de bonos"**.

Evidenciando que, **por ser verdad legal**, el suscrito como juez concursal **no puede modificar, nulificar o resolver el acuerdo de emisión de bonos de veinticuatro de enero de dos mil catorce**, modificado y reexpresado el veintinueve de abril de dos mil dieciséis, modificado el dos de junio de dos mil dieciséis y el veintinueve de septiembre de dos mil dieciséis, y nuevamente modificado y reexpresado en su totalidad el nueve de noviembre de dos mil dieciséis, **y que sí puede** con base en el artículo 87 de la ley de la Ley de Concursos Mercantiles **tener por no puesta cualquier estipulación contractual que con motivo de la presentación de la solicitud del concurso o de su declaración, estableciera modificaciones que agraven para el Comerciante los términos de los contratos**.

Así, siguiendo los lineamientos planteados por el tribunal de amparo indicó se estableciera:

1. Cuáles son las **consecuencias inmediatas** de la aplicación de la cláusula 15.1 del contrato de emisión de bonos.

2. En virtud de dichas consecuencias **determinar** si agrava la situación de las comerciantes **Perforadora**

ULISES GARCÍA MOLINA
2d 0d 2D 3D 3D 50 50 3D 3D 3D 3D 33 30 5A 80 59 58 33 57
2d 0d 22 09 04 65

**Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, e **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**.

**3.** En caso de concluir que la aplicación de la cláusula en comento agrava la situación de las comerciantes, se disponga **dejarla de aplicar**, resolviendo lo que en derecho proceda.

Ahora, a efecto de evidenciar el **primer punto** en comento, resulta necesario transcribir la cláusula **15.1 (g) (i)**[16] del acuerdo de emisión de bonos de veinticuatro de enero de dos mil catorce, modificado y reexpresado el veintinueve de abril, dos de junio, veintinueve de septiembre y nueve de noviembre, todos de dos mil dieciséis, así como las cláusulas **15.2, 15.3** y **15.4**, en las cuales se establecen las consecuencias de la declaración de *Bonos morosos* (casos de incumplimiento), a fin de advertir las consecuencias inmediatas en caso de actualización de una infracción, las cuales son del tenor literal siguiente:

"**15. Casos de Incumplimiento**

**15.1** *El Fiduciario de los Bonos puede declarar que los Bonos son morosos después de que ocurre cualquiera de los siguientes casos, en cada caso únicamente en la medida en que dichos casos ocurran después de la fecha del presente documento:*

---

[16] Materia del presente medio de impugnación.



**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

**PODER JUDICIAL DE LA FEDERACIÓN**

(…)

*(g) Procedimientos de insolvencia y disolución*

*Si se presenta cualquier acción corporativa, procedimiento legal u otra fase del procedimiento para cualquiera entre el Emisor, la Matriz, el Fletador o cualquier Propietario de la Plataforma en relación con:*

*(i) la suspensión de pagos, la moratoria de cualquier endeudamiento, la liquidación, la disolución, la administración o la reorganización (por medio del acuerdo voluntario, la liquidación provisional, la administración legal, el esquema de acuerdo o de otra manera) distinta a la liquidación por insolvencia o la reorganización;*

(…)

***15.2*** *En caso de que ocurra y continúe una o más de las circunstancias que se mencionan en la Cláusula 15.1, el Fiduciario de los Bonos puede, para proteger los intereses de los Tenedores de Bonos, declarar los Bonos en Circulación, incluido el interés devengado, los costos y los gastos como morosos y vencido para pago inmediato.*

*El Fiduciario de los Bonos puede, conforme a su discreción, implementar la medida necesaria para recuperar los montos vencidos conforme los Bonos en Circulación y todos los montos pendientes*

49

*conforme el presente Contrato de Bonos y cualquier otro Documento Financiero.*

*15.3 En caso de que ocurra y continúe una o más de las circunstancias que se mencionan en la Cláusula 15.1, el Fiduciario de los Bonos declarará los Bonos en Circulación, incluido el interés devengado, los costos y los gastos como morosos y vencidos para pago inmediato si:*

*(a) el Fiduciario de los Bonos recibe la solicitud por escrito de que se declarará el incumplimiento de los Tenedores de Bonos que representan al menos una 1/5 parte (una quinta parte) de los Bonos con Derecho de Voto y la Asamblea de Tenedores de Bonos no ha determinado otras soluciones, o*

*(b) la Asamblea de Tenedores de Bonos ha terminado con la mayoría simple declarar los Bonos en Circulación como morosos y vencidos para pago.*

*En cualquier caso, el Fiduciario de los Bonos implementará cada medida necesaria para recuperar los montos vencidos conforme los Bonos en Circulación. El Fiduciario de los Bonos puede solicitar la garantía prendaria satisfactoria para cualquier posible pasivo y gastos previstos de dichos Tenedores de Bonos que solicitaron que se realizara la declaración de incumplimiento conforme la subcláusula (a) anterior y/o aquellos que votaron a favor de la decisión conforme la subcláusula (b) anterior.*

*15.4 En caso de que el Fiduciario de los Bonos conforme los términos de la cláusula 15.2 o 15. Declare los Bonos en Circulación como morosos y vencidos para pago, el Fiduciario de los Bonos entregará de inmediato al Emisor una notificación*

ULISES GARCIA MOLINA
30.30.30.34.31.30.54.31.30.30
24:04:22 09:04:45

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

**PODER JUDICIAL DE LA FEDERACIÓN**

*en la cual solicite el pago del interés y el principal vencidos a los Tenedores de Bonos conforme los Bonos en Circulación, incluido el interés devengado y el interés sobre los montos y los gastos vencidos. La reclamación que se derivó de los Bonos en Circulación vencidos para pago como resultado de un Caso de Incumplimiento se calculará al precio que se establece en la Cláusula 10.1.1(a) para reembolso en la Fecha de Vencimiento.*"[17]

De la trascripción en comento se colige que actualizado un caso de incumplimiento previsto en la cláusula **15.1** del contrato de bonos, verbigracia "*Procedimientos de insolvencia y disolución*" **trae como consecuencia que**:

- El fiduciario de los bonos[18] (**Nordic Trustee ASA**) los **declare en circulación**, incluidos el interés devengado, los costos y los gastos como morosos y vencidos para **pago inmediato**.

---

[17] **Definiciones según el contrato de bonos:**
**Fiduciario de los bonos:** Nordic Trustee ASA.
**Bonos:** significa los instrumentos de deuda emitidos por el Emisor conforme a este Contrato de Bonos.
**Emisor:** Oro Negro Drilling PTE. LTD.
**La Matriz:** significa **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, una sociedad constituida en México (no. de registro 413253-1).

[18] **Definición de Bono según el contrato de bonos:**
"**2.5 Los Bonos**
*2.5.1 A partir de la Fecha de Modificación, el Emisor tendrá Bonos en Circulación con un monto total de capital de aproximadamente USD 939,1005,570 (novecientos treinta y nueve millones cien mil quinientos setenta Dólar Estadounidenses) y un interés acumulado e impago de aproximadamente USD 38,039,791 (treinta y ocho millones treinta y nueve mil setecientos noventa y uno Dólar Estadounidenses).*
*2.5.2 El Valor Nominal de cada Bono es de USD 1 (un Dólar Estadounidense) cada uno con una suscripción mínima y asignación de USD 200,000 (doscientos mil Dólar Estadounidenses) y múltiplos enteros de USD 100,000 (cien mi Dólar Estadounidenses). Los Bonos se clasificarán pari passu entre ellos*"

ULISES GARCÍA MOLINA
30.30.30.30.31.30.30.30.30.34.31.30.34.30.59.38.33.37
34.04f.22.09.04f.0

▪ El fiduciario de los bonos, conforme a su discreción, implemente las medidas necesarias para recuperar los montos vencidos conforme los bonos en circulación y todos los montos pendientes conforme el acuerdo de bonos y cualquier otro documento financiero (pactado en el mismo).

▪ El fiduciario de los bonos entregue de inmediato al Emisor (**Oro Negro Drilling PTE. LTD.**) una notificación en la cual solicite el pago del interés y el principal vencidos a los Tendedores de Bonos conforme los bonos en circulación, incluido el interés devengado y el interés sobre los montos y los gastos vencidos.

Lo anterior, -como se aprecia dicho acuerdo de voluntades-[19] a efecto de proteger los intereses de los tenedores de Bonos.

Ahora, con base en lo antes expuesto, se procede a determinar conforme al **segundo punto** de los efectos concesorios del amparo, si como resultado de la actualización de uno de los casos de incumplimiento (cláusula 15.1) enlistados en el acuerdo de bonos –*en específico el inciso (g) subinciso (i)*–[20]; **agrava o no** a las comerciantes **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, e **Integradora de Servicios Petroleros**

---

[19] Esto claro, sin que el suscrito como juez concursal interprete el acuerdo de emisión de bonos de veinticuatro de enero de dos mil catorce, como lo estableció el Tribunal de amparo.

[20] Que se peticiona se tenga por no opuesta.

FORMA A-55
**Concurso Mercantil 345/2017-I**
*Recurso de revocación*
*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto
270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de
México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado
en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

**Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**.

Ello, con base en lo establecido por el tribunal revisor en el sentido que el suscrito como juez concursal **no puede modificar, nulificar o resolver el acuerdo de emisión de bonos de veinticuatro de enero de dos mil catorce**, modificado y reexpresado el veintinueve de abril de dos mil dieciséis, modificado el dos de junio de dos mil dieciséis y el veintinueve de septiembre de dos mil dieciséis, y nuevamente modificado y reexpresado en su totalidad el nueve de noviembre de dos mil dieciséis, pero **sí puede** con base en el artículo 87 de la ley de la Ley de Concursos Mercantiles **tener por no puesta cualquier estipulación contractual que con motivo de la presentación de la solicitud del concurso o de su declaración, estableciera modificaciones que agraven para el Comerciante los términos de los contratos**.

En ese sentido, atento a las consecuencias inmediatas pactadas por **Oro Negro Drilling Pte. Ltd.**, como "emisor" y **Nordic Trustee Asa**, como "fiduciario de bonos" para el caso de actualización de un incumplimiento, debe decirse que la cláusula en cuestión **sí agrava a las comerciantes.**

Lo anterior es así, pues si bien en el contrato de bonos no se establecen expresamente las consecuencias que refieren las recurrentes al únicamente obligarse al mismo los

53

suscribientes **Oro Negro Drilling Pte. Ltd.**, como "emisor" y **Nordic Trustee Asa**, como "fiduciario de bonos"; lo cierto es, que las consecuencias previstas para el caso de incumplimiento concatenado con los "Documentos Financieros" y los anexos[21] relacionados en el mismo, agrava a las comerciantes, pues con motivo de la notificación de incumplimiento del contrato de bonos en comento se realizó:

**1.** Cambio de directores de Drilling, Primus, Laurus, Fortius, Decus e Impetus.

**2.** La Transmisión de acciones representantivas del capital social de Drilling, propiedad de Integradora a favor de **Ond. Pte. Ltd.**

**3.** Revocación[22] y otorgamientos[23] de poderes con motivo la nueva designación de directivos de Drilling, Primus, Laurus, Fortius, Decus e Impetus (Roger Arnold Hancock y Roger Alan Berlett).

---

[21] Verbigracia: Anexo 2 FORMULARIO DE COMPROMISO DEL FLETADOR; Anexo 3 FORMATO DE LA GARANTÍA, entre otros.

[22] Derivado de la designación de Roger Arnold Hancock y Roger Alan Bartlett como directores de *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS,* con fecha nueve de octubre de dos mil diecisiete, adoptaron ciertas resoluciones de directores aprobando, entre otras cosas, la **rescisión de todos y cada uno de las facultades y los poderes previamente otorgados** por *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS* y la designación de diversas personas para actuar como los representantes legales, apoderados y abogados de *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS.*

Asimismo, Roger Arnold Hancock y Roger Alan Bartlett como directores de *DRILLING, PRIMUS, LAURUS, DECUS* e *ÍMPETUS,* con fecha cinco de febrero de dos mil dieciocho, dictaron ciertas resoluciones aprobando, entre otras cosas, **la revocación** de los poderes previamente otorgados por *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS* a favor de Alonso del Val Echeverría, Gonzalo Gil White, Jaime Rene Guerra González, Patricio Fabián Hidalgo Estrada, Alfonso Peniche García, Román Salazar Castillo, Ernesto Luis Rodríguez León, Octavio Ochoa Huerta, Raúl García Herrera, Sergio Cabanas Mier, Elias Mendoza Murguía y **Jesús Ángel Guerra Méndez**. ("Segunda Revocación de Poderes").

[23] El nueve de octubre de dos mil diecisiete, Roger Arnold Hancock, en su carácter de director de *DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS,* llevó a cabo el **otorgamiento de poderes** a favor de los señores **Alejandro Sainz Orantes**, Daniel Alejandro Díaz Álvarez, **Manuel Ruiz de Chávez Gutiérrez de Velasco**, Ana Gabriela Avendaño Fernández, Luis Antonio Estrella Saavedra, Santiago Alessio Robles Seguí, Daniel Pardo Fuentes y Jesús Ángel Origel Zavala.

ULISES GARCÍA MOLINA
30.30.33 30.30.30.30.34 33.30.34.30.59.30.31.37
24.04.22 09:04:45

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

**4.** Las cartas de renuncia de Alonso del Val Echeverría, **Gonzalo Gil White**, Anita Chew Peck Hwa y Carlos Enrique Williamson Nasi a sus cargos como directores de Drilling, Primus, Laurus, Fortius, Decus e Impetus.

**5.** Cualesquiera actos llevados a cabo con motivo o consecuencia de los anteriores.

Como se advierte de las precitadas consecuencias inmediatas con motivo de uno de los supuestos de incumplimiento (cláusula **15.1 (g) (i)**[24]), permite a **Nordic Trustee As**, declarar un evento de incumplimiento y, con ello, enunciar la aceleración de los bonos y llevar a cabo la ejecución de las garantías otorgadas, es decir, se le permite realizar ejecuciones privadas y unilaterales de los bienes que tenían en posesión las comerciantes –las plataformas marinas autoelevables- (lo cual se encuentra categóricamente prohibido por la Ley de Concursos Mercantiles, y se traduce en violar el principio de *par condictio creditorum*), y la afectación al mecanismo de

---

[24] *"**15. Casos de Incumplimiento**

**15.1** El Fiduciario de los Bonos puede declarar que los Bonos son morosos después de que ocurre cualquiera de los siguientes casos, en cada caso únicamente en la medida en que dichos casos ocurran después de la fecha del presente documento:
(…)
**(g)** Procedimientos de insolvencia y disolución
Si se presenta cualquier acción corporativa, procedimiento legal u otra fase del procedimiento para cualquiera entre el Emisor, la Matriz, el Fletador o cualquier Propietario de la Plataforma en relación con:*

*(i) la suspensión de pagos, la moratoria de cualquier endeudamiento, la liquidación, la disolución, la administración o la reorganización (por medio del acuerdo voluntario, la liquidación provisional, la administración legal, el esquema de acuerdo o de otra manera) distinta a la liquidación por insolvencia o la reorganización; (…)"*

distribución de recursos conforme fideicomiso F/1695, lo cual es contrario a la conservación de la empresa, ya que dichos actos impiden la realización de sus operaciones ordinarias, por lo que es evidente que no se observe la cláusula **15.1 (g) (i)** del acuerdo de emisión de bonos, ya que con motivo de su aplicación se afecta directamente el interés social.

En efecto, permitir que la acreedora **Nordic Trustee Asa**, ejecute las garantías, dejaría sin efectos el concurso mercantil de las comerciantes, que no tiene como objetivo principal llevar a la quiebra a los comerciantes, pues esto afectaría los objetivos económicos del Estado en relación con sus gobernados, sino que, el objetivo principal de la Ley de Concursos Mercantiles, es conservar a las empresas y evitar que el incumplimiento generalizado de sus obligaciones de pago pongan en riesgo su viabilidad y de sus correlativas con las que tengan negocios, es decir, busca proteger a la empresa para preservar su operación y los empleos que genera, a fin de conservar el equilibrio entre el comerciante y sus acreedores.

Sin que sea obstáculo para ello que en el acuerdo de emisión de bonos sus celebrantes se hayan sometido a la legislación extranjera, ya que las disposiciones de la Ley de Concursos Mercantiles son de orden público en la medida en que procuran la conservación de la empresa, siendo la conservación de ésta uno de los bienes jurídicos tutelados por el Estado, por ser de gran importancia para la sociedad y la economía nacional, y por lo tanto, las disposiciones de la ley concursal son de aplicación inmediata, territorial e imperativa, sobre cualquier otro derecho pactado por las partes.



**Concurso Mercantil 345/2017-I**

*Recurso de revocación*



*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

En efecto, **el juez del concurso <u>no puede pronunciarse sobre el acuerdo de bonos que implique la nulidad, modificación, exclusión o resolución de ciertas cláusulas</u>**, celebrado el veinticuatro de enero de dos mil catorce y sus convenios modificatorios, toda vez que las partes que lo suscribieron convinieron en que cualquier conflicto que surja entre el fiduciario de los bonos, los tenedores de bonos y cualquier obligado, como el fletador (en este caso <span style="color:red">Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable</span>) se resolverían conforme a la legislación de Noruega, sin embargo, legalmente puede acordar aquellas que impliquen ejecutar las garantías y cuyo objeto sea contrario a preservar la viabilidad de las comerciantes, empero **sí puede**, con base en el artículo 87 de la ley de la Ley de Concursos Mercantiles **tener por no puesta cualquier estipulación contractual que con motivo de la presentación de la solicitud del concurso o de su declaración, estableciera <u>modificaciones que agraven para el Comerciante los términos de los contratos</u>**.

La aplicación del artículo citado –*como lo consideró el órgano colegiado en la ejecutoria que resolvió el recurso de revisión <span style="color:red">21/2019</span>*- no implica ni el desconocimiento del derecho extranjero, ni dejar sin efectos nulificar, modificar o extinguir los contratos al amparo de las leyes a que se haya sujetado la comerciante y sus acreedores, sino **únicamente persigue no agravar la situación de la empresa declarada**

57

**en concurso, partiendo de la base de que el procedimiento concursal se ventila en México y que su objeto fundamental es preservar la empresa sin dejar de mantener un principio de igualdad entre los acreedores**.

Expuesto lo anterior, al constatar que la cláusula en cuestión (**15.1 (g) (i)**) del acuerdo de bonos **agrava** la **situación de las comerciantes <span style="color:red">Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable</span>**, e **<span style="color:red">Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable</span>**; conforme al <u>tercer punto</u> de los efectos concesorios del amparo, en **estricto cumplimiento** a lo determinado por el **Octavo Tribunal Colegiado en Materia Civil del Primer Circuito,** en el recurso de revisión **<span style="color:red">R.C. 108/2020,</span>** resulta **fundado** el recurso de revocación hecho valer por las comerciantes en cita en contra de la determinación adoptada el <u>once de octubre de dos mil dieciocho</u>, únicamente por cuanto hace al terma acotado por el tribunal revisor. Esto es, **determinar** si resulta o no procedente que el suscrito juzgador tenga por no puesta una cláusula del acuerdo de emisión de bonos en cita.

Por lo anterior, se <u>**revoca**</u> el acuerdo de marras **en la parte conducente** al estudio de que si el suscrito juzgador con base en lo dispuesto en el Capítulo V De los efectos en relación con las obligaciones del Comerciante, Sección I Regla general y vencimiento anticipado, artículo 87 de la Ley de Concursos Mercantiles[25], puede o no tener por no opuesta

---

[25] **Artículo 87.-** Se tendrá por no puesta, salvo las excepciones expresamente establecidas en esta Ley, cualquier estipulación contractual que con motivo de la presentación de una solicitud o demanda de concurso mercantil, o de su declaración, establezca modificaciones que agraven para el Comerciante los términos de los contratos.

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

cualquier estipulación contractual que con motivo de la presentación de una solicitud o demanda de concurso mercantil, o de su declaración, establezca modificaciones que agraven para el Comerciante los términos de los contratos.

En ese sentido, conforme lo expuesto por las comerciantes en el escrito con número de registro **18866** así como lo sostenido por el **Octavo Tribunal Colegiado en Materia Civil del Primer Circuito,** en el recurso de revisión **R.C. 108/2020**, se colige que la cláusula **15.1 (g) (i)** del acuerdo de emisión de bonos de veinticuatro de enero de dos mil catorce, modificado y reexpresado el veintinueve de abril, dos de junio, veintinueve de septiembre y nueve de noviembre, todos de dos mil dieciséis, **agrava** la situación de las comerciantes **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable,** e **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, por tanto se **deja de aplicar** la misma.

Sin que lo anterior implique, como lo estableció el referido colegiado modificar, nulificar o resolver el acuerdo de emisión de bonos de veinticuatro de enero de dos mil catorce, sino que se trata de suspender sus efectos con el único propósito de no agravar la situación de la comerciante –al ser verdad legal–.

59

Corolario, al tener por no opuesta la cláusula en mención del Acuerdo de Emisión (conforme lo previsto en el Capítulo V De los efectos en relación con las obligaciones del Comerciante, Sección I Regla general y vencimiento anticipado, artículo 87 de la Ley de Concursos Mercantiles), se **deja <u>sin efectos</u>**:

1. La notificación de incumplimiento del contrato de bonos en comento.

2. Cambio de directores de <span style="color:red">Drilling</span>, <span style="color:red">Primus</span>, <span style="color:red">Laurus</span>, <span style="color:red">Fortius</span>, <span style="color:red">Decus</span> e <span style="color:red">Impetus</span>.

3. La Transmisión de acciones representantivas del capital social de <span style="color:red">Drilling</span>, propiedad de <span style="color:red">Integradora</span> a favor de **<span style="color:red">Ond. Pte. Ltd.</span>**

4. Revocación[26] y otorgamientos[27] de poderes con motivo la nueva designación de directivos de

---

[26] Derivado de la designación de <span style="color:red">Roger Arnold Hancock</span> y <span style="color:red">Roger Alan Bartlett</span> como directores de <span style="color:red">*DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS,*</span> con fecha nueve de octubre de dos mil diecisiete, adoptaron ciertas resoluciones de directores aprobando, entre otras cosas, la **rescisión de todos y cada uno de las facultades y los poderes previamente otorgados** por <span style="color:red">*DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS*</span> y la designación de diversas personas para actuar como los representantes legales, apoderados y abogados de <span style="color:red">*DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS*.</span>

Asimismo, <span style="color:red">Roger Arnold Hancock</span> y <span style="color:red">Roger Alan Bartlett</span> como directores de <span style="color:red">*DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS,*</span> con fecha cinco de febrero de dos mil dieciocho, dictaron ciertas resoluciones aprobando, entre otras cosas, **la revocación** de los poderes previamente otorgados por <span style="color:red">*DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS*</span> a favor de <span style="color:red">Alonso del Val Echeverría, Gonzalo Gil White, Jaime Rene Guerra González, Patricio Fabián Hidalgo Estrada, Alfonso Peniche García, Román Salazar Castillo, Ernesto Luis Rodríguez León, Octavio Ochoa Huerta, Raúl García Herrera, Sergio Cabanas Mier, Elias Mendoza Murguía y **Jesús Ángel Guerra Méndez**</span>. ("Segunda Revocación de Poderes").

[27] El nueve de octubre de dos mil diecisiete, <span style="color:red">Roger Arnold Hancock</span>, en su carácter de director de <span style="color:red">*DRILLING, PRIMUS, LAURUS, FORTIUS, DECUS* e *ÍMPETUS,*</span> llevó a cabo el **otorgamiento de poderes** a favor de los <span style="color:red">señores **Alejandro Sainz Orantes**, Daniel Alejandro Díaz Álvarez, **Manuel Ruiz de Chávez Gutiérrez de Velasco**, Ana Gabriela Avendaño Fernández, Luis Antonio Estrella Saavedra, Santiago Alessio Robles Seguí, Daniel Pardo Fuentes y Jesús Ángel Origel Zavala.</span>

FORMA A-55

**Concurso Mercantil 345/2017-I**
*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

**PODER JUDICIAL DE LA FEDERACIÓN**

Drilling, Primus, Laurus, Fortius, Decus e Impetus (Roger Arnold Hancock y Roger Alan Berlett).

5. Las cartas de renuncia de Alonso del Val Echeverría, **Gonzalo Gil White**, Anita Chew Peck Hwa y Carlos Enrique Williamson Nasi a sus cargos como directores de Drilling, Primus, Laurus, Fortius, Decus e Impetus.

6. Cualesquiera actos llevados a cabo con motivo o consecuencia de los anteriores.

Por lo expuesto, fundado en los artículos 268 de la Ley de Concursos Mercantiles, y 1077 y 1355 del Código de Comercio, de aplicación supletoria a la Ley de la materia, se

**R E S U E L V E**

**PRIMERO**. Son **fundados** los agravios hechos valer por **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable** e **Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable**, por conducto de su apoderado **Elías Mendoza Murguía**.

**SEGUNDO**. En estricto cumplimiento a lo determinado por el **Octavo Tribunal Colegiado en Materia Civil del**

61

**Primer Circuito,** en el recurso de revisión **R.C. 108/2020,** se **<u>revoca</u>** el auto de **once de octubre de dos mil dieciocho**, para los efectos precisados en el considerando quinto *in fine*.

**TERCERO.** Remítase vía interconexión copia de la presente resolución al **Juzgado Decimoprimero de Distrito en Materia Civil en la Ciudad de México**, en cumplimiento a la sentencia amparatoria que dictó el **Octavo Tribunal Colegiado en Materia Civil del Primer Circuito**, en el recurso de revisión R.C. **108/2020**, relativa al juicio de amparo indirecto **270/2019** del índice de la primera autoridad señalada.

*Notifíquese electrónicamente a las comerciantes Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable; a Nordic Trustee As y al síndico José Gerardo Badín Cherit, y por medio de lista a Oro Negro Drilling, Pte. Ltd., Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd., y Oro Negro Impetus Pte. Ltd., así como al resto de las partes, esto en el portal de internet del Poder Judicial de la Federación.*

Lo resolvió y firma electrónicamente **Benito Arnulfo Zurita Infante**, Juez Segundo de Distrito en Materia Civil en la Ciudad de México, asistido de **Ulises García Molina,** secretario que autoriza y da fe.

**MICHAEL**

ULISES GARCIA MOLINA
30/30/30/30/30/30/30/30/34.31.30/34.30.59.58.33.37
24/04/22 09:04:45

FORMA A-55

**Concurso Mercantil 345/2017-I**

*Recurso de revocación*

*Dictado en cumplimiento a la ejecutoria pronunciada en el juicio de amparo indirecto 270/2019 del índice del Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México, con motivo de la concesión del amparo otorgada por el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito, en el recurso de revisión R.C. 108/2020.*

PODER JUDICIAL DE LA FEDERACIÓN

-Firma electrónica-

**Benito Arnulfo Zurita Infante.**

**Juez de Distrito.**

-Firma electrónica-

**Ulises García Molina.**

**Secretario de Juzgado.**

EN ESTA FECHA LA SECRETARIA HACE CONSTAR QUE EN RELACIÓN AL PRESENTE ACUERDO SE GIRÓ EL OFICIO **1011/2021-C**AL **JUZGADO DÉCIMO PRIMERO DE DISTRITO EN MATERIA CIVIL EN LA CIUDAD DE MÉXICO**.**CONSTE.**

En lista de **23 de febrero de 2021**.

Se hizo la publicación de Ley notificando a las partes la resolución que antecede. **Conste.**

PODER JUDICIAL DE LA FEDERACIÓN

63



## PODER JUDICIAL DE LA FEDERACIÓN

**EVIDENCIA CRIPTOGRÁFICA - TRANSACCIÓN**

**Archivo Firmado:**
6893983_0023000021664664775.p7m
**Autoridad Certificadora:**
A.C. del Servicio de Administración Tributaria
**Firmante(s): 2**

| FIRMANTE | | | | | |
|---|---|---|---|---|---|
| **Nombre:** | ULISES GARCIA MOLINA | | **Validez:** | BIEN | Vigente |

| FIRMA | | | | |
|---|---|---|---|---|
| **No. serie:** | 30.30.30.30.31.30.30.30.30.30.34.31.30.34.39.39.38.31.37 | **Revocación:** | Bien | No revocado |
| **Fecha: (UTC/ CDMX)** | 22/02/21 22:53:12 - 22/02/21 16:53:12 | **Status:** | Bien | Valida |
| **Algoritmo:** | RSA - SHA256 | | | |
| **Cadena de firma:** | 67 55 89 95 a1 7f fd 79 95 d1 89 22 f7 cc a3 95 96 70 57 a8 47 90 b9 34 30 b6 b5 53 08 ff 70 4e bb 5d 62 17 ce af 10 46 6d d8 25 8d ce 1e 6c 71 01 ce 40 7f d3 5b 75 ac 36 9c eb aa d3 75 2c 48 ac c4 7e d0 29 e6 30 61 b9 60 4b df 01 f2 15 a4 b4 21 5f 6b db f3 55 f8 75 a9 95 c1 24 2a b4 67 7f 25 1d cb 39 d7 19 11 53 b6 fe 51 9c 45 71 3c 3e e4 a0 ec 76 1c 51 2d ee dd b5 8a 51 30 59 be 0b 66 0b 9b 5d cd 59 be 5b 82 42 a7 8e a3 47 80 73 30 10 9e 7a 4a b6 fc 8b 1b e8 2b c6 05 d5 0e c7 a9 9d 38 39 d5 f6 58 47 17 db 57 96 5a 48 89 02 b5 75 f2 62 29 f8 dc bf fa 9f 8c bc 38 cf 6f 61 39 24 95 51 83 5a 19 da dd 07 e6 9a 25 5a 24 05 1d a7 81 a3 5f 82 ee 39 de 28 3b cc 62 2d 05 f7 0f 97 fb 5b 45 c0 b3 f9 ef e4 42 cc ab 97 29 d0 4b 4c 0d 45 d3 88 aa 9b a4 01 ec 34 47 a5 9b | | | |

| OCSP | |
|---|---|
| **Fecha: (UTC / CDMX)** | 22/02/21 22:53:23 - 22/02/21 16:53:23 |
| **Nombre del respondedor:** | Servicio delegado OCSP de la AC del SAT |
| **Emisor del respondedor:** | A.C. del Servicio de Administración Tributaria |
| **Número de serie:** | 30.30.30.30.31.31.30.38.38.38.38.38.30.30.30.30.30.32.32 |

| TSP | |
|---|---|
| **Fecha : (UTC / CDMX)** | 22/02/21 22:53:13 - 22/02/21 16:53:13 |
| **Nombre del emisor de la respuesta TSP:** | Autoridad Emisora de Sellos de Tiempo del Consejo de la Judicatura Federal |
| **Emisor del certificado TSP:** | Autoridad Certificadora Intermedia del Consejo de la Judicatura Federal |
| **Identificador de la respuesta TSP:** | 37974993 |
| **Datos estampillados:** | KSJkQ9PZbenrt22Y/0bsccoSooo= |



## PODER JUDICIAL DE LA FEDERACIÓN

| FIRMANTE | | | | | |
|---|---|---|---|---|---|
| **Nombre:** | BENITO ARNULFO ZURITA INFANTE | | **Validez:** | BIEN | Vigente |
| **FIRMA** | | | | | |
| **No. serie:** | 70.6a.66.20.63.6a.66.00.00.00.00.00.00.00.00.00.00.8c.dc | | **Revocación:** | Bien | No revocado |
| **Fecha:**<br>**(UTC/ CDMX)** | 22/02/21 22:59:57 - 22/02/21 16:59:57 | | **Status:** | Bien | Valida |
| **Algoritmo:** | RSA - SHA256 | | | | |
| **Cadena**<br>**de firma:** | 04 d6 9c 6c b0 ce a6 61 ea 56 b7 5c 36 1e 74 dd<br>3e 3c d9 ae 84 85 89 2b 66 47 e8 7e 09 63 b0 ac<br>7b 88 ec 4e e2 b7 19 d0 31 f6 7a 7c 2b 1b 67 9b<br>e9 a3 17 0c 25 72 0e 6f 82 cb b8 9a ce 97 d5 89<br>8b 52 c9 62 03 1e 86 a9 a7 fe 94 5a 1c cb 07 db<br>99 e0 9c da 2e ec 53 57 36 27 85 6b e8 c0 d1 0b<br>15 db ff 35 8c 75 33 13 ca f4 77 25 cb 28 49 9c<br>28 28 1f 8f 6b ce 28 3f 2e 54 2e 81 dc 48 b8 61<br>ca bc cd af 16 64 a2 f4 8e f7 1b 0b 35 1b cc 17<br>ff b0 4c a8 2e 21 b7 84 03 31 63 4c e6 19 fa c9<br>f5 ae b3 9a 92 5d d8 c9 4b 1f 4d 0a a9 a2 d6 94<br>5b 6b 63 0b a9 72 49 cf bb 6b 57 07 28 14 aa e4<br>a8 42 0f 1f 23 19 2f f3 14 5c c6 ca ac 5a 1f 89<br>d2 5b 88 9c 7a 50 21 42 70 24 94 fb 03 d6 aa 19<br>6c 6f 13 2e 1e 64 7f a7 52 5f 1a 56 87 b3 c0 c2<br>82 01 68 da 3b 94 25 91 1e c4 f7 23 36 37 71 91 | | | | |
| **OCSP** | | | | | |
| **Fecha: (UTC / CDMX)** | | 22/02/21 22:59:57 - 22/02/21 16:59:57 | | | |
| **Nombre del respondedor:** | | OCSP ACI del Consejo de la Judicatura Federal | | | |
| **Emisor del respondedor:** | | Autoridad Certificadora Intermedia del Consejo de la Judicatura Federal | | | |
| **Número de serie:** | | 70.6a.66.20.63.6a.66.00.00.00.00.00.00.00.00.00.00.00.02 | | | |
| **TSP** | | | | | |
| **Fecha : (UTC / CDMX)** | | 22/02/21 22:59:57 - 22/02/21 16:59:57 | | | |
| **Nombre del emisor de la respuesta TSP:** | | Autoridad Emisora de Sellos de Tiempo del Consejo de la Judicatura Federal | | | |
| **Emisor del certificado TSP:** | | Autoridad Certificadora Intermedia del Consejo de la Judicatura Federal | | | |
| **Identificador de la respuesta TSP:** | | 37976766 | | | |
| **Datos estampillados:** | | tF5DhkENZLIrJyW/1kyRuvRUNLw= | | | |